# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**In re KAISER ALUMINUM CORP., et al.,**

Debtors.

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON and CERTAIN LONDON MARKET INSURANCE COMPANIES, | ) Civil Action No. 04-CV-1496 <br> ) Hon. Joseph J. Farnan, Jr. <br> ) <br> ) Appeal from Bankruptcy Case No. 02-10429 |
| Appellants, | ) Hon. Judith K. Fitzgerald <br> ) |
| v. | ) Consolidated with the appeal in <br> ) *In re The Flintkote Company*, *et al.*, |
| KAISER ALUMINUM CORP., *et al.*, | ) Bankr. Case Nos. 04-11300 & 04-12440 <br> ) (Hon. Judith K. Fitzgerald), |
| Appellees. | ) D. Del. Case No. 04-CV-1521 |

## BRIEF OF APPELLANTS, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND CERTAIN LONDON MARKET INSURANCE COMPANIES

WHITTINGTON & AULGUR
ROBERT T. AULGUR, JR. (NO. 165)
KRISTI J. DOUGHTY (NO. 3826)
313 N. DUPONT HWY., SUITE 110
P.O. BOX 617
ODESSA, DE 19730-1617
TELEPHONE: (302) 378-1661
FACSIMILE: (302) 285-0236

HANCOCK, ROTHERT & BUNSHOFT
PHILIP R. MATTHEWS (CA BAR NO. 79634)
FOUR EMBARCADERO CENTER
SAN FRANCISCO, CA 94111-4168
TELEPHONE: (415) 981-5550
FACSIMILE: (415) 955-2999

COUDERT BROTHERS LLP
RUSSELL W. ROTEN (CA BAR NO. 170571)
KATHERINE M. WINDLER (CA BAR NO. 158899)
PETER B. ACKERMAN (CA BAR NO. 115324)
333 SOUTH HOPE STREET, 23RD FLOOR
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: (213) 229-2900
FACSIMILE: (213) 229-2999

TUCKER ARENSBERG, P.C.
BEVERLY WEISS MANNE (PA ID NO. 34545)
MICHAEL A. SHINER (PA ID NO. 78088)
1500 ONE PPG PLACE
PITTSBURGH, PENNSYLVANIA 15222
TELEPHONE: (412) 566-1212
FACSIMILE: (412) 594-5619

LORD BISSELL & BROOK LLP
FRED L. ALVAREZ
MONA M. STONE
DAVID C. BUTMAN
115 S. LASALLE STREET
CHICAGO, ILLINOIS 60603
TELEPHONE: (312) 433-0700
FACSIMILE: (312) 443-0336


COUNSEL FOR APPELLANTS, CERTAIN
UNDERWRITERS AT LLOYD'S, LONDON AND
CERTAIN LONDON MARKET INSURANCE
COMPANIES


MARCH 18, 2005

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

STATEMENT OF APPELLATE JURISDICTION .................................................2

I.     The Revised 2019 Orders Are Final Orders Subject to Immediate Appeal.......................2

II.    The Revised 2019 Orders Are Subject to Immediate Appeal Even if They Are Not Final. ...............................................................................................................4

       A.     The Collateral Order Doctrine ....................................................................4

       B.     Interlocutory Appeal .................................................................................6

III.   Appellants Have Standing to Bring this Appeal. .......................................................7

STATEMENT OF THE ISSUES PRESENTED ON APPEAL ...............................10

STATEMENT OF THE STANDARD OF REVIEW .................................................10

STATEMENT OF THE CASE ..............................................................................11

I.     The *Kaiser* Bankruptcy ..........................................................................11

II.    The *Flintkote* Bankruptcy .....................................................................12

III.   The Revised 2019 Orders .......................................................................12

SUMMARY OF ARGUMENT ..............................................................................15

ARGUMENT ......................................................................................................16

I.     The Bankruptcy Court Erred by Allowing Non-Complying Law Firms to File Unsigned "Exemplars" of Their Empowering Documents Rather Than the Actual Documents. ..................................................................................................16

II.    The Bankruptcy Court Erred by Limiting Public Access to the Rule 2019 Disclosures. ...............................................................................................20

       A.     Rule 2019 Disclosure Statements Are Presumptively Public Records Freely Open for Public Inspection. ...........................................................20

       B.     No Exception Allows the Bankruptcy Court to Seal the Rule 2019 Disclosure Statements From Public View. ...................................................22

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ..................................24

# TABLE OF AUTHORITIES

## Cases

*Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
800 F.2d 339 (3d Cir. 1986)..................................................................... 20

*Baron & Budd v. Unsecured Asbestos Claimants Comm. (In re Congoleum Corp.)*,
2005 U.S. Dist. LEXIS 2864 at *42 (D.N.J. Feb. 25, 2005) .................................... passim

*Chapman v. Charles Schwab & Co. (In re Chapman)*,
265 B.R. 796 (Bankr. W.D. Ill. 2001)............................................................ 17

*City of Lafayette v. Oklahoma P.A.C. First Ltd. P'ship (In re Oklahoma P.A.C. Ltd. P'ship)*,
122 B.R. 387 (Bankr. D. Ariz. 1990)............................................................ 18

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)........................................ 4, 21

*Commerce Bank v. Mountain View Village, Inc.*,
5 F.3d 34 (3d Cir. 1993)......................................................................... 3

*Donaldson v. Bernstein*,
104 F.3d 547 (3d Cir. 1997)..................................................................... 10

*Ferm v. U.S. Trustee (In re Crawford)*,
194 F.3d 954 (9th Cir. 1999) ................................................................... 20

*In re Bertoli*,
58 B.R. 992 (Bankr. D.N.J. 1986) ............................................................... 6

*In re Combustion Eng'g, Inc.*,
391 F.3d 190, n. 66 (3d Cir. 2004)..................................................... 1, 7, 8, 19

*In re F&C Int'l, Inc.*,
1994 Bankr. LEXIS 274 at *8 (Bankr. S.D. Ohio 1994)........................................ 19

*In re F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.)*,
844 F.2d 99 (3d Cir. 1988)....................................................................... 3

*In re Flintkote Mines Ltd.*,
Bankr. Case No. 04-12440-JKF .......................................................... passim

*In re Foundation for New Era Philanthropy*,
1995 WL 478841 at *4 (Bankr. E.D. Pa. May 18, 1995) ..................................... 24

*In re Inslaw, Inc.*,
51 B.R. 298 (Bankr. D.D.C. 1985) ............................................................. 20

*In re Johns-Manville Corp.*,
    39 B.R. 234 (Bankr. S.D.N.Y. 1984) ................................................................ 7

*In re Levine*,
    287 B.R. 683 (Bankr. E.D. Mich. 2002) ........................................................... 17

*In re MUMA Services, Inc.*,
    279 B.R. 478 (Bankr. D. Del. 2002) ................................................................ 24

*In re Neshaminy Office Bldg. Assoc.*,
    81 B.R. 301 (Bankr. E.D. Pa. 1987) ................................................................. 6

*In re Oliver*,
    333 U.S. 257, 68 S. Ct. 499, 92 L.Ed. 682 (1948) .......................................... 21

