EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Jointly Administered** |
| | : | |
| **KAISER ALUMINUM CORPORATION,** | : | **Case No. 02-10429 (JKF)** |
| a Delaware corporation, et al., | : | |
| | : | **Chapter 11** |
| **Debtors.** | : | **Hearing Date:  2/1/05 at 9:00 a.m.** |
| | : | **Re: Docket No. 5203** |
| | : | **Agenda Item 1** |

## NOTICE OF FILING OF (I) AMENDMENT TO INTERCOMPANY SETTLEMENT AGREEMENT AND (II) STIPULATION FOR SETTLEMENT OF CONTROVERSY BETWEEN THE DEBTORS AND THE UNITED STATES OF AMERICA

PLEASE TAKE NOTICE that in order to resolve objections to the Joint Motion of Debtors and Debtors in Possession and the Official Committee of Unsecured Creditors for an Order (A) Approving Settlement and Release Agreement Regarding Prepetition and Postpetition Intercompany Claims and (B) Authorizing the Transfers and Releases Provided Therein [Docket No  5203] (the "ISA Motion") filed by the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Claimants, the Legal Representative for Future Asbestos Claimants, the Legal Representative for Future Silica Claimants, the Office of the United States Trustee, the United States of America, on behalf of the Bonneville Power Administration and the Environmental Protection Agency (the "Government"), (collectively, the "Objecting Parties"), the above captioned debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors have executed an amendment to the Intercompany Settlement Agreement, a copy of which is attached hereto as Exhibit A

PLEASE TAKE FURTHER NOTICE that in connection with the resolution of the objections of the Government to the ISA Motion, the Debtors have entered into a Stipulation

for Settlement of Controversy Between the Debtors and the United States of America (the

"Stipulation"), which addresses setoff issues associated with a federal income tax refund owed to

the Debtors. A copy of the Stipulation is attached hereto as Exhibit B

Dated: January 27, 2005
       Wilmington, Delaware

                                     *Kimberly D. Newmarch*

                                     Daniel J. DeFranceschi (Atty No. 2732)
                                     Kimberly D. Newmarch (Atty No. 4340)
                                     RICHARDS, LAYTON & FINGER, P.A.
                                     One Rodney Square
                                     P.O. Box 551
                                     Wilmington, Delaware 19899
                                     Telephone: (302) 651-7700
                                     Facsimile: (302) 651-7701

                                            -and-

                                     Gregory M. Gordon (TX 08435300)
                                     Daniel P. Winikka (TX 00794873)
                                     JONES DAY
                                     2727 North Harwood Street
                                     Dallas, TX 75201
                                     Telephone: (214) 220-3939
                                     Facsimile: (214) 969-5100

                                     ATTORNEYS FOR DEBTORS AND
                                     DEBTORS IN POSSESSION

Kaiser Aluminum Corp., et al.
<u>Case No. 02-10429 (JKF)</u>

## <u>SUMMARY SHEET OF EXHIBITS</u>

**EXHIBIT A**
**Amendment to Settlement and Release Agreement**

**EXHIBIT B**
**Stipulation with the United States of America**

**Exhibit A**

## AMENDMENT TO SETTLEMENT AND RELEASE AGREEMENT

THIS AMENDMENT (the "Amendment") DATED AS OF JANUARY 27, 2005 TO
SETTLEMENT AND RELEASE AGREEMENT DATED AS OF OCTOBER 5, 2004 (the
"Agreement"), by and among the Debtors[1] and the Creditors' Committee:

1.     Section 4.2.f. of the Agreement shall be amended and restated as follows:

f.     Except as otherwise provided in this Section, the pre-petition intercompany Claim
held by KFC against KACC (the "KFC Claim") shall be allowed as a valid
enforceable pre-petition unsecured Claim in the amount of $1.106 billion and
shall receive the same treatment as allowed general unsecured Claims (excluding
retiree medical Claims) under any plan or plans of reorganization for KACC
and/or KAC. 75% of the KFC Claim shall be assigned to the 524(g) trust or
master tort trust on the effective date of a plan or plans of reorganization for
KACC and/or KAC, provided that such plan or plans provide for the 524(g) trust
or master tort trust to receive (a) a cash distribution of no more than $13 million
(excluding any proceeds of insurance), (b) no equity distribution from any of the
Debtors other than (i) 100% of the stock of KAE Trading, Inc. (which as of the
effective date of such plan will own only the property described in the term sheet
annexed hereto as Exhibit A) and (ii) stock of KAC in respect of 75% of the KFC
Claim and (c) no debt distribution from any of the Debtors (the "Permitted Cash
and Equity Trust Distributions"). If a plan or plans of reorganization for KACC
and/or KAC are confirmed and become effective which provide for a 524(g) trust
or master tort trust to receive cash and equity distributions in excess of the
Permitted Cash and Equity Trust Distributions, or a distribution of debt from any
Debtor, 75% of the KFC Claim shall not be assigned to the 524(g) trust or master
tort trust and the KFC Claim shall be allowed unless the United States on behalf
of EPA, DOI, NOAA, or BPA (the "US") files an objection to the allowance of the
KFC Claim within thirty (30) days after the effective date of such a plan or plans.
If the US files an objection in accordance with the preceding sentence (which
shall be the only circumstance in which the US may file an objection to the KFC
Claim), the US may object to the KFC Claim on any basis, including based on
any facts relating to the KFC-KACC note, provided, however, that the US may
not object to the KFC Claim based on the treatment of intercompany Claims
under the Agreement (as amended by the Amendment). The Debtors and the
Creditors' Committee expressly reserve their rights to oppose any such Claim
objection which shall be adjudicated by the Court.

2.     Section 7.7 of the Agreement shall be amended and restated as follows:

7.7     KACC shall pay, in cash, the reasonable fees and expenses of each of the
members of the Creditors' Committee (including indenture trustee fees and the
fees and expenses of counsel of such members) incurred in connection with the

---

[1] All terms not otherwise defined herein shall have the meaning set forth in the Agreement.

negotiation, execution and approval of the settlement contained in this Agreement and this Agreement, subject only to the Creditors' Committee filing an application with the Bankruptcy Court. The Debtors and the United States Trustee may object to the reasonableness of any particular fees or expenses sought in such application.

3.       This Amendment may be executed in two or more counterparts, in which case this Amendment shall include each such executed and delivered counterpart, each of which    shall be deemed to be part of a single instrument. This Amendment may be executed and delivered by facsimile.

4.       Except as provided in this Amendment, none of the terms of the Agreement shall be deemed to have been modified or altered in any way. The Agreement, as modified by the Amendment, shall remain in full force and effect.

5.       This Amendment shall become effective when the Agreement becomes effective but shall not be effective unless the requisite DIP Lenders and the Agent have consented to this Amendment or such consent is no longer required.

**IN WITNESS WHEREOF,** the parties have caused this Amendment to be executed as of the day and year first above written.

KAISER ALUMINUM CORPORATION

By: _____
Name: Edward F. Houff
Title: Senior Vice President + Chief Restructuring Officer

KAISER ALUMINUM & CHEMICAL CORPORATION

By: _____
Name: Edward F. Houff
Title: Senior Vice President + Chief Restructuring Officer

KAISER FINANCE CORPORATION

By: _____
Name: Edward F. Houff
Title: Senior Vice President + Chief Restructuring Officer