*In re Owens Corning*,
    No. 00-3837-JKF ............................................................................................. 13

*In re Professional Ins. Mgmt.*,
    285 F.3d 268 (3d Cir. 2002) .............................................................................. 3

*In re Ryan*,
    160 B.R. 494 (Bankr. N.D.N.Y. 1992) ............................................................ 17

*In re United States Mineral Products Co.*,
    No. 01-2471-JKF ............................................................................................. 13

*In re USG Corp.*,
    No. 01-2094-JKF ............................................................................................. 13

*In re W.R. Grace & Co.*,
    No. 01-1139-JKF ............................................................................................. 13

*In the Matter of CF Holding Corp.*,
    145 B.R. 124 (Bankr. D. Conn. 1992) .............................................................. 18

*Meridian Bank v. Alten*,
    958 F.2d 1226 (3d Cir. 1992) ........................................................................... 10

*Nantucket Investors II v. California Fed. Bank (In re Indian Palms Assocs.)*,
    61 F.3d 197 (3d Cir. 1995) ............................................................................... 18

*Nordhoff Investments, Inc. v. Zenith Electronics Corp.*,
    258 F.3d 180 (3d Cir. 2001) .............................................................................. 6

*Petroleos Mexicanos Refinacion v. M/T KING A (EX-TBILISI)*,
    377 F.3d 329 (3d Cir. 2004) .............................................................................. 5

*Republic of Philippines v. Westinghouse Elec. Corp.*,
    949 F.2d 653 (3d Cir. 1991) ............................................................................. 21

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555, 100 S. Ct. 2814, 65 L.Ed. 2d 793 (1980) ................................. 21

*Rushford v. New Yorker Magazine, Inc.*,
  846 F.2d 249 (4th Cir. 1988) .................................................................. 22, 24

*United States v. Continental Airlines (In re Continental Airlines)*,
  150 B.R. 334 (D.Del. 1993) ............................................................................ 23

*United States v. Martin*,
  746 F.2d 964 (3d Cir. 1984) ........................................................................... 21

*United States v. Nicolet, Inc.*,
  857 F.2d 202 (3d Cir. 1988) ........................................................................ 3, 6

*United States v. U.S. Gypsum Co.*,
  333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948) ....................................... 11

*Universal Minerals, Inc. v. C.A. Hughes & Co.*,
  669 F.2d 98 (3d Cir. 1981) ............................................................................ 11

**Statutes**

11 U.S.C. § 101(10)(a) ................................................................................. 11, 12

11 U.S.C. § 107(a) ....................................................................................... 16, 20

11 U.S.C. §§ 1107 ........................................................................................ 11, 12

28 U.S.C. § 158(a)(1) ..................................................................................... 2, 4

28 U.S.C. § 158(a)(3) ......................................................................................... 6

**Other Authorities**

COLLIER ON BANKRUPTCY,
  v. 2 ¶ 107.1 (15th ed. rev.) ........................................................................... 20

**Rules**

Fed. R. Bankr. P. 2019 ............................................................................... passim

Fed. R. Bankr. P. 8013 ................................................................................... 10

Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies (collectively, "Appellants" or "London Market Insurers") submit the following brief in support of their consolidated appeals from the bankruptcy court's Revised Orders Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019 (the "Revised 2019 Orders").

## INTRODUCTION

This appeal is about policing the very integrity of the bankruptcy process. Rule 2019 of the Federal Rules of Bankruptcy Procedure is a disclosure provision "designed to ensure that lawyers involved in the Chapter 11 reorganization process adhere to certain ethical standards and approach all reorganization related matters openly and subject to the scrutiny of the court." *Baron & Budd v. Unsecured Asbestos Claimants Comm. (In re Congoleum Corp.)*, 2005 U.S. Dist. LEXIS 2864 at *42 (D.N.J. Feb. 25, 2005). Rule 2019(a) thus mandates that all attorneys who represent more than one creditor "shall" file with the bankruptcy court certain information, including the powers of attorney or other documents empowering them to act on behalf of their clients. Fed. R. Bankr. P. 2019(a). Several "Non-Complying Law Firms" purport to represent thousands of asbestos personal injury tort claimants in these bankruptcy cases, but none voluntarily filed the disclosures required by Rule 2019.

When this situation was brought to the bankruptcy court's attention, the bankruptcy court issued the Revised 2019 Orders ordering submission of some, but not all, of the information required to be disclosed under Rule 2019. Specifically, the bankruptcy court did not require the Non-Complying Law Firms to file their powers of attorney or other empowering documents. That is reversible error. As the Third Circuit recently observed, where, as here, "the voting process is managed almost entirely by proxy, it is reasonable to require a valid power of attorney for each ballot to ensure claimants are properly informed about the plan and that their votes are valid." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 n. 66 (3d Cir. 2004). The bankruptcy

court further erred by withholding from public view the limited information that the Non-Complying Law Firms did disclose, without taking evidence or making any of the factual findings required to seal court records.

Accordingly, this Court should reverse and remand with instructions to the bankruptcy court to amend the Revised 2019 Orders to correct these deficiencies.

## STATEMENT OF APPELLATE JURISDICTION

The Revised 2019 Orders, from which these appeals are taken, were issued by the bankruptcy court (i) on October 22, 2004 in *In re The Flintkote Co.*, Bankr. Case No. 04-11300-JKF ("*Flintkote Company*") (Dkt. No. 337), and *In re Flintkote Mines Ltd.*, Bankr. Case No. 04-12440-JKF ("*Flintkote Mines*," and collectively with *Flintkote Company, "Flintkote"*) (Dkt. No. 12); and (ii) on October 25, 2004 in *In re Kaiser Aluminum Corp., et al.*, Bankr. Case No. 02-10429-JKF ("*Kaiser*") (Dkt. No. 5255).

Appellants filed timely notices of appeal from the Revised 2019 Orders on November 1, 2004 in *Flintkote* (Dkt. No. 359), and November 4, 2004 in *Kaiser* (Dkt. No. 5343). On February 25, 2005, this Court consolidated these appeals and ordered that all further briefing in the consolidated appeals be filed under the *Kaiser* caption. *See* Orders of Feb. 25, 2005 in *Kaiser* (Dkt. No. 9) and *Flintkote* (Dkt. No. 10).

As discussed below, the Revised 2019 Orders are subject to appeal as final orders of the bankruptcy court. *See* 28 U.S.C. § 158(a)(1). Alternatively, this appeal is appropriate either under the collateral order doctrine or as an interlocutory appeal. In addition, Appellants have standing to raise the issues presented in this appeal.

## I.    THE REVISED 2019 ORDERS ARE FINAL ORDERS SUBJECT TO IMMEDIATE APPEAL.

This Court has jurisdiction to hear appeals from "final judgments, orders and decrees" of the bankruptcy court. 28 U.S.C. § 158(a)(1). It is well settled in the Third Circuit that

"considerations unique to bankruptcy appeals" require the concept of finality in bankruptcy appeals to be construed "in a more pragmatic, functional sense than with the typical appeal." *In re Professional Ins. Mgmt.*, 285 F.3d 268, 279 (3d Cir. 2002).  As the Third Circuit has observed:

> [A]nalysis of final orders in bankruptcy proceedings differs from that in ordinary civil litigation.  Considerations unique to bankruptcy cause us less trepidation over strict interpretation of that requirement than in [other] appeals …. We have found a pragmatic and less technical approach to finality to be more appropriate in bankruptcy proceedings that often are protracted and involve numerous parties asserting various claims.  To delay resolution of discrete claims until after final approval of a reorganization plan, for example, would waste time and resources, particularly if the appeal resulted in reversal of a bankruptcy court order necessitating re-appraisal of the entire plan.