**KAISER ALUMINA AUSTRALIA CORPORATION**

By: _____
Name: John M. Donnan
Title: Vice President & General Counsel

**KAISER ALUMINUM TECHNICAL SERVICES, INC.**

By: _____
Name: John M. Donnan
Title: Vice President & General Counsel

**KAISER BELLWOOD CORPORATION**

By: _____
Name: John M. Donnan
Title: Vice President & General Counsel

**KAISER ALUMINIUM INTERNATIONAL, INC.**

By: _____
Name: John M. Donnan
Title: Vice President & General Counsel

**KAISER MICROMILL HOLDINGS LLC**

By: _____
Name: John M. Donnan
Title: Vice President & General Counsel

**KAISER SIERRA MICROMILLS, LLC**

By: _____
Name: John M. Donnan
Title: Vice President & General Counsel

733977v1

3

**KAISER TEXAS SIERRA MICROMILLS, LLC**

By: _____
Name: John M. Donnan
Title: Vice President & General Counsel

**KAISER TEXAS MICROMILL HOLDINGS, LLC**

By: _____
Name: John M. Donnan
Title: Vice President & General Counsel

**KAISER ALUMINUM PROPERTIES, INC.**

By: _____
Name: John M. Donnan
Title: Vice President & General Counsel

**AKRON HOLDING CORP.**

By: _____
Name: John M. Donnan
Title: Vice President & General Counsel

**OXNARD FORGE DIE COMPANY, INC.**

By: _____
Name: John M. Donnan
Title: Vice President & General Counsel

**KAISER ALUMINUM & CHEMICAL INVESTMENT, INC.**

By: _____
Name: John M. Donnan
Title: Vice President & General Counsel

733V775v1

4

**KAISER CENTER, INC.**

By:
Name: John M. Donnan
Title: Vice President & General Counsel

**ALWIS LEASING LLC**

By:
Name: John M. Donnan
Title: Vice President & General Counsel

**ALPART JAMAICA, INC.**

By:
Name: John M. Donnan
Title: Vice President & General Counsel

**KAISER JAMAICA CORPORATION**

By:
Name: John M. Donnan
Title: Vice President & General Counsel

**KAISER BAUXITE COMPANY**

By:
Name: John M. Donnan
Title: Vice President & General Counsel

**KAISER ALUMINUM & CHEMICAL OF CANADA LIMITED**

By:
Name: John M. Donnan
Title: Vice President & General Counsel

7339775v1

5

**KAISER ALUMINUM & CHEMICAL OF CANADA
INVESTMENT LIMITED**

By: _____
    Name: John m. Dennan
    Title: Vice President & General Counsel

**KAE TRADING, INC.**

By: _____
    Name: John m. Dennan
    Title: Vice President & General Counsel

**KAISER CENTER PROPERTIES**

By: _____
    Name: John m. Dennan
    Title: Vice President & General Counsel

**TEXADA MINES LTD.**

By: _____
    Name: John m. Dennan
    Title: Vice President & General Counsel

**KAISER EXPORT COMPANY**

By: _____
    Name: John m. Dennan
    Title: Vice President & General Counsel

**CREDITORS' COMMITTEE**

By: _____
    Name:
    Title:

**KAISER ALUMINUM & CHEMICAL OF CANADA
INVESTMENT LIMITED**

By:_____
    Name:
    Title:

**KAE TRADING, INC.**

By:_____
    Name:
    Title:

**KAISER CENTER PROPERTIES**

By:_____
    Name:
    Title:

**TEXADA MINES LTD.**

By:_____
    Name:
    Title:

**KAISER EXPORT COMPANY**

By:_____
    Name:
    Title:

**CREDITORS' COMMITTEE**

By:_____
    Name: Lisa G. Beckerman
    Title: Counsel to the Creditors'
           Committee

6

**Settlement Proposal Subject to Rule 408
of Federal Rules of Evidence**

## KAC PLAN TREATMENT OF PERSONAL INJURY CLAIMS AND DEMANDS

A.    Creation of PI Trust(s)

The KAC plan of reorganization (the "Plan") will provide for the creation of a trust(s) ("PI Trust(s)") that will be funded with the Trust Assets described below and will assume the liability for the Covered PI Claims described below. Appropriate channeling injunctions pursuant to Section 524(g) and Section 105 of the Bankruptcy Code will become effective upon confirmation of the Plan.

B.    Personal Injury Claims Assumed by PI Trust(s)

Each of the four categories of personal injury claims and demands set forth below ("Covered PI Claims") will be assumed by the PI Trust(s), and each will be treated as a separate class under the Plan pursuant to Section 1126 of the Bankruptcy Code.

      1.    Asbestos Claims and Demands

      2.    Silica Claims and Demands

      3.    CTPV Claims and Demands

      4.    NIHL Claims

C.    Assets ("Trust Assets") to be Contributed to the PI Trust(s)

      1.    Proceeds from existing and future postpetition settlements (consummated on or before the effective date of the Plan (the "Effective Date")) of Covered PI Claims' insurance, including the amounts currently held in two separate escrow accounts approved by orders of the Bankruptcy Court entered July 28, 2003 and December 29, 2004.