*United States v. Nicolet, Inc.*, 857 F.2d 202, 205 (3d Cir. 1988); *accord, Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34, 36-37 (3d Cir. 1993); *In re F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.)*, 844 F.2d 99, 103 (3d Cir. 1988).  In deciding whether a bankruptcy order is final for purposes of appeal, the Third Circuit considers such factors as "the preclusive effect of a decision on the merits" and the "need for additional fact-finding on remand." *Commerce Bank*, 5 F.3d at 36-37.

Under this pragmatic standard, jurisdiction to appeal an order requiring compliance with Rule 2019 has been upheld "as an appeal of a final order under § 158(a)." *Baron & Budd*, 2005 U.S. Dist. LEXIS 2864 at *9.  In that case, as here, the bankruptcy court ordered law firms representing multiple asbestos personal injury claimants to comply with Rule 2019.[1]  In finding jurisdiction on appeal, Judge Chesler reasoned:  "Practically speaking, because the information sought in the Rule 2019 Compliance Order bears on plan confirmation procedures and, allegedly, the overall fairness of the plan, review of the order is most practical at this juncture, before Creditors vote on the plan." *Id.*

3

The same is true here.  The Revised 2019 Orders are final and subject to immediate appeal even though other aspects of these Chapter 11 cases are still pending below.  The disclosure mandated by Rule 2019 will bear on the plan confirmation procedures and, ultimately, on the overall fairness of the debtors' plans of reorganization.  Therefore, as in *Baron & Budd* review is most practical at this time, before the debtors have proposed plans of reorganization, solicited votes, and such votes have been cast.

Moreover, Appellants have no other opportunity, other than this appeal, to challenge the sufficiency of the Revised 2019 Orders.  The bankruptcy court has already ruled on these issues, and these issues will not again be presented at confirmation or other proceedings below.  A decision on the merits by this Court regarding the issues raised by this appeal will be preclusive and will assist the bankruptcy court's subsequent administration of the estate.  In addition, the reasons that the Revised 2019 Orders are defective are apparent from the present record, and no additional fact-finding is required at this time.

Accordingly, the Revised 2019 Orders are final for purposes of appeal, and thus this Court has jurisdiction to entertain this appeal under 28 U.S.C. § 158(a)(1).

## II.     THE REVISED 2019 ORDERS ARE SUBJECT TO IMMEDIATE APPEAL EVEN IF THEY ARE NOT FINAL.

### A.     The Collateral Order Doctrine

An order that is technically not final under section 158(a) may nonetheless be subject to appeal pursuant to the collateral order doctrine established in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).  The Third Circuit has applied *Cohen* to allow for appeal of a technically non-final order if:

---

[1]     However, as discussed later, the Rule 2019 Compliance Order affirmed in *Baron & Budd* did not suffer the deficiencies found in the Revised 2019 Orders in these consolidated cases.

4

> (1) the order … conclusively determines the disputed question; (2) the order resolves an important issue that is completely separate from the merits of the dispute; and (3) the order is effectively unreviewable on appeal from a final judgment…. To this end, as a doctrinal matter, orders that meet the three prongs described above are deemed to be "final decisions" within the meaning of the statute.

*Petroleos Mexicanos Refinacion v. M/T KING A (EX-TBILISI)*, 377 F.3d 329, 334 (3d Cir. 2004); *accord*, *Baron & Budd*, 2005 U.S. Dist. LEXIS at \*9-\*10 (holding that the Rule 2019 compliance order was final but, even if not final, then alternatively it was a collateral order subject to immediate appeal).

As with the Rule 2019 order in *Baron & Budd*, the Revised 2019 Orders in these consolidated cases satisfy the requirements for an appealable collateral order.  First, the orders conclusively determined the disputed question, as evidenced by the fact that the bankruptcy court denied motions for reconsideration below (the "Reconsideration Motions").[2]  Second, the orders resolve important issues that are completely separate from the merits of any plan.  As in *Baron & Budd*, "[t]he issues raised in the Rule 2019 Motions and Order were discrete and no effect or impact of those decisions would change as a result of the bankruptcy court's final confirmation of the reorganization plan."  *Baron & Budd*, 2005 U.S. Dist. LEXIS 2864 at \*10.  Finally, waiting until after confirmation to appeal these orders may render them effectively non-reviewable, since the harm to Appellants and to the confirmation process will already have been done.  As noted, the purpose of Rule 2019 is to ensure that the confirmation process proceeds in a fair and open manner.  That purpose will be thwarted if these orders are not reviewed at this time.  Moreover, no appeal may ever lie from the confirmation orders if they are substantially

---

[2]    The "Reconsideration Motions" are the Motions of Baron & Budd, and Silber Pearlman Pursuant to Bankruptcy Rule 9023 to Alter or Amend (1) Amendatory Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019, and (2) Order Requiring Filing of Statements

consummated.  *See, e.g, Nordhoff Investments, Inc. v. Zenith Electronics Corp.*, 258 F.3d 180, 182 (3d Cir. 2001).

The bottom line is that waiting to appeal these distinct, important issues until after the Court rules on confirmation could take years and would be of no benefit to the courts or any party.  On the contrary, all parties and the courts will benefit from an early resolution of the scope of disclosure required by Rule 2019, so that these cases may proceed below based on full disclosure and compliance with Rule 2019.  *See Nicolet,* 857 F.2d  at 205 ("To delay resolution of discrete claims until after final approval of a reorganization plan, for example, would waste time and resources, particularly if the appeal resulted in reversal of a bankruptcy court order necessitating re-appraisal of the entire plan").

### B.    Interlocutory Appeal

Even if the Revised 2019 Orders are truly interlocutory (*i.e.*, not final or collateral as discussed above), this Court should nonetheless exercise its discretion under Section 158(a)(3) to hear this appeal.  *See* 28 U.S.C. § 158(a)(3); *Baron & Budd*, 2005 U.S. Dist. LEXIS 2864 at *12 (holding, alternatively, that an order enforcing Rule 2019 was "suitable for interlocutory appeal" under section 158(a)(3)).

Section 158 is silent as to the standard courts should apply in determining when an interlocutory appeal should be granted from a bankruptcy court order.  However, courts typically apply the same standard as that used in determining whether an appeal lies from an interlocutory order of the district court.  *See Baron & Budd*, 2005 U.S. Dist. LEXIS 2864 at *11, citing *In re Neshaminy Office Bldg. Assoc.*, 81 B.R. 301, 302 (Bankr. E.D. Pa. 1987); *In re Bertoli*, 58 B.R. 992, 995 (Bankr. D.N.J. 1986); *In re Johns-Manville Corp.*, 39 B.R. 234, 236 (Bankr. S.D.N.Y.