      2.    Insurance assets as follows:

            a.    Assignment of rights to proceeds under the Insurance Policies described below as to Covered PI Claims

            b.    Applicable Insurance Policies

                  i.    Insurance policies to be defined by schedule

- Pre-1985 General Liability Policies
- London ships policies
- Pre-April 15, 1990 KACC General Liability Policies, except joint MAXXAM policies

      ii.     No right to recover to the extent of any self insurance (i.e., deductibles, SIR, captives) or workers' compensation

   c.   Responsibility for and Right to Control Litigation and Settlement after Plan Consummation

      i.      PI Trust(s) will undertake, at its expense, the continuation of the insurance coverage litigation or any other pursuit of recoveries from insurers for Covered PI Claims, and no additional demands will be made on the Debtors for additional funds or distributions related to the conduct of the insurance coverage litigation or other pursuit of such recoveries, except insofar as any Debtor or affiliate thereof may be required to make a payment (premium, loss or otherwise) in order to satisfy a condition precedent (such as "exhaustion") to coverage, in which case the PI Trust(s) will advance such payment on behalf of the Debtor or affiliate.

      ii.     PI Trust(s) will have right to control the coverage litigation and to settle as to Covered PI Claims under the Insurance Policies.

      iii.    PI Trust(s) will be authorized to proceed in the name of reorganized KAC to the extent required to pursue recoveries under the Insurance Policies. If required by law, e.g., if any of the assignments of rights to insurance proceeds described above are held not to be effective, reorganized KAC will appear in and prosecute actions to pursue recoveries under the applicable insurance policies for the benefit and at the expense of the PI Trust(s).

      iv.    Reorganized KAC will undertake to provide information, including all historical files and records, to the PI Trust(s), as required in the conduct of the coverage litigation or other pursuit of recoveries for Covered PI Claims, subject to reimbursement for expenses.

3.    $13 million in cash from KACC.

4.    Distributions in respect of an $829,500,000 allowed unsecured prepetition claim against KACC (75% of the US $1.106 billion intercompany claim held by Kaiser Finance Corporation against KACC), which shall be in the form of equity of KAC and shall be made at the same time or times that equity distributions are made to other unsecured creditors of KACC.

5.    100% of the stock of KAE Trading, Inc., which, as of the effective date of the Plan, will own only the Brooklawn property located in Louisiana and the lessor's interest in a lease of such property between KACC and Defense National Stockpile Center (as modified as of October 18, 2002), except that, if, based on an updated environmental and/or appraisal report acceptable to the parties hereto, the Brooklawn property is determined to have zero or negative value, different

property acceptable to all the parties hereto shall be substituted for the Brooklawn property, provided that such substitute property shall have a value of $1 million or less.

D.    Insurance Neutrality

The parties hereto will discuss an appropriate insurance neutrality provision for inclusion in the Plan, PI Trust(s) and confirmation order.

E.    Trust and Trust Distribution Procedures

1.    TDPs established for asbestos, silica and CTPV claims and demands

2.    Matrix for payment of NIHL claims, with recoveries limited to premises insurance only.

3.    TDPs will set forth the requirements for claim submission and resolution, including specific medical criteria, product exposure requirements, claim valuation terms, mechanisms to assure consistency of treatment and conserve assets for future claims.

F.    Restrictions on Transfer of KAC Equity

The parties hereto shall cooperate with each other in formulating restrictions on transfers of reorganized KAC equity and/or share lock-up agreements regarding KAC equity in an effort to prevent an ownership change of reorganized KAC (and to provide a reasonable margin of error for such purpose), and thereby preserve the unlimited use of reorganized KAC's anticipated consolidated federal income tax net operating losses, which restrictions and/or share lock-up agreements shall be acceptable to the parties.

G.    Conditions Precedent to Plan

Court approval of (1) the settlement and release agreement regarding prepetition and postpetition intercompany claims entered into between the Debtors and the Creditors' Committee, (2) the settlement agreement entered into between the Debtors and the PBGC and (3) the amended agreement with the USWA will be conditions precedent to confirmation of the Plan, and the parties hereto agree to use their commercially reasonable best efforts to support prompt approval of each.