---

Pursuant to Fed. R. Bankr. P. 2019, or Alternatively, For New Trial, filed in *Flintkote Company* (Dkt. Nos. 236 & 237), *Flintkote Mines* (Dkt. Nos. 5 & 6) and *Kaiser* (Dkt. Nos. 4962 & 4975).

1984). Under this standard, an interlocutory appeal is allowed when "(1) a controlling question of law is involved; (2) the question is one where there is substantial ground for difference of opinion; and (3) an immediate appeal would materially advance the ultimate termination of the litigation." *Baron & Budd*, 2005 U.S. Dist. LEXIS 2864 at *11.

All three requirements are met here. The bankruptcy court's construction of Rule 2019 plainly presents controlling questions of law about which there is substantial ground for difference of opinion. There is little precedent on these issues (other than the *Baron & Budd* case, which supports Appellants). And immediate appellate review of these issues will materially advance this litigation, since the disclosure mandated by Rule 2019 may have a direct bearing on both good faith and the fairness of a plan, and would affect the bankruptcy court's ultimate determination of whether the plans to be proposed in this case will be confirmable. *See id.* at *36 ("the particular issues of professional responsibility which the Rule 2019 Compliance Order seeks to address are inextricably intertwined with the overall fairness of the Plan").

Thus, this Court has appellate jurisdiction over the Revised 2019 Orders "[f]or any or all of the above reasons – as a final order, under the collateral order doctrine, or, as an appropriate issue for interlocutory review." *Id.* at *13.

## III. APPELLANTS HAVE STANDING TO BRING THIS APPEAL.

Appellants have standing to raise compliance with Rule 2019 on appeal. In the Third Circuit, any "person aggrieved" has standing to appeal an order of the bankruptcy court.[3] *Combustion Eng'g*, 391 F.3d at 217. "Person[s] aggrieved must show the order of the

---

[3]    The "person aggrieved" test for appellate standing originated in the Bankruptcy Act of 1898. This test was repealed in 1978, but courts nonetheless continue to apply it as a "prudential standing limitation for bankruptcy appeals." *Combustion Eng'g*, 391 F.3d at 214 n.20. London Market Insurers question whether using a repealed statute as the basis for limiting access to the appellate courts is appropriate. That, however, is not an issue for this Court.

bankruptcy court diminishes their property, increases their burdens, or impairs their rights…." *Id*. (citations and internal quote marks omitted). "Whether someone is a person aggrieved is normally a question of fact." *Id*.

Appellants are plainly "persons aggrieved" by the Revised 2019 Orders, and thus have standing to appeal those orders, for several reasons. First, Appellants are "persons aggrieved" with standing because the Revised 2019 Orders diminish their rights. A court order diminishing a party's rights is sufficient to grant appellate standing. *See Combustion Eng'g*, 391 F.3d at 217-18 (a district court order diminishing protections granted by bankruptcy court is sufficient to grant appellate standing). Under section 107 of the Bankruptcy Code (11 U.S.C. § 107), Appellants have an unfettered right to review the disclosures mandated by Rule 2019 because those disclosures are a part of the public record. However, the Revised 2019 Orders restrict Appellants' rights to access those documents by requiring them to file a motion and obtain the approval of the bankruptcy court. Moreover, Appellants have the right to view the full disclosures required by Rule 2019 – including powers of attorney and other empowering documents – but the Revised 2019 Order diminishes that right by relieving Appellees of the requirement to disclose those documents.

Second, the Revised 2019 Orders increase Appellants' pecuniary burdens by requiring them to file a motion in the bankruptcy court to gain access to the Rule 2019 disclosures. That motion will necessarily entail a substantial investment of time and expense. Appellants would not face the burden and expense of that motion if the bankruptcy court had not erroneously limited public access to the 2019 filings.

Third, Appellants are "persons aggrieved" with standing because the information required to be disclosed under Rule 2019 will "bear on the overall fairness" of any plans of

reorganization that debtors ultimately propose. *Baron & Budd*, 2005 U.S. Dist. LEXIS 2864 at *21. Appellants will have a stake in the overall fairness of any reorganization plan that seeks substantial funding from insurers. *See id.* at *18 ("Insurers' standing is appropriate with respect to plan confirmation, at minimum, because the plan is not insurance neutral: The principal source of funding for the Plan Trust (and distributions to asbestos claimants) is insurance proceeds.").[4] Appellants also will have a stake in the overall fairness of any reorganization plan that includes provisions intended to impair insurers contractual rights (*e.g.*, by assigning debtors' insurance to a third-party trust in violation of the anti-assignment clauses in the insurance contracts, and by stripping insurers of their contractual rights to participate in the defense and settlement of asbestos claims, obtain the cooperation of the debtors in defending and settling asbestos claims; and prevent payment of asbestos claims that are invalid, excessive, fraudulent, lack sufficient evidence of injury or exposure, or otherwise cannot be properly asserted against the debtors). *See, e.g,* Settlement Notice at Dkt. No. 6052.

Such provisions almost certainly will be included in any reorganization plans proposed in these cases. Those plans will then be approved or rejected as a result of proxy ballots cast by Non-Complying Law Firms who purport to represent thousands of asbestos claimants. For the balloting to be above reproach, the Non-Complying Law Firms must establish through compliance with Rule 2019 their right to vote the proxies. If the plans are confirmed by the proxy votes, those same Non-Complying Law Firms will gain by collecting contingency fees

---

[4]     For example, the debtors and asbestos claimants in *Kaiser* have agreed in principal on the outline of a reorganization plan which, if confirmed, would assign debtors' insurance rights to a third-party trust for payment of asbestos claims, and would further seek to abrogate insurers' rights under the policies. *See* Notice of Filing of (I) Amendment to Intercompany Settlement Agreement and (II) Stipulation for Settlement of Controversy between the Debtors and the United States of America, Exhibit A, KAC Plan Treatment of Personal Injury Claims and

from payments by the trust to asbestos claimants, and the trust will seek indemnity for those payments from Appellants. Thus, "[t]hat the Insurers' stake in plan confirmation includes a stake in the fundamental fairness of the Plan cannot be seriously challenged[.]" *Id.*

Accordingly, Appellants are plainly "persons aggrieved" by the Revised 2019 Orders, and, accordingly, have standing to bring this appeal.

## STATEMENT OF THE ISSUES PRESENTED ON APPEAL

- Did the Bankruptcy Court err in the Revised 2019 Orders when it failed to require entities representing more than one creditor to file copies of the instruments evidencing authorization for each client?

- Did the Bankruptcy Court err in the Revised 2019 Orders when it failed to require entities representing more than one creditor to file their exhibits with the clerk?

- Did the Bankruptcy Court err in the Revised 2019 Orders by placing portions of the 2019 statements under seal without any evidentiary record in support of sealing the statements?