H.    Support of KAC Plan

All parties hereto agree to use their commercially reasonable best efforts to support prompt confirmation and consummation of the Plan with the terms described above and the pending plans of reorganization for AJI/KJC and KAAC/KFC, and to not directly or indirectly support efforts by other parties to oppose prompt confirmation of the Plan and these pending plans. The parties hereto acknowledge that there are other terms of the Plan that have not yet been agreed upon by certain parties. The rights of the parties with respect to such other provisions of the Plan, including the right to object to the Plan on the basis of such other provisions, or any provision dividing the Trust Assets described in Paragraph C hereof, are expressly reserved.

I.    Amendment of Term Sheet

This term sheet may be amended by written amendment acceptable to all the parties hereto.

Dated: _January 26, 2005_

Debtors and Debtors in Possession

By: _____

Title: Senior VP & Chief Restructuring Officer

Unsecured Creditors' Committee

By: _____

Title: _____

United Steelworkers of America

By: _____

Title: _____

I.    Amendment of Term Sheet

    This term sheet may be amended by written amendment acceptable to all the parties hereto.


Dated: _____


                                   Debtors and Debtors in Possession


                                   By:_____
                                   Title: _____


                                   Unsecured Creditors' Committee


                                   By:_____
                                   Title: _Counsel for Unsecured_
                                         Creditors' Committee


                                   United Steelworkers of America


                                   By:_____
                                   Title: _____

All parties hereto agree to use their commercially reasonable best efforts to support prompt confirmation and consummation of the Plan with the terms described above and the pending plans of reorganization for AJI/KJC and KAAC/KFC, and to not directly or indirectly support efforts by other parties to oppose prompt confirmation of the Plan and these pending plans. The parties hereto acknowledge that there are other terms of the Plan that have not yet been agreed upon by certain parties. The rights of the parties with respect to such other provisions of the Plan, including the right to object to the Plan on the basis of such other provisions, or any provision dividing the Trust Assets described in Paragraph C hereof, are expressly reserved.

I.    Amendment of Term Sheet

This term sheet may be amended by written amendment acceptable to all the parties hereto.


Dated: _____


                                    Debtors and Debtors in Possession


                                    By:_____
                                    Title: _____


                                    Unsecured Creditors' Committee


                                    By:_____
                                    Title: _____


                                    United Steelworkers of America


                                    By:_____
                                    Title:  DIRECTOR, DISTRICT #11

Pension Benefit Guaranty Corporation

By: _____

Title: _____

Asbestos Claimants' Committee

By: _____

Title: _____

Asbestos Future Claimants' Representative

_____

Silica/CTPV Future Claimants' Representative

_____

DL1-5879411v12                                    5

Pension Benefit Guaranty Corporation


By:_____
Title: _____


Asbestos Claimants' Committee


By:_____
Title: ATTORNEYS for ASBESTOS
CLAIMANTS COMMITTEE

Asbestos Future Claimants' Representative


_____


Silica/CTPV Future Claimants' Representative


_____

Pension Benefit Guaranty Corporation


By:_____
Title: _____


Asbestos Claimants' Committee


By:_____
Title: _____


Asbestos Future Claimants' Representative


_____ on behalf of Marty Murphy


Silica/CTPV Future Claimants' Representative


_____

Pension Benefit Guaranty Corporation


By: _____
Title: _____


Asbestos Claimants' Committee


By: _____
Title: _____


Asbestos Future Claimants' Representative


_____


Silica/CTPV Future Claimants' Representative

_____

**Exhibit B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                          )
                                                )    Chapter 11
KAISER ALUMINUM CORPORATION,   )    Case No. 02-10429 (JKF)
a Delaware corporation, et al.,              )    Jointly Administered
                                                )
                                                )
            Debtors                            )
                                                )

### STIPULATION FOR SETTLEMENT OF CONTROVERSY
### BETWEEN THE DEBTORS AND THE UNITED STATES OF AMERICA

Kaiser Aluminum Corporation and certain of its affiliates, including Kaiser Aluminum & Chemical

Corporation ("KACC" and collectively, the "Debtors") and the United States of America (the "United

States" and together with the Debtors, the "Parties"), agree and stipulate (the "Stipulation") as follows:

### RECITALS

A.    On February 12, 2002, KACC and fourteen affiliates filed separate, voluntary petitions for relief

under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States

Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). On March 15, 2002, two

additional debtors commenced their chapter 11 cases in the Bankruptcy Court. On January 14, 2003, the

nine remaining debtors commenced their chapter 11 cases in the Bankruptcy Court;

B.    All the cases have been consolidated for procedural purposes and are being administered jointly,

in the above-captioned case;

C.    The Debtors have filed amended federal tax returns for the years ending December 31, 1997,

December 31, 2000, and December 31, 2001 (the "Amended Returns"), claiming an aggregate tax refund

of $1,635,077

D    The United States Department of Treasury, Internal Revenue Service (the "IRS"), has allowed $1,635,077 of the aggregate tax refund claimed in the Amended Returns.