## STATEMENT OF THE STANDARD OF REVIEW

This appeal presents issues of law only, as the bankruptcy court took no evidence and made no factual findings in issuing its Revised 2019 Orders. The bankruptcy court's conclusions of law are subject to *de novo* review by this Court. *Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997); *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992); *accord*, *Baron & Budd*, 2005 U.S. Dist. LEXIS 2864 at *13 ("Legal conclusions of the bankruptcy court are subject to *de novo* or plenary review by the district court.).[5]

---

Demands, filed January 27, 2005 (the "Settlement Notice"), at Dkt. No. 6052, attached hereto as Exhibit A.

[5]     If the bankruptcy court had made any factual findings, on appeal those would be subject to "clearly erroneous" review. *See* Fed. R. Bankr. P. 8013; *Donaldson*, 104 F.3d at 551; *Meridian Bank*, 958 F.2d at 1229. A factual finding is clearly erroneous, even where some

## STATEMENT OF THE CASE

*I.* THE *KAISER* BANKRUPTCY

On February 12, 2002, Kaiser Aluminum Corporation and fourteen of its subsidiaries or affiliates filed voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On March 15, 2002, two additional affiliates commenced their own Chapter 11 cases. On January 14, 2003, nine additional affiliates filed Chapter 11 petitions. These Chapter 11 cases have been consolidated for procedural purposes only, and are being administered jointly. The *Kaiser* debtors are continuing in possession of their property and have continued to operate their businesses as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108 of the Bankruptcy Code.

Prior to filing for bankruptcy, the *Kaiser* debtors had defended or were defending hundreds of tort actions brought by thousands of plaintiffs alleging personal injury due to alleged exposure to the Kaiser debtors' asbestos-containing products. The *Kaiser* debtors listed thousands of such asbestos plaintiffs on Schedule F as the holders of contingent, unliquidated and disputed claims. These tort claimants are "creditors" of the estate under 11 U.S.C. § 101(10)(a).

The *Kaiser* debtors have not yet proposed a comprehensive plan of reorganization.[6] However, they have reached an agreement in principal with counsel for asbestos claimants on the outline of a reorganization plan. This plan, if confirmed, would assign the debtors' insurance

---

evidence supports it, when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). If the reviewing court determines that a bankruptcy court's factual findings are not clearly erroneous, the court must then examine whether the factual findings are legally sufficient to support the bankruptcy court's conclusions of law. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir. 1981). As noted, however, the bankruptcy court made no factual findings in the Revised 2019 Orders at issue in this appeal.

rights to a third-party trust for payment of asbestos claims, and would further seek to abrogate insurers' rights under the policies. *See* Settlement Notice (Ex. A at *Kaiser* Dkt. No. 6052).

## II.    THE *FLINTKOTE* BANKRUPTCY

On May 1, 2004, Flintkote Company filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On August 25, 2004, Flintkote Mines also filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On September 9, 2004, these cases were procedurally consolidated and are being administered jointly. The *Flintkote* debtors are continuing in possession of their property and have continued to operate their businesses as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108 of the Bankruptcy Code.

Prior to filing their petitions, the *Flintkote* debtors had defended or were defending hundreds of tort actions brought by thousands of plaintiffs alleging personal injury due to alleged exposure to the Flintkote debtors' asbestos-containing products. Each of the *Flintkote* debtors listed thousands of such plaintiffs on Schedule F as the holders of contingent, unliquidated and disputed claims. These tort claimants are "creditors" of the estate under 11 U.S.C. § 101(10)(a).

The *Flintkote* debtors have not yet proposed a plan of reorganization.

## III.    THE REVISED 2019 ORDERS

The Revised Rule 2019 Orders in these consolidated cases are part of a series of related orders issued in these and several other asbestos bankruptcy cases pending before the Honorable Judith K. Fitzgerald.[7] In all those cases, a few law firms – *e.g.,* Baron & Budd, P.C. and Silber Perlman, LLP – purport to represent hundreds or thousands of asbestos claimants. These and

---

[6]    Four of the *Kaiser* debtors have been liquidated and have proposed liquidating plans.

[7]    Judge Fitzgerald is the Chief Bankruptcy Judge for the Western District of Pennsylvania, and she also presides by designation in these and other bankruptcies pending in the District of Delaware.

other Non-Complying Law Firms did not attempt to comply with Rule 2019 until ordered to do so by the bankruptcy court.

On March 16, 2004, London Market Insurers filed a motion to compel compliance with Rule 2019 in *In re Pittsburgh Corning Corp.*, W.D. Pa. Case No. 00-22876, ("*PCC*"), pending before Judge Fitzgerald.  *See* Motion for Order Denying Non-Complying Law Firms' Right To Be Heard in Case and Invalidating All Ballots Submitted by Non-Complying Law Firms (the "2019 Motion") (Dkt. No. 3050 in *In re Pittsburgh Corning Corp.*).  Thereafter, papers in opposition to the 2019 Motion were filed in that case by various claimant law firms as well as by the debtor, the Committee of Asbestos Creditors (a/k/a the Asbestos Claimants Committee, or "ACC"), and the Future Claimants' Representative ("FCR").[8]  London Market Insurers also filed supplemental papers in support of their 2019 Motion.[9]

On August 26, 2004, Judge Fitzgerald entered an Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. 2019 (the "Original 2019 Order") in each of her asbestos bankruptcy cases, including these *Kaiser* and *Flintkote* cases.  *See Flintkote Company* Dkt. No. 201; *Kaiser* Dkt. No. 4917.  A few days later, on August 30, 2004, the Judge Fitzgerald *sua sponte* amended those orders and entered an Amendatory Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019 (the "Amendatory 2019 Orders") in each of the cases, including these cases. *See Flintkote Company* Dkt. No. 219; *Flintkote Mines* Dkt. No. 4; *Kaiser* Dkt. No. 4927.[10]

---

[8]    *See* Dkt. Nos. 3116, 3119, 3124, 3129, 3156, 3490, 3493, and 3526 filed in *In re Pittsburgh Corning Corp.*

[9]    *See* Dkt. Nos. 3139, 3463, and 3499 filed in *In re Pittsburgh Corning Corp.*

[10]    In addition to these cases, Judge Fitzgerald entered the Amendatory 2019 Order in the *PCC* case pending in the Western District of Pennsylvania, and also in following cases pending in the District of Delaware:  *In re Owens Corning*, No. 00-3837-JKF; *In re W.R. Grace & Co.*, No. 01-1139-JKF; *In re USG Corp.*, No. 01-2094-JKF; and *In re United States Mineral Products Co.*, No. 01-2471-JKF.  *See* Amendatory Order at 1.

The Amendatory 2019 Orders required that the Non-Complying Law Firms must file verified statements containing all the information and documents mandated by Rule 2019, including, specifically, copies of their empowering documents. *Id*. Under the Amendatory 2019 Orders, the Rule 2019 statements and exhibits would be publicly available – the statements would be filed with the court clerk without the bulky exhibits, but the exhibits would be available through the court's copy service. *See* Amendatory 2019 Orders at 1.