E    The IRS is prepared to pay the Debtors $1,635,077, plus any interest thereon, less an amount equal to any outstanding prepetition tax assessment against the Debtors (the "Holdback"), which Holdback the IRS will hold in administrative freeze pending the exercise of its setoff rights against the allowed aggregate tax refund claim identified in paragraph D. of this Stipulation The allowed aggregate tax refund claim identified in paragraph D of this Stipulation, plus any interest thereon, less the Holdback shall be the "Tax Refund" for purposes of this Stipulation.

F    By order dated October 27, 2003 (Docket No. 3102), the Court approved a consent decree settling the environmental claims of the United States, the States of California, Rhode Island and Washington and the Puyallup Tribe of Indians, which granted the (i) United States Department of Interior ("DOI") and the National Oceanic and Atmospheric Administration ("NOAA") an allowed claim in the amount of $5,500,000 (the "DOI/NOAA Claim") and (ii) the Environmental Protection Agency ("EPA" and together with DOI and NOAA, the "Environmental Agencies") an allowed claim of $17,828,839 (the "EPA Claim"), both against KACC.

G.    By order dated September 29, 2003 (Docket No 2972), the Bankruptcy Court granted the United States, on behalf of the Bonneville Power Administration, a power marketing administration within the Department of Energy ("BPA" and collectively with the Environmental Agencies, the "Settling Federal Agencies"), an allowed claim in the amount of $3,544,943 (the "BPA Claim") for its claims arising under (1) BPA's March 1998 Service Agreement for Point-to-Point Transmission Service with KACC and (2) BPA's January 1978 lease agreement with KACC for the lease of certain transmission equipment;

2

H    Pursuant to a Court approved stipulation, the Debtors agreed to the setoff of a portion of a refund owed them by the Department of Homeland Security, U S. Customs and Border Protection, against the BPA Claim reducing that claim to $3,303,938.89;

I    The United States contends that it is entitled to setoff the Tax Refund against the claims of the Settling Federal Agencies described in paragraphs F , G and H.; and

J    The Debtors and the Settling Federal Agencies wish to resolve their differences with respect to the Settling Federal Agencies' claims described herein

NOW, THEREFORE, without the admission of liability or any adjudication on any issue of fact or law, and upon the consent and agreement of the Parties to this by their attorneys and authorized officials, it is hereby agreed as follows:

1.    The Settling Federal Agencies are granted relief from the automatic stay of section 362 of the Bankruptcy Code to setoff the Tax Refund against the Settling Federal Agencies' claims as follows:

    a.    one half of the Tax Refund will be applied against the BPA Claim; and

    b    the balance of the Tax Refund will be applied pro rata against the DOI/NOAA Claim and the EPA Claim

2.    To effect the setoff described and agreed to in paragraph 1 of this Stipulation, the Debtors shall, upon receipt of the Tax Refund from the IRS, immediately remit payment of the Tax Refund to the United States by electronic funds transfer pursuant to instructions provided by the Department of Justice  Debtors agree and acknowledge that, notwithstanding their receipt of the Tax Refund from the IRS, they have no right, claim, or any interest in the Tax Refund nor will their receipt of the Tax Refund impair in any way the agreed setoff described in paragraph 1.

3

3. Within thirty (30) days of the United States' receipt of the remittance of the Tax Refund as described in paragraph 2 of this Stipulation, the BPA and the Environmental Agencies shall provide the Debtors and its claims and noticing agent, Logan & Company, with the exact amounts by which the BPA Claim, the DOI/NOAA Claim and the EPA Claim were reduced by the setoff permitted in accordance with paragraph 1 of this Stipulation.