Following entry of the Amendatory 2019 Orders, on September 7, 2004, Baron & Budd, P.C. and Silber Pearlman, L.L.P., filed motions for reconsideration (the Reconsideration Motions) in all of Judge Fitzgerald's asbestos bankruptcy cases, including these cases.[11]  In *Flintkote Company*, the Proposed Form of Order filed at Dkt. No. 237 was withdrawn on September 9, 2004, and a Certification of Counsel as to the form of order was filed.  *See Flintkote* Dkt. Nos. 239 and 240.  On September 22, 2004, Appellants filed an Opposition to the Reconsideration Motion.  *See Kaiser* Dkt. No. 5043.  On September 29, 2004, the *Kaiser* Debtors filed a Notice of Hearing on the Reconsideration Motion.  *See Kaiser* Dkt. No. 5124. Exhibit "A" to the Notice was a copy of Judge Fitzgerald's notes from the August 27, 2004, hearing in the *PCC* case on the 2019 Motion.  *Id*., Exhibit A.  Those notes indicated that Judge Fitzgerald was considering restricting access to the required Rule 2019 disclosures.  *See id*.  On October 1, 2004, the Office of the United States Trustee filed Statements in Response to the Reconsideration motion.  *Flintkote* Dkt. No. 297; *Kaiser* Dkt. No. 5135**.**  On October 4, 2004, the *Flintkote* debtors filed a Notice of Hearing on the Reconsideration Motions.  *Flintkote* Dkt. No. 298.  On October 4, 2004, Appellants filed a Supplemental Brief on Public Access to Papers, setting forth the statutory requirement that disclosures pursuant to Rule 2019 be filed on the

Bankruptcy Court's docket and available to access without further restrictions. *See Kaiser* Dkt. No. 5136. Also on October 4, 2004, Brayton Purcell and Campbell, Cherry, Harrison, Davis & Dove filed joinders to the Reconsideration Motion. *See Flintkote* Dkt. No. 299; *Kaiser* Dkt. No. 5142.

On October 6, 2004, Judge Fitzgerald conducted a joint hearing on the Reconsideration Motions for all of her cases pending in the District of Delaware. On October 22 and 25, 2004, Judge Fitzgerald entered the Revised 2019 Orders. *See Flintkote* Dkt. No. 337; *Kaiser* Dkt. No. 5255. The principal differences between the earlier Amendatory 2019 Orders and the final Revised 2019 Orders are that the latter (1) erroneously relieved the asbestos creditors' law firms from filing their empowering documents (*e.g.*, powers of attorney) and instead allowed them to file unsigned "exemplars" of such documents; and (2) erroneously sealed the law firms' disclosure statements away from public view without any evidence or findings of necessity, allowing access only upon motion to and order of the Bankruptcy Court. *See* Revised 2019 Orders at 2.

## SUMMARY OF ARGUMENT

Rule 2019 expressly requires that all law firms representing more than one creditor in a Chapter 11 case "shall file" with the bankruptcy court a verified statement which "shall include" a copy of each document – *e.g.,* a power of attorney – empowering the law firm to act on behalf of each creditor. Fed. R. Bankr. P. 2019(a). The bankruptcy court ignored this clear mandate, and thus erred, by permitting the Non-Complying Law Firms to withhold their powers of attorney or other empowering documents.

---

[11]    *See Flintkote* Dkt. Nos. 236, and 237; *Flintkote Mines* Dkt. Nos. 5, and 6; *Kaiser* Dkt. Nos. 4962, and 4975.

The Bankruptcy Court committed further error by restricting public access to the Rule 2019 disclosures. The Rule 2019(a) disclosures are presumptively public records that must be held freely open to public inspection. *See* 11 U.S.C. § 107(a). Only two narrow exceptions can justify limiting public access to bankruptcy court records – trade secrets and defamatory material. *Id.* § 107(b). Those exceptions can apply only after the court takes evidence and makes factual findings that such material is involved and must be kept secret. In this case, however, the bankruptcy court took no such evidence and made no such findings, yet nonetheless sealed the Rule 2019 disclosures and documents from public view.

Both rulings – not requiring filing of the empowering documents, and restricting public access – are clear error requiring reversal of the Revised 2019 Orders.

## ARGUMENT

**I.  THE BANKRUPTCY COURT ERRED BY ALLOWING NON-COMPLYING LAW FIRMS TO FILE UNSIGNED "EXEMPLARS" OF THEIR EMPOWERING DOCUMENTS RATHER THAN THE ACTUAL DOCUMENTS.**

Rule 2019 specifically mandates that all law firms representing multiple creditors in a Chapter 11 case "shall file" with the bankruptcy court a verified statement containing certain information about each creditor and its relationship with the law firm. The rule also requires that the statement "shall include" a copy of the document (*e.g.,* power of attorney) empowering the firm to act on behalf of each creditor. Rule 2019(a) thus states:

> In a…chapter 11 reorganization case,…*every entity…representing more than one creditor…shall file a verified statement* setting forth (1) the name and address of the creditor…; (2) the nature and amount of the claim…and the time of acquisition thereof unless it is alleged to have been acquired more than one year prior to the filing of the petition; (3) a recital of the pertinent facts and circumstances in connection with the employment of the entity…; and (4) with reference to the time of the employment of the entity,…the amounts of claims or interests owned by the entity,…the times when acquired, the amounts paid therefor, and any sales or other disposition thereof. *The statement shall include a copy of the instrument, if any, whereby the entity…is empowered to act on behalf of creditors…*.

16

Fed. R. Bankr. P. 2019(a) (emphasis added).

Appellants do not dispute that the Revised 2019 Orders "generally" require the asbestos claimants' law firms to submit the four items of information specified in Rule 2019(a). The bankruptcy court erred, however, by relieving the Non-Complying Law Firms of their mandatory obligation to file "a copy of the instrument," such as a power of attorney, which authorizes them to act on their clients' behalf. Fed. R. Bankr. P. 2019(a). Rather than ordering production of the actual powers of attorney, the bankruptcy court allowed the Non-Complying Law Firms to submit unsigned "exemplars" thereof. The Revised 2019 Orders thus state in pertinent part:

> It is further ORDERED that the 2019 Statement shall be a verified statement identifying the name and address of the entity filing such statement and that includes the following exhibits:
>
> 1.      A blank, but unredacted, exemplar or an actual copy, of each form of agreement or instrument, if any, whereby such entity is empowered to act on behalf of creditors or equity security holders in this case….

Revised 2019 Orders at 2. Thus, the Revised 2019 Orders directly contradict Rule 2019(a), which expressly requires that the verified statement "*shall include a copy of the instrument*, if any, whereby the entity…is empowered to act on behalf of creditors.*" Fed. R. Bankr. P. 2019 (a) (emphasis added). Unsigned exemplars are nowhere mentioned in or permitted by the rule.

The requirements of Rule 2019 are mandatory, not elective, and cannot be circumvented in this manner. The Bankruptcy Rules, promulgated by the Supreme Court pursuant to 28 U.S.C. § 2075, have the force of law. *In re Levine*, 287 B.R. 683, 695 (Bankr. E.D. Mich. 2002); *Chapman v. Charles Schwab & Co. (In re Chapman)*, 265 B.R. 796, 809 (Bankr. W.D. Ill. 2001); *In re Ryan*, 160 B.R. 494, 496 (Bankr. N.D.N.Y. 1992). By stating that the disclosures "shall include" copies of the empowering documents, Rule 2019 leaves a bankruptcy court with no discretion – the document *must* be filed. *Cf. Nantucket Investors II v. California Fed. Bank*

17

*(In re Indian Palms Assocs.)*, 61 F.3d 197, 208 (3d Cir. 1995) (noting that the directive "shall grant relief" in 11 U.S.C. § 362(d) is mandatory, not discretionary).