4. If the tax assessment described in paragraph E of this Stipulation is ultimately determined to be less than the Holdback, the Settling Federal Agencies are granted relief from the automatic stay of section 362 of the Bankruptcy Code to setoff the difference between the assessment and the Holdback against the Settling Federal Agencies' claims in the same manner as set forth in paragraphs 1 through 3 of this Stipulation

5. Nothing herein shall affect the Debtors' rights under applicable law to contest the tax assessment or the amount of interest, both as described in paragraph E of this Stipulation.

6. Debtors shall not alter, modify or amend in any way any of the terms of this Stipulation through a plan of reorganization or otherwise.

7 Each party hereto agrees that it has fully participated in the drafting of this Stipulation The rule of law which provides that ambiguities will be construed against the drafting party in interpreting written instruments shall not be applicable to or used in resolving any dispute over the meaning or intent of this Stipulation or any of its provisions.

8. This is the full and complete agreement of the Parties, and each party has entered into this Stipulation voluntarily and without duress

9 Any disputes regarding the rights arising hereunder shall be governed by federal law.

4

10    This Stipulation is binding on the Parties' successors and assigns

11    Nothing in this Stipulation shall limit the United States' right to setoff any additional amounts it may

determine are owed Debtors against the claims of the Settling Federal Agencies, and any such right is

expressly reserved. Debtors reserve any and all defenses to the assertion of any such rights by the Settling

Federal Agencies

12    This Stipulation does not affect the rights and claims of any federal agency other than Settling

Federal Agencies

13    This Stipulation is subject to the approval of the Bankruptcy Court and is of no force and effect until

so approved

Date: __1/27/05_____          For BPA:

PETER D. KEISLER
Assistant Attorney General

RICHARD G. ANDREWS
United States Attorney

ELLEN W. SLIGHTS
Assistant U.S. Attorney

J CHRISTOPHER KOHN
TRACY J WHITAKER
MATTHEW I TROY
Attorneys, Civil Division
U S Department of Justice
P.O. Box 874, Ben Franklin Station
Washington, D.C. 20044-0875
(202) 307-0488

5

Date: 1/27/05

For EPA:

THOMAS L. SANSONETTI
Assistant Attorney General

RICHARD G. ANDREWS
United States Attorney

ELLEN W. SLIGHTS
Assistant U.S. Attorney

*Alan S. Tenenbaum*

ALAN S. TENENBAUM
ERIC S. WILLIAMS
Trial Attorneys
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
U.S. Department of Justice
P.O. Box 3986
Washington, D.C. 20026
(202) 514-5409

Date: _____

For the Debtors:

_____
Daniel J. DeFrancheschi (DE 2732)
Patrick Leathem (DE 4114)
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

and

Gregory M. Gordon (TX 08435300)
Daniel P. Winikka (TX 00794873)

6

Date: _____          For EPA:

                                 THOMAS L. SANSONETTI
                                 Assistant Attorney General

                                 RICHARD G. ANDREWS
                                 United States Attorney

                                 ELLEN W. SLIGHTS
                                 Assistant U.S. Attorney

                                 _____
                                 ALAN S. TENENBAUM
                                 ERIC S. WILLIAMS
                                 Trial Attorneys
                                 Environmental Enforcement Section
                                 Environmental and Natural Resources Division
                                 U.S. Department of Justice
                                 U.S. Department of Justice
                                 P.O. Box 3986
                                 Washington, D.C. 20026
                                 (202) 514-5409


Date: *January 27, 2005*          For the Debtors:

                                 *Kimberly D. Newmarch*
                                 Daniel J. DeFrancheschi (DE 2732)
                                 Kimberly D. Newmarch (DE 4340)
                                 RICHARDS, LAYTON & FINGER
                                 One Rodney Square
                                 P.O. Box 551
                                 Wilmington, DE 19899
                                 Telephone: (302) 651-7700
                                 Facsimile: (302) 651-7701

                                 and

                                 Gregory M. Gordon (TX 08435300)
                                 Daniel P. Winikka (TX 00794873)

6

JONES DAY
2727 North Harwood Street
Dallas, TX 75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100

SO ORDERED THIS ___ DAY OF _____ 2005.

_____
UNITED STATES BANKRUPTCY JUDGE

7