Rule 2019 is not merely a procedural requirement without a purpose.  Compliance with the rule is essential to the very integrity of the reorganization process.  Rule 2019 "ensure[s] that lawyers involved in the Chapter 11 reorganization process adhere to certain ethical standards and approach all reorganization related matters openly and subject to the scrutiny of the court." *Baron & Budd*, 2005 U.S. Dist. LEXIS 2864 at *42; *accord, In the Matter of CF Holding Corp.*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992) ("The purpose of Rule 2019 is to further the Bankruptcy Code's goal of complete disclosure during the business reorganization process, and was designed to cover entities which, during the bankruptcy case, act in a fiduciary capacity to those they represent, but are not otherwise subject to control of the court."); *City of Lafayette v. Oklahoma P.A.C. First Ltd. P'ship (In re Oklahoma P.A.C. Ltd. P'ship)*, 122 B.R. 387, 393 (Bankr. D. Ariz. 1990) ("It is part of the Chapter 11 reorganization process that all matters should be done openly and subject to scrutiny, whether it is the proposal of a plan of reorganization, representation of the debtor, or *representation of numerous creditors* – secured or unsecured.") (emphasis added).

The disclosure required by Rule 2019 is particularly critical in mass tort bankruptcies such as these, where relatively few asbestos claimants actually sign and submit their own ballots, and few or no proofs of claim from asbestos claimants are submitted.  Instead, the claimants' lawyers submit so-called "Master Ballots" by which they vote on behalf of their purported "inventories" of hundreds or thousands of clients.  There is simply no safeguard on the balloting process in these cases, other than the disclosure mandated by Rule 2019, which would ensure that only those entities who are actually authorized to represent multiple entities cast ballots on

their behalf.  *See In re F&C Int'l, Inc.*, 1994 Bankr. LEXIS 274 at *8 (Bankr. S.D. Ohio 1994) (absent compliance with Rule 2019, there is a danger that "parties purporting to act on another's behalf may not be authorized to do so and may receive distributions to which they are not entitled").  Thus, as the Third Circuit noted recently, valid powers of attorney should be required to ensure integrity in the voting process.  *Combustion Eng'g,* 391 F.3d at 245 n. 66.

Requiring disclosure of the powers of attorney or other empowering documents will also permit examination into any potential conflicts of interest.  In the *Baron & Budd* case, the district court affirmed a Rule 2019 compliance order that required asbestos claimants' lawyers to file "copies of any documents that were signed in conjunction with creating" any relationship with their clients or co-counsel.  2005 U.S. Dist. LEXIS 2864 at *5.  The court concluded that "fee sharing, co-counsel and referral relationships (and the potential conflicts of interest that may arise therefrom) are indeed 'pertinent facts and circumstances in connection with the employment of the entity.'"  *Id.* at *42, quoting Fed. R. Bankr. P. 2019(a).

It was thus a reversible error of law for the bankruptcy court to excuse the asbestos claimants' lawyers from filing copies of the actual powers of attorney or other empowering documents, as specifically mandated by Rule 2019(a), and instead allow the filing of unsigned forms or exemplars.  Accordingly, this Court should reverse the Revised 2019 Orders with instructions to enter new orders requiring the filing of copies of the actual empowering documents.

## II. THE BANKRUPTCY COURT ERRED BY LIMITING PUBLIC ACCESS TO THE RULE 2019 DISCLOSURES.

### A. Rule 2019 Disclosure Statements Are Presumptively Public Records Freely Open for Public Inspection.

All papers "filed" in a Chapter 11 case – including disclosure statements filed pursuant to Rule 2019 – are public records that presumptively must be held open to public examination.[12] This rule is clearly stated in section 107 of the Bankruptcy Code, entitled "Public Access to Papers:"

> Except as provided in subsection (b) of this section, a *paper filed in a case* under this title and the dockets of a bankruptcy court *are public records and open to examination* by an entity at reasonable times without charge.

11 U.S.C. § 107(a) (emphasis added).

Section 107 codifies the public's broad right under common law to inspect and copy public documents. *Ferm v. U.S. Trustee (In re Crawford)*, 194 F.3d 954, 960 (9th Cir. 1999); COLLIER ON BANKRUPTCY, v. 2 ¶ 107.1 (15th ed. rev.). This right of public access encompasses all "civil trials and records" and is based upon the public's firmly entrenched right to monitor the workings of the judicial system. *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 343 (3d Cir. 1986). This public access right is "fundamental to a democratic state," *In re Inslaw, Inc.*, 51 B.R. 298, 299 (Bankr. D.D.C. 1985), and has long been recognized by the Supreme Court. "[P]ublic access to court proceedings is one of the numerous 'checks and balances' of our system, because 'contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power….'" *Richmond Newspapers,*

---

[12]    The Bankruptcy Rules carefully distinguish between papers that must be publicly "filed" and others that may be "submitted" to the court in confidence. *Compare* Rule 1007(a) (requiring the debtor to "file" its bankruptcy petition), *with* Rule 1007(f) (allowing an individual debtor to "submit" his or her social security number).

*Inc. v. Virginia*, 448 U.S. 555, 592, 100 S. Ct. 2814, 2835, 65 L.Ed. 2d 793 (1980) (Brennan, J.,

concurring) (quoting *In re Oliver*, 333 U.S. 257, 270, 68 S. Ct. 499, 506, 92 L.Ed. 682 (1948)).

As the Third Circuit has recognized, "the principle that the public holds a common law

right of access to judicial proceedings and judicial records is firmly accepted in this circuit."

*Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir. 1991). "[T]he

common law right of access is not limited to evidence, but rather encompasses all 'judicial

records and documents.'"   *Id.* (quoting *United States v. Martin,* 746 F.2d 964, 968 (3d Cir.

1984)).  Notably for this case,

> the common law right of access to judicial proceedings and records, usually
> considered by the Supreme Court in connection with criminal trials and
> proceedings…applies in the context of civil proceedings as well…. [T]he public's
> exercise of its common law access right in civil cases promotes public confidence
> in the judicial system.... [T]he bright light cast upon the judicial process by public
> observation diminishes the possibilities for injustice, incompetence, perjury, and
> fraud.  Furthermore, the very openness of the process should provide the public
> with a more complete understanding of the judicial system and a better perception
> of its fairness…. Access to civil proceedings and records promotes public respect
> for the judicial process…and helps assure that judges perform their duties in an
> honest and informed manner….

*Id.* at 659-660 (citations and internal quotation marks omitted).

In addition to this common law right, the public also enjoys a separate right of access to

court papers arising under the First Amendment to the U.S. Constitution.   "[T]he First

Amendment, independent of the common law, protects the public's right of access to the records

of civil proceedings."  *Id*. at 659; *accord, Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059,

1070 (3d Cir. 1984).

Accordingly, under Section 107(a) of the Bankruptcy Code, the common law, and the

First Amendment, any disclosure statements filed pursuant to Rule 2019 in this bankruptcy case

are presumptively public records freely available to Appellants or any other entity.

**B.      No Exception Allows the Bankruptcy Court to Seal the Rule 2019 Disclosure Statements From Public View.**

The Revised 2019 Orders severely restrict public access to the mandated disclosure statements and documents.  The only document that will appear in the court's public record will be "a verified statement identifying the name and address of the entity filing such statement…." Revised 2019 Orders at 2.  All substantive information required by Rule 2019, as well as the "exemplars" of the empowering documents, will appear only in *exhibits that will not be filed in the public record*.  *Id.* at 2-3.  Only the Debtor and the U.S. Trustee have free access to the exhibits.  *Id.* at 3.  The bankruptcy court further ordered that the substantive exhibits – including any empowering documents – would be available to other parties *only* "upon motion to and order of the Court."  *Id.* at 2.

These restrictions are improper and violate Appellants' right of free access guaranteed by section 107(a) of the Bankruptcy Code, the common law, and the First Amendment.  Congress has recognized only two very limited exceptions to the broad right of public access – trade secrets and scandalous matters – neither of which is applicable here.  Section 107(b) defines these limited exceptions as necessary to:

> (1)      protect an entity with respect to a trade secret or confidential research, development or commercial information; or

> (2)      protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b).  Further, any limitation of the public's First Amendment right of access to civil court records may be imposed only after due process, and "the denial of access must be necessitated by a compelling government interest and narrowly tailored to serve that interest." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253-54 (4th Cir. 1988).

The bankruptcy court satisfied none of these essential due process requirements before ordering that any 2019 disclosure statements and empowering documents be sealed out of public view. No party filed a motion to seal the record, and no evidence was presented to establish any legitimate concerns over trade secrets or scandalous material. Nor did the court follow the required procedures for sealing court records *sua sponte*. *See United States v. Continental Airlines (In re Continental Airlines)*, 150 B.R. 334 (D.Del. 1993). Moreover, there has been no showing that appellants are not entitled to such information.

*Continental Airlines* bears a striking similarity to this case. In *Continental Airlines*, certain fee applications and reports "were shared with some, but not all, parties to th[e] dispute and were sealed completely from public view...." *Id.* at 342. On appeal, the district court held that "the Bankruptcy Court's decision to deny party and public access to the fee reviewer's conclusions and opinions was an abuse of discretion." *Id.* at 340. The district court emphasized:

> in order for the bankruptcy court, *sua sponte*, to have sealed the court's records, filings and papers pursuant to its discretionary authority under section 107(b)(2), the burden rests on the court to show "'that the interest in secrecy outweighs the presumption' in favor of access...." Furthermore, the court must provide specific legal authority supporting its conclusion that the particular matters at issue are properly classified as "defamatory"....

*Id.* It was thus not enough for the court to rely on unsubstantiated "assertions" or "mere possibility" in order to seal the records from public view; rather, substantial evidence and compelling legal authority is required. *Id.* Since none was present, the district court reversed and ordered that all records in the case be unsealed and made "readily accessible to all parties in interest and the public...." *Id.* at 343.

The same rationale applies here, and requires the same result. As in *Continental Airlines*, the Bankruptcy Court improperly sealed public records – *i.e.,* the Rule 2019 disclosures and documents – without any evidence or authority establishing that they contain trade secrets or

defamatory material. Those documents most likely do not contain any such material; nevertheless, the burden is on the parties seeking confidentiality to tender evidence sufficient to establish the necessary prerequisites for sealing the documents.[13] *Id.* at 340; *see also Rushford*, 846 F.2d at 253 ("The party seeking to overcome the presumption [of free public access] bears the burden of showing some significant interest that outweighs the presumption"). The burden most assuredly is not on Appellants to establish a right to *unseal* them, which is the effect of the Revised 2019 Orders.

Since there is no evidentiary basis in the record for sealing the Rule 2019 disclosures and documents, this Court should order that those materials be placed in the Bankruptcy Court's public files.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For all the foregoing reasons, Appellants respectfully urge the Court to reverse the Revised 2019 Orders and remand with instructions to the bankruptcy court to revise the order so as to require that (a) all entities filing Rule 2019 statements must include "a copy of the instrument, if any, whereby the entity…is empowered to act on behalf of creditors" (as required by Rule 2019(a)); and (b) all statements, documents and exhibits filed pursuant to Rule 2019 and the bankruptcy court's order shall be filed in the court's public records in a manner reasonably accessible to Appellants and the public (as required by section 107(a) of the Bankruptcy Code).

---

[13]    What the 2019 disclosures may well reveal are voting irregularities by asbestos claimants' lawyers without proper client authorization. Although that may embarrass the lawyers or even potentially subject them to sanction, that is not an acceptable reason to seal the disclosures. *See, e.g., In re MUMA Services, Inc.*, 279 B.R. 478, 484 (Bankr. D. Del. 2002) (The exceptions to public access are "not intended to save the debtor or its creditors from embarrassment, or to protect their privacy in light of countervailing statutory, constitutional and policy concerns.") (citing *In re Foundation for New Era Philanthropy*, 1995 WL 478841 at *4 (Bankr. E.D. Pa. May 18, 1995)).

Dated: March 18, 2005

/s/ Kristi J. Doughty

WHITTINGTON & AULGUR
ROBERT T. AULGUR, JR. (NO. 165)
KRISTI J. DOUGHTY (NO. 3826)
313 N. DUPONT HWY., SUITE 110
P.O. BOX 617
ODESSA, DE 19730-1617
TELEPHONE:  (302) 378-1661
FACSIMILE:  (302) 285-0236

HANCOCK, ROTHERT & BUNSHOFT
PHILIP R. MATTHEWS
PAUL J. KILLION
FOUR EMBARCADERO CENTER
SAN FRANCISCO, CA 94111-4168
TELEPHONE: (415) 981-5550
FACSIMILE: (415) 955-2999

COUDERT BROTHERS LLP
RUSSELL W. ROTEN
KATHERINE M. WINDLER
PETER B. ACKERMAN
333 SOUTH HOPE STREET, 23RD FLOOR
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: (213) 229-2900
FACSIMILE: (213) 229-2999

COUNSEL FOR APPELLANTS, CERTAIN
UNDERWRITERS AT LLOYD'S, LONDON
AND CERTAIN LONDON MARKET
INSURANCE COMPANIES

TUCKER ARENSBERG, P.C.
BEVERLY WEISS MANNE (PA ID NO. 34545)
MICHAEL A. SHINER (PA ID NO. 78088)
1500 ONE PPG PLACE
PITTSBURGH, PENNSYLVANIA 15222
TELEPHONE: (412) 566-1212
FACSIMILE: (412) 594-5619

LORD BISSELL & BROOK LLP
FRED L. ALVAREZ
MONA M. STONE
DAVID C. BUTMAN
115 S. LASALLE STREET
CHICAGO, ILLINOIS 60603
TELEPHONE: (312) 433-0700
FACSIMILE: (312) 443-0336

25