Daniel K. Hogan (DE #2814)
THE HOGAN FIRM
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: 302-656-7540
Facsimile: 302-656-7599

STUTZMAN, BROMBERG, ESSERMAN & PLIFKA,
A Professional Corporation
Sander L. Esserman (TX Bar No. 06671500)
David A. Klingler (TX Bar No. 11574300)
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone : (214) 969-4900
Facsimile: (214) 969-4999

COUNSEL FOR APPELLEES BARON & BUDD, P.C.,
SILBER PEARLMAN, LLP (in appeal from *Flintkote order*
*But not the corresponding order in Kaiser Aluminum*)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON and CERTAIN LONDON MARKET INSURANCE COMPANIES, <br><br> Appellants, <br><br> v. <br><br> BARON & BUDD, P.C., and SILBER PEARLMAN, LLP, <br><br> Appellees. | Civil Action No. 04-CV-1496 <br> Hon. Joseph J. Farnan, Jr. <br><br> Appeal from Bankruptcy Case No. 02-10429 <br> (Hon. Judith K. Fitzgerald) <br><br> Consolidated with the appeal in *In re The Flintkote Co., et al.*, Bankr. Case Nos. 04-11300 & 04-12440 <br> (Hon. Judith K. Fitzgerald) <br> D. Del. Case No. 04-CV-1521 |
| IN RE: <br><br> KAISER ALUMINUM CORP., *et al.* <br><br> Debtors. | Chapter 11 <br><br> Case Nos. 00-3837 – 3854 (JKF) <br> (Jointly Administered) |

Dated: April 6, 2005

## BRIEF OF APPELLEES BARON & BUDD, P.C., AND SILBER PEARLMAN, LLP REGARDING *FLINTKOTE* APPEAL

<u>TABLE OF CONTENTS</u>

Page(s)

TABLE OF CONTENTS ........................................................................ .ii

TABLE OF AUTHORITIES ................................................................... iv

I.    <u>RESTATEMENT OF THE ISSUES PRESENTED</u>. .........................................1

II.   <u>RESTATEMENT OF THE CASE AND THE FACTS</u>. ....................................2

      A.    <u>Nature of the Case, Course of Proceedings,
            and Disposition Below</u>. ....................................................2

      B.    <u>Statement of the Facts</u>. .................................................8

III.  <u>ARGUMENT</u> ...................................................................10

      A.    <u>Summary of Argument</u>. ..................................................10

      B.    <u>Appellants Lacks Standing to be Heard on This Appeal</u>. ..................15

            1.    **Appellants Are Not "Persons Aggrieved."** ................17

            2.    **Appellants' position in this appeal is analogous
                  to their position in *Combustion Engineering*.** ...........21

            3.    **This appeal is premature because Appellants have
                  not exhausted their options before the bankruptcy
                  court for obtaining access to the 2019 Statement
                  exhibits.** ........................................25

            4.    **Appellants' standing to maintain this appeal cannot
                  be predicated on, or buttressed by, alleged rights or
                  interests of third parties.** ............................28

            5.    **Apart from prudential limitations, Appellants do not
                  meet the "irreducible constitutional minimum"
                  requirements for standing.** ........................29

**C.**     **The Bankruptcy Court Properly Applied Rule 2019 with Flexibility Suited to the Requirements of a Complex, Mass Tort-Related Reorganization.**..................................................31

    **1.**     **Rule 2019 seeks only to protect the real parties in interest from unauthorized representation in the reorganization process.**..........................................................................38

    **2.**     **The option of disclosing exemplar retention agreements is consistent with Rule 2019.**...............................40

    **3.**     **The manner in which the 2019 Order provides for access to the 2019 Statement exhibits is appropriate and consistent with 11 U.S.C. § 107(a).**.....................................41

**IV.** **CONCLUSION.**.........................................................................................47

<u>TABLE OF AUTHORITIES</u>

**Page(s)**

A. <u>CASES</u>

*Abbott Labs v. Gardner*, 387 U.S. 136 (1967) ...................................................................27

*Allen v. Wright*, 468 U.S. 737 (1984) ................................................................. 18-19, 29

*AMTRAK v. Pennsylvania PUC*, 342 F.3d 242
(3d Cir. 2003) ........................................................................................................30

*AT&T Communications of N.J., Inc. v. Verizon
N.J. Inc.*, 270 F.3d 162 (3d Cir. 2001) ...............................................................30

*Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979) ...............................................................................................26

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*,
321 B.R. 147 (D.N.J. 2005) .............................................................. 17, 24, 34-37

*Belitskus v. Pizzingrilli*, 343 F.3d 632 (3d Cir. 2003) .....................................15

*Bennett v. Spear*, 520 U.S. 154 (1997) .............................................................18

*Califano v. Sanders*, 430 U.S. 99 (1977) ..........................................................27

*In re Caringi*, 19 B.R. 12 (Bankr. M.D. Pa. 1982) ..........................................20

*In re Cedar Shore Resort, Inc.*, 235 F.3d 375 (8th Cir. 2000)..........................20

*In re CF Holding Corp.*, 145 B.R. 124 (Bankr. D. Conn. 1992) ............... 33-34

*In re Charter Co.*, 876 F.2d 866 (11th Cir. 1989) .............................................34

*In re Chateaugay Corp.*, 104 B.R. 626 (Bankr. S.D.N.Y. 1989) ......................34

*In re Columbia Gas Sys., Inc.*, 33 F.3d 294 (3d Cir. 1994) .............................47

*In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004)........................... *passim*

*Davis v. Cox*, 356 F.3d 76, 93 n.15 (1st Cir. 2004) ..........................................21

*Depoister v. Mary M. Holloway Found.*, 36 F.3d 582 (7th Cir. 1994) .............21

**Page(s)**

*Duncan Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*,
177 F.3d 774 (9th Cir. 1999) ............................................................21

*In re Federal-Mogul Global, Inc.*, 282 B.R. 301
(Bankr. D. Del. 2002) ......................................................................37

*In re 50-Off Stores, Inc.*, 213 B.R. 646 (Bankr. W.D. Tex. 1997) ...................................44

*In re Fondiller*, 702 F.2d 441 (9th Cir. 1983) ............................................17, 19

*General Motors Acceptance Corp. v. Dykes (In re Dykes)*,
10 F.3d 184 (3d Cir. 1993) ................................................. 13, 17-18

*Gibbs & Bruns LLP v. Coho Energy Inc. (In re Coho Energy Inc.)*,
395 F.3d 198 (5th Cir. 2004) ............................................19, 21

*In re Gucci*, 193 B.R. 417 (Bankr. S.D.N.Y. 1996)........................................37

*In re Handy Andy Home Improvement*,
199 B.R. 376(Bankr. N.D. Ill. 1996) ..............................................46

*Harker v. Troutman (In re Troutman Enters.)*, 286 F.3d 359
(6th Cir. 2002) ..............................................................................21

*In re Ionosphere Clubs, Inc.,* 101 B.R. 844(Bankr. S.D.N.Y. 1989) ...............................25

*International Primate Prot. League v. Administrators of
Tulane Educ. Fund*, 500 U.S. 72 (1991)..............................................19

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
843 F.2d 636 (2nd Cir. 1988) ........................................ 14, 19, 28-29

*Ex parte Levitt*, 302 U.S. 633 (1937)..............................................18

*Lewis v. Casey*, 518 U.S. 343 (1996)..............................................19

*Lopez v. Behles (In re American Ready Mix, Inc.)*,
14 F.3d 1497 (10th Cir. 1994) ......................................... 20-21

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..........................................30

**Page(s)**

*In re Marlar*, 252 B.R. 743 (Bankr. 8th Cir. 2000),
*aff'd*, 267 F.33d 749 (8th Cir. 2001) .................................................................21

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*,
312 U.S. 270 (1941) ..................................................................................................27

*McConnell v. FEC*, 540 U.S. 93 (2003)....................................................... 29-30

*McGuirl v. White*, 86 F.3d 1232 (D.C. Cir. 1996) ...............................................21

*National Org. for Women, Inc. v. Scheidler*, 510 U.S. 249(1994)....................15

*Nixon v. Warner Comm., Inc.*, 435 U.S. 589 (1978)............................................44

*O'Brien v. Vermont (In re O'Brien)*, 184 F.3d 140 (2[d] Cir. 1999) ................21

*In re Oklahoma P.A.C. First Ltd. P'ship*, 122 B.R. 387
(Bankr. D. Ariz. 1990) .............................................................................................34

*In re Orion Pictures Corp.*, 21 F.3d 24 (2d Cir. 1994) ............................... 44-46

*Peachlum v. City of York, Pa.*, 333 F.3d 429 (3d Cir. 2003) .............................26

*In re Pacor, Inc.*, 743 F.2d 984 (3d Cir. 1984) ....................................................37

*In re Phar-Mor, Inc.*, 191 B.R. 675 (Bankr. N.D. Ohio 1995)..........................44

*Philadelphia Federation of Teachers, American Federation
of Teachers, Local 3, AFL-CIO v. Ridge*, 150 F.3d 319
(3d Cir. 1998) ...........................................................................................................26

*In re Public Serv. Co.*, 88 B.R. 546 (Bankr. D.N.H. 1988) ...............................25

*In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000) .....................................18

*Ryker v. Current (In re Ryker)*, 301 B.R. 156 (D.N.J. 2003) ............................15

*Schlesinger v. Reservists to Stop the War*, 418 U.S. 208 (1974) ...............16, 31

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ......................................................31

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1976)........................30

**Page(s)**

*Singleton v. Wulff*, 428 U.S. 106 (1976) ......................................................14, 28

*Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293 (3d Cir. 2003) ..............14, 28

*In re Timbers of Inwood Forest Associates, Inc.*, 793 F.2d 1380 (5th Cir. 1986), *aff'd en banc*, 808 F.2d 363, *aff'd* 484 U.S. 365 (1988) ......................................20

*Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737 (3d Cir. 1995) .......... 13, 16, 18-19, 24

*In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003) .........................................47

*United States v. AVX Corp.*, 962 F.2d 108 (1st Cir. 1992) ...............................................15

*United States ex rel. Chapman v. Fed. Power Comm'n*, 345 U.S. 153 (1953) .....................................................15

*United States v. Continental Airlines (In re Continental Airlines)*, 150 B.R. 334 (D. Del. 1993)................................................................32, 42, 44

*Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000).................................................... 2, 14, 29-30

*In re Vestra Indus., Inc.*, 82 B.R. 21 (Bankr. D.S.C. 1987)...............................................34

*In re Vertientes, Ltd.*, 845 F.2d 57 (3d Cir. 1988) ............................................................44

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................. 15-16, 18, 28

*Westwood Cmty. Two Assoc., Inc. v. Barbee (In re Westwood Cmty. Two Assoc., Inc.)*, 293 F.3d 1332 (11th Cir. 2002) ...........................................20-21

*White v. Univision of Va. Inc. (In re Urban Broad. Corp.)*, No. 04-1262, 2005 WL 563890 (4th Cir., Mar. 11, 2005) .................................................21

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ...................................................30

*Wilson v. Valley Elec. Membership Corp.*, 141 B. R. 309 (Bankr. D. La. 1992).......................................................................5, 33

**Page(s)**

**B. STATUTES**

11 U.S.C. § 67(c) (repealed 1978) ..................................................................17, 20

11 U.S.C. § 107(a) ...........................................................................41-42, 44-46

11 U.S.C. § 524(g) .........................................................................................11

11 U.S.C. § 1125 ............................................................................................40

28 U.S.C. § 155 ..............................................................................................37

11 U.S.C. § 1334 ............................................................................................37


**C. RULES**

FED. R. BANKR. P. 2014 ....................................................................................31

FED. R. BANKR. P. 2015 ....................................................................................31

FED. R. BANKR. P. 2016 ....................................................................................31

FED. R. BANKR. P. 2019 ............................................................................ *passim*

FED. R. BANKR. P. 9018 ....................................................................................45

**D. CONSTITUTIONAL PROVISIONS**

U.S. CONST. art. I, § 6, cl. 2 ..............................................................................16

U.S. CONST. art. III, § 2 ...............................................................................18, 29

**E. TREATISES**

Erwin Chemerinsky, FEDERAL JURISDICTION § 2.3.1 (1989) ...........................................26

9 Lawrence P. King, *et al.*, COLLIER ON BANKRUPTCY
§ 2019.02 (15th ed. 2004) ........................................................................... 38-39

9 Lawrence P. King, *et al.*, COLLIER ON BANKRUPTCY
§ 2019.04 (15th ed. 2004) ..........................................................................5, 33, 35

**Page(s)**

9 Lawrence P. King, *et al.*, COLLIER ON BANKRUPTCY
§ 2019.05[2](15th ed. 2004).................................................................................................39

**F.** **LEGISLATIVE MATERIALS**

H.R. Rep. No. 595 (1975), reprinted in 1978 U.S.C.C.A.N. 6179 ...................................20

**G.** **ONLINE SOURCES**

Bankruptcy Statistics for 2003 Calendar Year by Chapter,
accessible at http://www.uscourts.gov/bnkrpctystats/statistics.htm. ..................................................3

The law firms of Baron & Budd, P.C. and Silber Pearlman, LLP (collectively, "Appellees") file this brief in connection with the appeal in the *Flintkote* reorganization case[1] by Certain Underwriters at Lloyd's, London, and Certain London Market Insurers (collectively, the "London Market Insurers" or "Appellants") from the "Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019" (the "2019 Order", D.I. 337) issued by the United States Bankruptcy Court for the District of Delaware, Honorable Judith K. Fitzgerald, on October 22, 2004.[2]

## I.  RESTATEMENT OF THE ISSUES PRESENTED.

1.      Whether, because (a) the 2019 Order does not "directly and pecuniarily" affect Appellants' rights and, (b) they are therefore *not* "persons aggrieved", Appellants have standing to be heard in this appeal[3] in light of longstanding Third Circuit precedent reaffirmed in *In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004), that

---

[1]     This case involves consolidated appeals from identical orders entered by the bankruptcy court, Honorable Judith K. Fitzgerald, in two separately administered bankruptcy cases:  *In re The Flintkote Co., et al.*, Bankr. Case No. 04-11300, and *In re Kaiser Aluminum Corp., et al.*, Bankr. Case No. 02-10429.  Baron & Budd, P.C., and Silber Pearlman, LLP, are appellees with respect to the subject orders entered in both cases, but this brief is submitted on their behalf only in connection with the appeal of the order in *Flintkote*.  As to the appeal from the order in *Kaiser Aluminum*, Appellees are represented by separate counsel.

[2]     A true copy of the 2019 Order in *Flintkote* is appended hereto for the Court's convenient reference.   Specific docket numbers cited herein refer to the corresponding items docketed these consolidated appeals (*i.e.*, D.I. ___) or in the underlying *Flintkote* bankruptcy case (*i.e.*, Bankr. D.I. ___) unless otherwise indicated.

[3]     As used herein, "this appeal" refers to the appeal of the 2019 Order issued in *Flintkote*.   Similarly, references to the "Underlying Bankruptcy Case" are to the jointly administered *Flintkote* case.  (The Flintkote Co. is debtor in Bankruptcy Case No. 04-11300 and its Canadian subsidiary, Flintkote Mines Limited a/k/a Flintkote Mines Limitee, is debtor in Bankruptcy Case No. 04-12440.  These cases are jointly administered as Case No. 04-11300.

conditions appellate standing in bankruptcy on "person aggrieved" status with respect to the order from which appeal is taken?

2.     Whether, because Appellants have failed to avail themselves of the procedure set forth in the 2019 Order for obtaining access to the disclosure they seek through this appeal, this appeal is premature under the ripeness doctrine?

3.     Whether Appellants' standing to be heard is further compromised by their speculative assertions of future developments in the administration of the Underlying Bankruptcy Case[4] and their advocacy of alleged rights of third parties?

4.     Apart from prudential concerns, whether Appellants meet even the "irreducible constitutional minimum" standing requirements under Article III of the United States Constitution?  *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000).

5.      Whether the bankruptcy court properly applied Rule 2019, with flexibility suited to the particular requirements of a complex, mass tort-related bankruptcy case?

## II.  RESTATEMENT OF THE CASE AND THE FACTS.

### A.     Nature of the Case, Course of Proceedings, and Disposition Below.

Appellees are law firms that each represent numerous personal injury tort victims asserting claims against The Flintkote Co., *et al.* (collectively, "Debtors" with "Debtor" referring only to The Flintkote Co.), debtors in the Underlying Bankruptcy Case.

---

[4]     References herein to the "Underlying Bankruptcy Case" shall mean the jointly administered *Flintkote* case.  The Flintkote Co. is debtor in Bankruptcy Case No. 04-11300 and Flintkote Mines Limited a/k/a Flintkote Mines Limitee is debtor in Bankruptcy Case No. 04-12440.  These cases are jointly administered as Case No. 04-11300.

Debtors seek to reorganize in bankruptcy, largely to address their vast asbestos-related liabilities to Appellees' clients and other tort victims.[5]  Appellants are some of Debtor's liability insurers.  Upon information and belief, substantial insurance coverage litigation involving several of Debtor's liability insurers, representing a significant asset of Debtor's estate, remains pending in a California state court.[6]

The unlikely lightning rod for these consolidated appeals is Federal Rule of Bankruptcy Procedure 2019, an obscure rule implicated in less than one percent of all bankruptcy cases.  It applies *only* in reorganization cases – i.e., cases brought under chapters 9 (municipalities) and 11 (reorganizations) of the Bankruptcy Code.[7]  In such cases, Rule 2019 requires limited disclosure by "entities", generally law firms,

---

[5]   According to the Affidavit of David J. Gordon – the sole trustee of The Flintkote Trust, which purportedly holds all the stock of Debtor in trust for the sole benefit of Long Beach Memorial Medical Center – in Support of First Day Motions, D.I. 2 docketed on May 1, 2004, Debtor was "primarily engaged" for most of the twentieth century "in the manufacture, processing and distribution of building materials" some of which contained asbestos.  ¶¶ 8, 15.  Flintkote Mines Limited is Debtor's wholly-owned Canadian subsidiary.  ¶ 16.  A true copy of this affidavit as docketed is attached to the accompanying Declaration of David A. Klingler ("Klingler Declaration") as Exhibit 1.

[6]   The Affidavit of Kurt W. Melchior in Support of Application for an Order Authorizing the Debtor to Employ Nossaman Guthner Knox & Elliott LPP as Special Insurance Counsel in Matters Related to Pru-Re Pursuant to 11 U.S.C. § 327(e) and Disclosure of Compensation Pursuant to 11 U.S.C. § 329, included at Bankr. D.I. 9, describes at ¶ 2 thereof the "Pru-Re Litigation" instituted by several of Debtor's excess liability insurers before the San Francisco Superior Court on May 2, 2002. The insurers sought declaratory relief and the Debtor answered and counterclaimed, seeking compensatory and punitive damages, pre-judgment interest and attorneys' fees.  A true copy of this affidavit as docketed is attached to the accompanying Klingler Declaration as Exhibit 2.

[7]   Calendar year 2003 saw the filing of 1,177,292 Chapter 7 cases (70.9% of all bankruptcy cases), and only 9,404 Chapter 11 cases (0.6% of all bankruptcy cases). The number of Chapter 9 cases filed in 2003 appears to have been negligible – less

---

representing more than one creditor for the purpose of assuring that such agents (*i.e.*, lawyers) are authorized to do so by their respective principals (*i.e.*, clients).

Rule 2019 is entitled "Representation of Creditors and Equity Security Holders in Chapter 9 Municipality and Chapter 11 Reorganization Cases." It provides, *in toto*, as follows:

### (a) Data required

In a chapter 9 municipality or a chapter 11 reorganization cases, except with respect to a committee appointed pursuant to § 1102 or 1114 of the [Bankruptcy] Code, every entity or committee representing more than one creditor or equity security holder and, unless otherwise directed by the court, every indenture trustee, shall file a verified statement setting forth (1) the name and address of the creditor or equity security holder; (2) the nature and amount of the claim or interest and the time of acquisition thereof unless it is alleged to have been acquired more than one year prior to the filing of the petition; (3) a recital of the pertinent facts and circumstances in connection with the employment of the entity or indenture trustee, and, in the case of a committee, the name or names of the entity or entities at whose instance, directly or indirectly, the employment was arranged or the committee was organized or agreed to act; and (4) with reference to the time of the employment of the entity, the organization or formation of the committee, or the appearance in the case of any indenture trustee, the amounts of claims or interests owned by the entity, the members of the committee or the indenture trustee, the times when acquired, the amounts paid therefore, and any sales or other disposition thereof. The statement shall include a copy of the instrument, if any, whereby the entity, committee, or indenture trustee is empowered to act on behalf of creditors or equity security holders. A supplemental statement shall be filed promptly, setting forth any material changes in the facts contained in the statement filed pursuant to this subdivision.

### (b) Failure to comply; effect

On motion of any party in interest or on its own initiative, the court may (1) determine whether there has been a failure to

---

than 100. *See* Bankruptcy Statistics for 2003 Calendar Year by Chapter, accessible at http://www.uscourts.gov/bnkrpctystats/statistics.htm.

comply with the provisions of subdivision (a) of this rule or with any other applicable law regulating the activities and personnel of any entity, committee, or indenture trustee or any other impropriety in connection with any solicitation and, if it so determines, the court may refuse to permit that entity, committee, or indenture trustee to be heard further or to intervene in the case; (2) examine any representation provision of a deposit agreement, proxy, trust mortgage, trust indenture, or deed of trust, or committee or other authorization, and any claim or interest acquired by any entity or committee in contemplation or in the course of a case under the Code and grant appropriate relief; and (3) hold invalid any authority, acceptance, rejection, or objection given, procured or received by any entity or committee who has not complied with this rule or with § 1125(b) of the Code.

Strict compliance with the literal terms of Rule 2019 is often impractical and can be varied.   9 Lawrence P. King, *et al.*, COLLIER ON BANKRUPTCY § 2019.04 (15th ed. 2004).   Mass tort-driven reorganizations like Debtors' and, for that matter Kaiser Aluminum's, are cases in point.  Personal injury law firms with expertise in the particular tort(s) involved, such as Appellees, may represent hundreds or even thousands of tort victims with claims against a debtor's estate.  *See, e.g., Wilson v. Valley Elec. Membership Corp.*, 141 B. R. 309 (Bankr. E.D. La. 1992) (attorney representing thousands of class members not required to file 2019 statement).  Invariably, by the time a mass tort debtor files bankruptcy, a number of its tort victims have already died from their afflictions; others are elderly and/or infirm.  The only practical way for most mass tort victims to participate in a bankruptcy reorganization case is through their personal injury counsel.

Among sitting bankruptcy judges, Judge Fitzgerald is perhaps uniquely familiar with the complexities and issues arising in mass tort insolvencies, including issues relating to Rule 2019.   As Chief Bankruptcy Judge in the Western District of Pennsylvania and sitting by designation in the Underlying Bankruptcy Case and a

number of other mass tort insolvencies in the District of Delaware, she presides over at least 13 major, active mass tort bankruptcies.[8]  Applying her extensive expertise, Judge Fitzgerald issued the 2019 Order on October 22, 2004, directing how entities within the purview of Rule 2019 were to comply with the rule in the Underlying Bankruptcy Case.[9]

The 2019 Order states that compliance with its terms shall be deemed to be full compliance with Rule 2019 for all purposes in the Underlying Bankruptcy Case.  It requires the following:

> (i)  any entity representing more than one creditor or equity security holder (except for official committees) must file a Rule 2019 Statement ["Rule 2019 Statement"] with the Clerk;
>
> (ii)  the docket entry concerning filed Rule 2019 Statements is to state that exhibits accompanying the statements have not been scanned into the docket but are available upon motion to and order of the bankruptcy court;
>
> (iii)  exhibits to the Rule 2019 Statements are to be submitted to the Clerk on compact discs in lieu of electronic filing;
>
> (iv)  each 2019 Statement is to be verified and shall include as exhibits:

---

[8]  In the Western District of Pennsylvania, Judge Fitzgerald presides over *Mid-Valley* (03-35592), *Global Industrial Technologies* (02-21626), *North American Refractories Company* (02-20198), and *Pittsburgh Corning Corp.* (00-22876).  Her Delaware docket includes, in addition to the *Flintkote* and *Kaiser Aluminum* reorganization cases, *Owens Corning* (00-3837) *Armstrong World Industries* (00-4471), *W.R. Grace & Co.* (01-1139), *USG Corp.* (01-2094), *U.S. Mineral Products Co.* (01-2471), *ACandS, Inc.* (02-12687), and *Combustion Engineering* (03-10495).

[9]  The bankruptcy court contemporaneously issued identical orders relating to Rule 2019 compliance in the other mass tort bankruptcies before it where plans of reorganization had not been confirmed.  Appeals are pending with respect to the 2019 orders issued in *Owens Corning* and *Pittsburgh Corning*.  The appellants in the *ACandS* appeal have just recently withdrawn their appeal from the 2019 order issued in that case.

(A)     a blank, unredacted exemplar or an actual copy of each form of agreement or instrument, if any, whereby the filing entity is empowered to act on behalf of creditors or equity security holders in the Underlying Bankruptcy Case; and

(B)     an Excel spreadsheet in a prescribed format containing the following data:

    (1)     the name and personal address of each creditor or equity security holder represented by the filing entity;

    (2)     reserved space for social security numbers or other identifiers as may be required by a further order of the bankruptcy court;

    (3)     identification of the form of exemplar referenced above executed by the creditor or equity holder and the date of such execution;

    (4)     the amount of and creditors' liquidated claims and a notation that any unliquidated claims are unliquidated;

    (5)     the date of acquisition of the creditor's claim unless acquired more than one year prior to the commencement of the Underlying Bankruptcy Case;

    (6)     for personal injury claimants, the type of disease giving rise to the claim, and for other claimants, the nature of the claim or interest; and

    (7)     a recital of pertinent facts and circumstances surrounding the employment of the entity.

Under the 2019 Order, Rule 2019 Statements were to have been filed no later than December 21, 2004 (sixty days after the date of the 2019 Order).[10]  Appellees have filed 2019 Statements in compliance with the 2019 Order and have submitted the required Exhibits on compact disks as directed.[11]

B.    **Statement of the Facts**.

Appellants "do not dispute that the [2019 Order] 'generally' requires the asbestos claimants' law firms to submit the four items of information specified in Rule 2019(a)."[12] Brief of Appellants (D.I. 13, hereinafter Appellants' Brief) at 9.   However, the information specified in Rule 2019(a) – information germane to a proper Rule 2019 inquiry that Appellants acknowledge is "'generally' require[d]" by the 2019 Order – is not what Appellants covet or what motivates their appellate exertions.

Appellees, in common with all personal injury law firms of any significant size, employ standard retention agreements when they undertake to represent a client.

---

[10]   At a hearing on December 16, 2004, in the *Pittsburgh Corning* chapter 11 case, the bankruptcy court orally ruled that this deadline would be extended in all the cases in which 2019 Orders had been issued for two weeks, through January 4, 2005.

[11]   Baron & Budd, P.C.'s statement was docketed on December 17, 2004 (Bankr. D.I. 446) and Silber Pearlman, LLP's on January 20, 2005 (Bankr. D.I. 602).  The brief delay in the docketing of Silber Pearlman's statement was occasioned by a notice from the clerk on January 13, 2005 (Bankr. D.I. 640) of unspecified defects in the exhibits accompanying its previously filed statement, which were swiftly rectified. True copies of Appellees' respective statements as docketed are attached to the Klingler Declaration as Exhibits 3 and 4, respectively.

[12]   Appellants evidently refer to the following four items of information:  (1) each creditor's name and address; (2) the nature and amount of each creditor's claim and the time of its acquisition unless it is alleged to have been acquired more than one year pre-petition; (3) a recital of the pertinent facts and circumstances relating to the employment of the law firm; and (4) with reference to the time of the employment of the law firm, the amounts of claims owned by the law firm, the times when acquired,

Contained within each retention agreement is a power of attorney or other authorization pursuant to which the law firm is empowered to act on behalf of the client. These are the so-called "representation provisions" expressly referred to in Rule 2019(b); these provisions establish counsel's authority to act for the client. The retention agreements also address other matters that have nothing to do what vetting and validating counsel's agency to act on behalf of multiple clients. Much of this irrelevant and extraneous content is confidential, as might well be expected in the context of contractual undertakings between lawyers and clients.

Mindful that only a small portion of most standard retention agreements – typically a power of attorney – has any relevance to the proper inquiry under Rule 2019, the 2019 Order affords Appellees and other filers of 2019 Statements the option of submitting unredacted exemplars of their form retention agreement.[13] The submission of exemplars, while fairly serving the purpose of Rule 2019, does little to satiate Appellants' appetite for insinuating themselves into the fiduciary relationships between Appellees and their respective clients. Appellants cavalierly maintain that the bankruptcy court erred by not requiring the actual retention agreements signed by each client (many thousands in some cases) to be furnished for Appellants' inspection.

Appellants further contend that the bankruptcy court erred by denying them instantaneous access, via that court's electronic docketing system, to the exhibits accompanying Appellees' 2019 Statements. In keeping with the 2019 Order, the exhibits

---

the amounts paid therefore, and any sales or other disposition thereof. *See, generally*, Fed. R. Bankr. P. 2019(a).

[13] If counsel submits exemplars in lieu of copies of the actual retention agreements, the 2019 Order requires counsel to specify which clients signed which form(s) of agreement.

were initially provided by compact disk only to the clerk of the bankruptcy court, the
Debtors, and the United States Trustee.  Appellants mischaracterize this procedure as
"erroneously seal[ing] the law firms' disclosure statements away from public view …
allowing access only upon motion to an order of the bankruptcy court."  Appellants'
Brief at 15.  The 2019 Statement exhibits are hardly "sealed" when Appellants have the
option, under the express terms of the 2019 Order, to file a motion requesting a separate
order from the bankruptcy court permitting them access to the exhibits.

> The 2019 Order provides that

> > It is further **ORDERED** that the docket entry of the  [2019]
> > statement that is filed shall state that Exhibits (as described
> > below) have not been scanned into the docket *but are available
> > upon motion to and order of the Court*.

2019 Order at 2 (emphasis added).  Appellants thus challenge the 2019 Order on appeal
without having exhausted their options before the bankruptcy court.[14]

### III. ARGUMENT

**A.    Summary of Argument.**

This appeal challenges the bankruptcy court's reasoned and eminently reasonable
ruling designed to assure compliance with Bankruptcy Rule 2019 – a rule mandating
limited disclosure for a specific, narrow, and salutary purpose – without compelling the
immediate, widespread dissemination of confidential and irrelevant information to

---

[14]    In the *Owens-Corning* bankruptcy, a financial creditor and one of the debtors'
insurers successfully availed themselves of this prerogative under the identical 2019
order issued in that case.  Upon hearing, the bankruptcy court permitted these parties
to access the exhibits, but required them to maintain the confidentiality of the
material pending further order of the bankruptcy court.  *See In re Owens-Corning , et
al.*, D.I. 14117 therein, attached as Exhibit 5 to the Klingler Declaration.

Appellants, which are tactical adversaries of Appellees' clients, and the public at large.[15] Appellants are little interested in the legitimate, ministerial process of vetting the authority of personal injury counsel (and others who represent more than one creditor or equity holder) to participate in the underlying bankruptcy reorganization on behalf of their various clients. That is the raison d'être for Rule 2019, but it is not what drives this appeal.

As non-creditor bystanders[16] in the Underlying Bankruptcy Case, Appellants' agenda is opportunistic and their purpose ulterior. Without regard for the objective that Rule 2019 disclosure is intended to accomplish, Appellants marshal the rule in an effort to compel immediate disclosure to them and the public at large of confidential, non-debtor information. Appellants' invocation of Rule 2019 is in furtherance of their own tactical, and undoubtedly improper, purposes. As tactical adversaries of Appellees' clients, Appellants relish any opportunity intrude upon in the attorney-client relationships between Debtors' tort victims and their respective counsel. Appellants are little concerned with Rule 2019's narrow purpose of validating counsel's authority to act on behalf of multiple creditors.

---

[15] The adversarial posture between Debtors' tort creditors, including Appellees' clients, and Debtors' liability insurers, which include Appellants, is self-evident.

[16] Appellants are bystanders in the sense their rights and obligations will not be affected by any plan of reorganization that might be confirmed. Judge Fitzgerald requires that all plans in mass tort reorganizations include insurance neutrality provisions effectively reserving all disputed insurance coverage issues to adjudication in coverage litigation. Moreover, since any plan likely to emerge in the Underlying Bankruptcy Case will include injunctive relief pursuant to 11 U.S.C. § 524(g), no plan could be confirmed without this Court's imprimatur. *See* 11 U.S.C. § 524(g)(3)(A) (the order confirming such a plan must be "issued or affirmed by the district court").

Judge Fitzgerald, whose familiarity with the complexities of mass tort bankruptcies is widely recognized, properly discerned the rationale underlying Rule 2019. The bankruptcy court's 2019 Order limits the disclosure and dissemination of information to what Rule 2019 requires in light of its purpose. In formulating the 2019 Order, Judge Fitzgerald was appropriately mindful of the fact that the propriety of counsel's agency – what Appellants refer to in their brief as "empowerment" – is the *sole* concern of Rule 2019. Appellants' interest in examining the "empowering documents" – Appellants' self-serving characterization of the retention agreements – for each of Appellees' respective clients has little if anything to do with the portion thereof that does the actual empowering (*i.e.*, the power of attorney). Appellants' are voyeuristically and opportunistically driven; they want to examine and, wherever possible, trespass upon and disrupt the fiduciary relationships between mass tort victims and their counsel.

At best, this appeal is doubtful on the merits. The threshold question confronting this Court, however, is whether the merits should even be reached. The ripeness of the appeal is questionable, since Appellants' have not exhausted their remedies before the bankruptcy court as provided in the 2019 Order. Appellants' lack of standing to appeal, however, poses an insurmountable hindrance to consideration of the merits. Appellants' efforts to demonstrate that they meet the prerequisites for appellate standing are perfunctory, conclusory, unpersuasive, and ultimately futile in light of the Third Circuit's *Combustion Engineering* decision. Their dubious standing credentials are not lost on Appellants, who come close to acknowledging their lack of appellate standing under the controlling legal authority.

*Combustion Engineering*[17] reiterates, in the context of a mass tort bankruptcy, the longstanding prudential rule that only parties "whose rights or interests are 'directly and adversely affected pecuniarily' by and order or decree of the bankruptcy court" (*i.e.*, "persons aggrieved") have standing to appeal therefrom.   391 F.3d at 214 (*quoting General Motors Acceptance Corp. v. Dykes (In re Dykes)*, 10 F.3d 184, 187 (3d Cir. 1993)).  *Combustion Engineering* and its progenitors in the case law foreclose appellate standing here precisely because Appellants are not "persons aggrieved" by the 2019 Order.  Any direct and pecuniary affect that the 2019 Order might have on Appellants' rights is so doubtful as to be ethereal.   Indeed, the 2019 Order can have *no effect* on Appellants' *unless* a host of contingencies were to occur:  (1) a plan of reorganization must first be conceived, then approved by creditors, and finally confirmed; (2) payment must be sought from Appellants under the respective policies of insurance they issued to Debtor; and (3) Appellants must thereafter be found to be liable *as a direct consequence of either (i) their inability to inspect the retention agreements between Appellees and their respective clients, or (ii) restrictions on dissemination of the Rule 2019 Statement exhibits set forth in the 2019 Order.  See Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 742 (3d Cir. 1995) (insurer is not "person aggrieved" where "its interest is too contingent to have been 'directly affected' by [challenged bankruptcy court order].").  The notion that Appellants will somehow be able to avert liability on their policies upon the confirmation of a yet-to-be-drafted plan of reorganization but for the bankruptcy court's 2019 Order is too attenuated and fraught with conjecture to be credited.

---

[17]  Appellants are thoroughly familiar with *Combustion Engineering*.   They were appellants in that case, too, and the Third Circuit held that their standing to appeal the

Appellants' run afoul of another prudential limitation. They try to buttress their own doubtful standing by trumpeting the alleged interest of the public at large. Litigants generally must assert their own legal rights and interests, and cannot rest claims to relief on the legal rights or interests of third parties. *See, e.g., Singleton v. Wulff*, 428 U.S. 106, 113 (1976); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 298 (3d Cir. 2003) ("In general, a litigant may assert only his own legal rights or interests, and can not rest a claim to relief on the legal rights or interests of third parties."); *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 643 (2d Cir. 1988) (court declined to permit a current asbestos disease claimant to assert rights of future asbestos claimants in addition to his own).

Even if prudential limitations did not foreclose Appellants' standing to be heard on appeal, their ability to surmount even the "irreducible constitutional minimum" requirements is highly suspect. *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). Particularly in the absence of even a draft plan, Appellants cannot establish an (i) injury, (ii) fairly traceable to Appellees' allegedly unlawful conduct, (iii) that is likely to be redressed by the relief they seek from this Court. Stated differently, Appellants are not able to show how they, as non-creditor insurers of the Debtor, have suffered (or will suffer) a concrete injury by not being afforded (i) an opportunity to examine executed retention agreements for each of Appellees' respective clients, and (ii) immediate, unfettered access to the 2019 Statement exhibits that Appellees have provided in compliance with the 2019 Order.

---

confirmed plan of reorganization was significantly constrained and strictly limited to those provisions of the plan that "aggrieved" them. 391 F.3d at 218-20.

The judgment of the bankruptcy court should be affirmed. This appeal is premature and, in any event, Appellants lack standing to be heard. Even if the Court were to consider the merits, this appeal lacks essential merit and affirmance is appropriate.

**B.    Appellants Lack Standing To Be Heard on This Appeal.**

The law of standing is a "complicated specialty of federal jurisdiction …" *United States ex rel. Chapman v. Fed. Power Comm'n*, 345 U.S. 153, 156 (1953). "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). All limitations on standing are "founded in concern about the proper – and properly limited – role of courts in a democratic society." *Id.* (citations omitted).

Whether a party has standing to be heard is always a threshold consideration. *Id.* The issue of standing is so fundamental that it may be raised for the first time on appeal.[18] *Belitskus v. Pizzingrilli*, 343 F.3d 632, 639 (3d Cir. 2003) (*citing Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994), and stating "[t]he fact that the Commonwealth asserts this argument for the first time on appeal is immaterial, as standing represents a jurisdictional requirement which remains open to review at all stages of the litigation").

Defects in standing cannot be waived; indeed, the parties or the court are obliged to raise them whenever they become evident. *United States v. AVX Corp.*, 962 F.2d 108, 116 n.7 (1st Cir. 1992); *Ryker v. Current (In re Ryker)*, 301 B.R. 156, 160 (D.N.J. 2003) (recognizing that "[s]tanding is subject to review at all stages of litigation because a lack

of standing undermines the jurisdiction of not only the bankruptcy court, but also the district court acting as an appellate tribunal").  The burden of alleging facts needed to establish standing falls on the party seeking to invoke the jurisdiction of the court and the exercise of the court's remedial powers – here, Appellants.  *Id.* at 518.

Time and again, both the United States Supreme Court and the United States Court of Appeals for the Third Circuit have reminded officious litigants that standing is a prerequisite to being heard in federal court.  *See, e.g., Warth v. Seldin*, 422 U.S. at 495 (holding that low and moderate-plaintiffs did not have standing to challenge as exclusionary a zoning ordinance of Penfield, New York, that allocated 98% of the town's vacant land to single-family detached housing with additional requirements relating to lot size, setback, floor area, and habitable space); *Schlesinger v. Reservists to Stop the War*, 418 U.S. 208 (1974) (holding that an association of military reservists and concerned citizens did not have standing to challenge the membership of Members of Congress in the Armed Forces Reserve as an alleged violation of the Incompatibility Clause[19]); *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d at 744 (holding that liability insurer lacked standing to challenge the reinstatement of tort claims after the discovery of additional insurance coverage, where such claims had previously been withdrawn based, in part, on a perceived lack of funds available for their satisfaction).  More recently, in *Combustion*

---

[18]  In the present case, of course, the question is whether Appellants have the requisite *appellate* standing.

[19]  The Incompatibility Clause provides that "No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been encreased during such time, and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office."  U.S. CONST. art. I, § 6, cl. 2.).

*Engineering*, the Third Circuit reminded these same Appellants of the indispensability of standing.

1.      **Appellants Are Not "Persons Aggrieved".**

In *Combustion Engineering*, the Third Circuit's discussion of standing in the context of a mass tort bankruptcy was extensive, consuming ten pages of the 49-page reported opinion.  As they must, Appellants concede, at page 7 of their brief, that "[s]tanding to appeal in a bankruptcy case is limited to 'persons aggrieved' by an order of the bankruptcy court." *Combustion Engineering*, 391 F.3d at 214.  That concession is very nearly the whole ball of wax.  Even the case Appellants seem to find most heartening on their merits arguments, *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147 (D.N.J. 2005), forecloses their standing to be heard here, acknowledging, as it does, the "'restrictive approach to bankruptcy appellate standing' characterized by application of the 'persons aggrieved'" mandated by the Third Circuit.  *Id.* at 160 n.4 (*quoting Combustion Engineering*, 391 F.3d at 214 n.21).

In *Combustion Engineering*, the court notes the origin of the "person aggrieved" test – the Bankruptcy Act of 1898[20] – and states that it "… now exists as a prudential standing requirement that limits bankruptcy appeals to persons 'whose rights or interests are "directly and adversely affected pecuniarily" by an order or decree of the bankruptcy court." *Id.* (*citing Dykes*, 10 F.3d at 187 and *In re Fondiller*, 707 F.2d 441, 443 (9th Cir.

---

[20]    11 U.S.C. § 67(c) (1976) ("A person aggrieved by an order of a referee may … file with the referee a petition for review ….") (repealed 1978).

1983)).[21]  The burden that must be borne by those who, like Appellants, seek to appeal from a bankruptcy court order is real, significant, and cannot be ignored:

> "P]ersons aggrieved" ***must show*** the order of the bankruptcy court "diminishes their property, increases their burdens, or impairs their rights."

*Id.* (*quoting In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000) (*citing Dykes*, 10 F.3d at 187)) (emphasis added).

"Appellate standing in the bankruptcy context is more restrictive than Article III standing,[22] which 'need not be financial and need only be "fairly traceable" to the alleged illegal action.'"  *Id.* at 215 (*citing Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995).  "This more stringent appellate standing requirement rests on the 'particularly acute' need to limit appeals in bankruptcy proceedings, which often involve a 'myriad of parties … indirectly affected by every bankruptcy court order[.]'"  *Id.* (*citing*

---

[21]  Prudential limitations to standing, in contrast to constitutional limitations that are discussed in part III.B.5. *infra*, are borne of prudence – "judicially self-imposed limits on the exercise of federal jurisdiction ..."  *Allen v. Wright*, 468 U.S. 737, 751 (1984).  The "person aggrieved" prudential limitation is a specialized prudential rule uniquely applicable to bankruptcy appeals, but there are three prudential limitations afforded general application.  "First, … when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."  *Warth*, 422 U.S. at 499, *citing Schlesinger*, 418 U.S. at 220-21 (1974); *Ex parte Levitt*, 302 U.S. 633, 634 (1937).  "Second, [a] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth*, 422 U.S. at 499 (citations omitted).  Finally, "a plaintiff's grievance must fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit."  *Bennett v. Spear*, 520 U.S. 154, 162 (1997).

[22]  "Article III standing" generally refers to the Constitution's requirement that Federal courts confine their adjudicative activities to actual "cases" and "controversies."  U.S. CONST. art. III, § 2.

*Travelers*, 45 F.3d at 741, *citing Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988). Rigor with respect to appellate standing in bankruptcy

> springs from the nature of bankruptcy litigation which almost always involves the interests of persons who are not formally parties to the litigation. In the course of administration of the bankruptcy estate disputes arise in which numerous persons are to some degree interested. *Efficient judicial administration requires that appellate review be limited to those persons whose interests are directly affected.*

*In re Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983) (citations omitted and emphasis added).

Another salient point emphasized by the Third Circuit in *Combustion Engineering* is that "[s]tanding is not dispensed in gross, but rather is determined by the specific claims presented." 391 F.3d at 215 (*citing Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) and *International Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991)).[23] Stated differently, a party may have standing to complain of some matters but not others.

All this is as it should be, particularly in the context of bankruptcy. "Because bankruptcy cases typically affect numerous parties, the 'person aggrieved' test demands a higher causal nexus between act and injury ...." *Gibbs & Bruns LLP v. Coho Energy Inc. (In re Coho Energy Inc.)*, 395 F.3d 198, 202-03 (5th Cir. 2004). The notion that anyone not "directly and adversely affected" may appeal any order or decree issued in the administration of a chapter 11 case is irreconcilable with chapter 11's fundamental

---

[23] "Typically, the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *International Primate Prot. League*, 500 U.S. at 77 (*quoting Allen v. Wright*, 468 U.S. 737, 752 (1984)).

purpose, which, of course, is reorganization.[24]

While acknowledging that "person aggrieved" status is the threshold on which their standing depends, Appellants' frank expression of distaste for being required to surmount that hurdle sounds like a concession they cannot.  Noting the roots of the "person aggrieved" test in the Bankruptcy Act, Appellants grudgingly concede that "courts nonetheless continue to apply it as a 'prudential standing limitation for bankruptcy appeals'" since the Act's repeal in 1978.  Then they "*question whether using a repealed statute as the basis for limited access to the appellate courts is appropriate*.  Appellants' Brief at 7, n.3 (emphasis added).[25]

---

[24] *See, e.g., In re Caringi*, 19 B.R. 12, 14 (Bankr. M.D. Pa. 1982).  A number of courts, surveying the legislative history, have observed that chapter 11's purpose is "'to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors and produce a return for its stockholders.'" *See, e.g., In re Cedar Shore Resort, Inc*., 235 F.3d 375, 379 (8th Cir. 2000), *quoting* H.R. Rep. No. 595 (1975), reprinted in 1978 U.S.C.C.A.N. 6179.  In the absence of requiring "person aggrieved" status, anyone could appeal from any order, subject to constitutional limitations.  One disaffected party lacking a stake on most issues could filibuster a reorganization to the point of torpor.  That would be incompatible with the expectation that a chapter 11 debtor's reorganization will proceed with reasonable expedition.  In *In re Timbers of Inwood Forest Assocs., Inc.*, 793 F.2d 1380, 1405 (5th Cir. 1986), *aff'd en banc*, 808 F.2d 363, *aff'd* 484 U.S. 365 (1988), the Fifth Circuit observed that "delay was an overriding concern of Congress in recodifying the … reorganization provisions in 1978" and stressed the importance of "limiting the delay of the reorganization process."  793 F.2d at 1406.

[25] Appellants correctly recognize that their rhetorical inquiry "is not an issue for this Court."  *Id.*  In lamenting the continuing application of pre-Code law, however, Appellants do not acknowledge that the Bankruptcy Code of 1978, 11 U.S.C. § 101 *et seq*., contains neither an explicit grant nor a limitation on appellate standing, prompting reliance on pre-Code law.  *See Lopez v. Behles (In re American Ready Mix, Inc.)*, 14 F.3d 1497, 1500 (10th Cir. 1994); *Westwood Cmty. Two Assoc., Inc. v. Barbee (In re Westwood Cmty. Two Assoc., Inc.)*, 293 F.3d 1332, 1334-35 (11th Cir. 2002) (stating "no evidence exists that Congress intended to alter the definition [of who may appeal a bankruptcy order] set forth in [the Act].).

Appellants' perfunctory acknowledgement that "courts nonetheless continue to apply" the person aggrieved test with respect to appellate standing in bankruptcy is an understatement of epic proportion. *Every* regional United States Courts of Appeals applies the test (or its functional equivalent) to determinations of standing in bankruptcy appeals. *See Davis v. Cox*, 356 F.3d 76, 93 n.15 (1st Cir. 2004); *O'Brien v. Vermont (In re O'Brien)*, 184 F.3d 140, 142 (2d Cir. 1999); *In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004); *White v. Univision of Va. Inc. (In re Urban Broad. Corp.)*, No. 04-1262, 2005 WL 563890, *6 (4th Cir., Mar. 11, 2005)[26]; *Gibbs & Bruns LLP v. Coho Energy Inc. (In re Coho Energy Inc.)*, 395 F.3d at 202-03 (5th Cir. 2004); *Harker v. Troutman (In re Troutman Enters.)*, 286 F.3d 359, 364 (6th Cir. 2002); *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 585 (7th Cir. 1994); *In re Marlar*, 252 B.R. 743, 748 (Bankr. 8th Cir. 2000), *aff'd*, 267 F.33d 749 (8th Cir. 2001); *Duncan Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 777 (9th Cir. 1999); *In re American Ready Mix, Inc.*, 14 F.3d at 1500; *In re Westwood Cmty. Two Assoc., Inc.*, 293 F.3d at 1334-35; *McGuirl v. White*, 86 F.3d 1232, 1234-35 (D.C. Cir. 1996).

> **2.    Appellants' position in this appeal is analogous to their position in** *Combustion Engineering***.**

In *Combustion Engineering*, the Third Circuit specifically addressed the appellate standing of four groups of appellants. 391 F.3d 215. One such group was these Appellants, the so-called "London Market Insurers", who raised several objections to plan confirmation on appeal. While upholding the London Market Insurers' appellate standing   to challenge discrete provisions of the plan that did directly and pecuniarily

---

[26]   A true copy of this recent opinion, as to which reported publication is pending, is attached to the Klingler Declaration as Exhibit 6.

affect their rights under the subject insurance policies and settlement, the Third Circuit was resolute in not permitting challenges to plan provisions by persons who were not aggrieved thereby.

One of the London Market Insurers' objections concerned the so-called "super-preemptory" provision to the plan, which the bankruptcy court – Judge Fitzgerald – had added.[27]  This provision provided, in effect, that nothing in the plan would impair the insurers' pre-petition rights under the various insurance policies and settlements.[28]  *Id.* at 216.  Another judge of this Court, concluding that the London Market Insurers lacked standing, modified the super-preemptory provision on the motions of the Unsecured Creditors' Committee and the Future Claimants Representative.  *Id.*  As modified, the super-preemptory provision referred to the rights of insurers, "if any, in respect of any claims (as defined by section 101(5) of the Bankruptcy Code)."  The district judge also added a "neutrality provision to provide reciprocal protections for the debtor's pre-petition rights under the subject insurance policies."  *Id.*

---

[27]  The others were (1) the so-called "Objecting Insurers", which had raised several challenges to plan confirmation; (2) the "Indemnified Insurers", which had entered into pre-petition settlement agreements with the debtor, and (3) "Certain Cancer Claimants" who had challenged some of the plan's injunctive provisions.  The Third Circuit held that the "Objecting Insurers" had "limited appellate standing" to challenge certain discrete aspects of the order appealed from but lacked standing as to remaining issues that did "not directly and pecuniarily affect their rights under the insurance policies and settlements."  *Id.* at 219-20.  "Indemnified Insurers", who the court concluded were not "persons aggrieved", were held to lack appellate standing altogether.  *Id.* at 223.  Finally, the Certain Cancer Claimants were held to have appellate standing except as to injunctive provisions relating to a debtor affiliate against whom they held no independent claims.  *Id.* at 223-24.

[28]  As drafted by the bankruptcy court, the super-preemptory provision provided that nothing in the plan "shall in anyway [sic] operate to, or have the effect of, impairing insurers' legal, equitable or contractual rights, if any, in any respect."  *Id.* at 217.

The Third Circuit concluded that "the … London Market Insurers have limited appellate standing to challenge only the modification of the super-preemptory provision but not the neutrality provision."[29]  *Id.*  The plan as originally drafted neither diminished the London Market Insurers' rights nor increased their contractual burdens; however, the district judge's modification – limiting the super-preemptory provision's scope to "claims" instead of broader "rights" – had narrowed the protections originally afforded insurers under the plan.  *Id.* at 218.

In contrast, the Third Circuit concluded that the neutrality provision had simply affirmed the London Market Insurers' pre-petition contractual obligations, which neither impaired their rights nor increased their burdens.  *Id.* at 218.  Lacking person aggrieved status with respect to the inclusion of the neutrality provision, the London Market Insurers could not complain about it on appeal.  *Id.*

The same can be said of the 2019 Order.  Appellants are not directly and pecuniarily aggrieved by any aspect of it.  Any scenario that could culminate in Appellants sustaining the "direct and pecuniary harm" needed to vest them with appellate standing is replete with contingencies and aggressive speculation.  The notion that – after a plan is conceived, balloted, and confirmed and payment is sought from them – Appellants *might* be found liable in coverage litigation *as a direct consequence of either (i) their inability to inspect the retention agreements between Appellees and their respective clients, or (ii) restrictions on dissemination of the Rule 2019 Statement exhibits set forth in the 2019 Order* entails a conjectural leap of considerable magnitude.

---

[29]  The court further concluded that the London Market Insurers did have appellate standing to challenge purported violations of anti-assignment provisions in the

Appellants cannot persuasively maintain that they are "persons aggrieved" with a direct, pecuniary stake in the 2019 Order. Contriving a semblance of an argument, Appellants assert that the incidental inconvenience and cost associated with filing a motion pursuant to the 2019 Order requesting access to the 2019 Statement exhibits directly and pecuniarily harms them.[30] Putting aside the inconvenient fact that Appellants have thus far not filed such a motion, the obvious flaw with their proffered aggrievedness is that it would confer standing on anyone. Under the 2019 Order, anyone may file a motion seeking to gain access to the exhibits. Anyone so doing would obviously incur incidental costs. In Appellants' view, everyone is aggrieved by the 2019 Order. The

---

policies they issued with respect to assignments of policy proceeds by two non-debtor affiliates of Combustion Engineering. *Id.* at 218-19.

[30] Appellants further assert that they are aggrieved because information allegedly required to be disclosed under Rule 2019 will "bear on the overall fairness" of any plan that might emerge. Appellants' Brief at 8-9 (*citing Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147 (D.N.J. 2005)). Until a plan does emerge, however, Appellants have no way of knowing this. *Combustion Engineering* recognizes that "insurance neutral" plans (*i.e.*, neither impairing insurers' rights nor increasing their burdens) are possible and deprive insurers of standing to challenge them at confirmation:

> W]e have denied standing to parties involved in bankruptcy proceedings "who, even though they may be exposed to some potential harm incident to the bankruptcy court's order, are not 'directly affected' by that order."

391 F.3d at 215 (*quoting Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995)). Where insurers "may still dispute coverage under specific policies, and … raise any of the same challenges or defenses to the payment of claims available pre-petition", a reorganization plan "does not diminish the rights of insurers or increase their burdens under the subject insurance policies …" *Id.* at 217.

meager cost associated with filing a motion cannot possibly vest the entire general public with standing to challenge the 2019 Order. That road would lead to grave uncertainty in the reorganization process, jeopardizing the whole ethos of chapter 11.

Courts are appropriately cautious "not to be so liberal in granting applications as to overburden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, to the extent that the goal of a speedy and efficient reorganization is hampered." *In re Public Serv. Co.*, 88 B.R. 546, 554 (Bankr. D.N.H. 1988). "Only those parties sufficiently affected by a Chapter 11 proceeding should be able to appear before it and be heard." *In re Ionosphere Clubs, Inc.,* 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989). With respect to the 2019 Order, Appellants fall far short of the necessary threshold. Any impact of the 2019 Order on Appellants' rights under the applicable insurance policies is so attenuated and conjectural that Appellants simply do not have standing to complain.

### 3. This appeal is premature because Appellants have not exhausted their options before the bankruptcy court for obtaining access to the 2019 Statement exhibits.

Appellants mischaracterize the state of their access to the 2019 Statement exhibits that Appellees have already entrusted, on compact disks, to the bankruptcy clerk, Debtors, and the United States Trustee. Appellants conclusorily assert that the exhibits are "sealed." *See, e.g.*, Appellants' Brief at 13-14. The 2019 Order provides that:

> It is further **ORDERED** that the docket entry of the [2019] statement that is filed shall state that Exhibits (as described below) have not been scanned into the docket but are available upon motion to and order of the Court.

2019 Order at 2.  With the express option of filing a motion and trying to obtain a

separate order – an option Appellants have not pursued – Appellants cannot credibly

maintain that they are being denied access to the exhibits by the bankruptcy court.[31]

> Appellant's premature resort to this Court implicates the ripeness doctrine:

> > The function of the ripeness doctrine is to determine whether a party has brought an action prematurely. *Philadelphia Federation of Teachers, American Federation of Teachers, Local 3, AFL-CIO v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998), and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.

*Peachlum v. City of York, Pa.*, 333 F.3d 429, 433 (3d Cir. 2003) (additional citations

omitted).

> The Third Circuit has recognized three considerations underlying the ripeness

doctrine:

> > [A]re the parties in a sufficiently adversarial posture to be able to present their positions vigorously; are the facts of the case sufficiently developed to provide the court with enough information on which to decide the matter conclusively; and is a party genuinely aggrieved so as to avoid expenditure of judicial resources on matters which have caused harm to no one.

*Id.* at 433-34 (*citing* Erwin Chemerinsky, FEDERAL JURISDICTION § 2.3.1 (1989)).

> Thus, to be "ripe", a matter must "grow out of a 'real, substantial controversy

between parties' involving a 'dispute definite and concrete.'"  *Id.* at 434 (*quoting Babbitt

v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  "The question in each

case is whether the facts alleged show that there is a substantial controversy, between

---

[31]   Appellants' failure to avail themselves of this opportunity may have a great deal to do with the fact that Appellants are hard-pressed to articulate why they "need" access to the exhibits for any purpose consistent with Rule 2019's purpose (i.e., validation of counsel's agency to act on behalf of more than one client).

parties having adverse legal interests, 'of sufficient immediacy and reality' to justify judicial resolution." *Id.* (*quoting Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). In *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977), the Supreme Court fashioned a two-step test for determining ripeness, focusing on

> (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration."

*Id.* (*quoting Abbott Labs*, 387 U.S. at 149).

Appellants' headlong rush to the bar of this Court is not appropriate given the mechanism in the 2019 Order for seeking relief from the bankruptcy court.[32] Appellants cannot plausibly maintain that they are "genuinely aggrieved" – or, stated differently, that their asserted grievance regarding access to the 2019 Statement exhibits is ripe – unless and until the bankruptcy court has foreclosed such access, a request having been made and denied, and a suitable record having been developed before the bankruptcy court.[33] There is no hardship to Appellants or anyone else from withholding consideration on this premature appeal.

> **4.    Appellants' standing to maintain this appeal cannot be predicated on, or buttressed by, alleged rights or interests of third parties.**

---

[32]  Appellees do not intend to suggest that Appellants are entitled to relief from the bankruptcy court; Appellees would, in fact, oppose *any* effort by Appellants to obtain access to the 2019 Statement exhibits. The salient point is that Appellants should seek relief from the bankruptcy court before seeking the same relief on appeal.

[33]  As noted *supra* at note 14, the bankruptcy court *has* permitted access for a specific purpose (in *Owens-Corning*, the purpose was claims estimation) on proof of need and a legitimate claim for access. The lack of any legitimate purpose or need for Appellants to obtain access to the 2019 Statement exhibits likely explains why they have bypassed this procedure.

Their lack of appellate standing is accentuated by Appellants' exhortations of the "public's" alleged rights or interests, which Appellants suggest conveniently mirror their own. Appellants ascribe error to the bankruptcy court's alleged "restricting [of] public access to the Rule 2019 disclosures"; refer to "the public's broad right … to inspect and copy public documents", and trumpet "a right of public access" to court records. Appellants' Brief at 16, 20. No litigant, however, may shore up its own doubtful standing by championing the legal rights or interests of third parties. *See, e.g., Singleton*, 428 U.S. at 113; *Storino*, 322 F.3d at 298 (stating "[i]n general, a litigant may assert only his own legal rights or interests, and can not rest a claim to relief on the legal rights or interests of third parties.") Other parties allegedly aggrieved by the 2019 Order are fully capable of speaking for themselves, and it is notable that only Appellants have chosen to appeal from the 2019 Order.

The Supreme Court recognizes this prudential limitation to standing: "… even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, th[e] Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499 (citations omitted). In *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, for example, the court declined to permit Kane, a person with current asbestos disease, to champion the rights of third parties – future asbestos claimants – in addition to his own. 843 F.2d at 643.[34]

---

[34] It was the court-appointed Legal Representative for Future Claimants – the person charged by the bankruptcy court with advocating the interests of future claimants – who successfully challenged Kane's standing to assert the rights of the Legal Representative's constituency. *Id.* at 641.

Appellants are obliged to advance their own rights and interests – not those alleged to belong to the public at large – which cannot buttress Appellants' own doubtful standing credentials.

> **5.     Apart from prudential limitations, Appellants do not meet the "irreducible constitutional minimum" requirements for standing.**

The Constitution of the United States limits the adjudicative powers of federal courts to "cases" and "controversies":

> The judicial Power [of the United States] shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; … — to Controversies to which the United States shall be a Party; — to Controversies between two or States; …

U.S. CONST. art. III, § 2. "One element of the 'bedrock' case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *McConnell v. FEC*, 540 U.S. 93, 225 (2003) (citations omitted). This is the preeminent constraint on standing, obliging federal courts to confine their adjudicative activities to actual "cases" or "controversies."[35] Three elements comprise the "irreducible constitutional minimum" – the black-letter threshold requirements – for standing. *Vermont Agency of Natural Res.*, 529 U.S. at 771.

"First, a plaintiff must demonstrate an injury in fact, which is concrete, distinct and palpable, and actual or imminent." *McConnell*, 124 S. Ct. at 707, *citing Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (internal quotation marks omitted). "Second, a plaintiff must establish a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the

---

[35]   U.S. CONST. art. III, § 2; *Allen v. Wright*, 468 U.S. 737, 750-51 (1984).

defendant, and not … the result [of] some third party not before the court." *Id.* (internal quotation marks omitted), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (*quoting Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). Finally, "a plaintiff must show the substantial likelihood that the requested relief will remedy the alleged injury in fact." *Id.* (internal quotation marks omitted), *citing Vermont Agency*, 529 U.S. at 771.

Appellants cannot establish an individual injury, fairly traceable to the Appellees' allegedly unlawful[36] conduct, that is likely to be redressed by the requested relief. Specifically, Appellants fail to show how they, as insurers of the Debtor, have suffered (or will suffer) concretized inquiry by not being able to access the exhibits to Appellees' 2019 Statements immediately. *See, e.g., AMTRAK v. Pennsylvania PUC*, 342 F.3d 242, 254 (3d Cir. 2003); *see also AT&T Communications of N.J., Inc. v. Verizon N.J. Inc.*, 270 F.3d 162, 170 (3d Cir. 2001).

If Appellants are simply anxious that at some future point they may be called upon to pay out additional sums under the policies issued to Debtor – a doubtful basis for anxiety since paying claims is the intrinsic function of liability insurers vis-à-vis their policyholders – the requisite concrete injury is not established. The Supreme Court balks when would-be litigants try to predicate standing not on demonstrable injury, but on their "mere interest in a problem." *Schlesinger*, 418 U.S. at 222 n.11 (*citing Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) (additional citation omitted)). The 2019 Order does nothing to directly affect the liability of Appellants under the applicable insurance

---

[36]    Appellants do not point to any allegedly unlawful conduct on the part of Appellees, apart from their apparent contention that compliance with the 2019 Order by Appellees does not effect full compliance with Rule 2019's requirements.

policies. That determination is reserved for another day. Since Appellants are not creditors of Debtor's estate, the 2019 Order has no impact on Appellants' non-existent claims. Unable to present a concrete and particularized injury, Appellants cannot surmount even the first constitutional hurdle.

C.    **The Bankruptcy Court Properly Applied Rule 2019 with Flexibility Suited to the Requirements of a Complex, Mass Tort-Related Reorganization.**

Disclosure requirements in bankruptcy are not uniform; each rule mandating disclosure has its own purpose and scope. Bankruptcy participants often confuse the distinctive requirements imposed upon trustees, debtors-in-possession, and court-authorized professionals by Bankruptcy Rules 2014, 2015, and 2016[37] with the completely different – and appropriately more restrained – regime of disclosure required of non-estate-related group representatives under Rule 2019. The disclosures required of court-approved professionals are sweeping, requiring detailed disclosure of every possible connection that a party has with the estate or any of its creditors (Rule 2014) and of its financial dealings with relevant parties (Rule 2016).

Rule 2019 is different. It avoids generalities and requires disclosure of specific information. Unlike disclosure rules applicable in all bankruptcy cases, Rule 2019 applies only in reorganization cases (cases under chapters 9 and 11) where a plan process is involved.[38] It exists for the sole purpose of assuring that plans of reorganization are negotiated by people actually authorized to negotiate them (or resist them, or vote for or

---

[37] These rules relate generally to employment of professionals; record keeping, reporting, and notice; and compensation for services rendered and reimbursement of expenses, respectively.

[38] As noted above, Rule 2019 is thus implicated in less than one percent of all bankruptcies filed. See note 7 *supra*.

against them) acting on behalf of the real parties in interest. Its scope is thus limited and its purpose narrow. If a bankruptcy court has sufficient information to make the necessary determination, the rationale for Rule 2019 is satisfied. The disclosure requirements under Rule 2019 are therefore tailored to achieve a specific and limited result.

Appellants blur the important distinction between limited Rule 2019 disclosure with the far-ranging disclosure required, for example, in connection with the compensation of estate professions. Despite Appellants' assertion to the contrary, *United States v. Continental Airlines (In re Continental Airlines)*, 150 B.R. 334 (D. Del. 1993) does *not* "bear[] a striking similarity to this case." Appellants' Brief at 23. In *Continental Airlines*, the bankruptcy court had directed that all reports generated by a court-appointed fee reviewer charged with reviewing fee applications of estate professionals be filed under seal. *Id.* at 335. The district court concluded that it was not appropriate to seal matters relating to the compensation of estate professionals. *Id.* at 342-43. That is far different from the bankruptcy court's reasoned attempt in this case to limit the disclosure of – not seal – matters between non-estate professionals and their clients to the limited inquiry contemplated by Rule 2019: does counsel have authority to act on the clients' behalves?

In chapter 11 cases involving mass torts, it is not uncommon for law firms to represent hundreds or even thousands of a debtor's tort creditors. This raises the question of how Rule 2019 should be applied, as a logistical matter, in mass tort cases. Collier's

cautions against impractical applications of Rule 2019.[39]  9 Lawrence P. King, *et al.*, COLLIER ON BANKRUPTCY § 2019.04 (15th ed. 2004).  It is a tool of specific, rather than general, disclosure, providing relevant information concerning the creditors or interests an attorney appearing before a bankruptcy court represents.  "[T]he purpose of Rule 2019 is to further the Bankruptcy Code's goal of complete disclosure during the business reorganization process."  *In re CF Holding Corp.*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992).

Rule 2019 is not a weapon for disgruntled peripheral parties in mass tort reorganizations to use against tort victims seeking compensation or their counsel.  It is not intended as an arbitrary and burdensome hurdle for creditors to surmount in order to participate in a bankruptcy reorganization.  "[Rule 2019] is part of the disclosure scheme of the Bankruptcy Code.  It is designed to foster the goal of reorganization plans which deal fairly with creditors and which are arrived at openly."  *In re Oklahoma P.A.C. First Ltd. P'ship*, 122 B.R. 387, 391 (Bankr. D. Ariz. 1990).

Although there has been considerable deliberation by the courts regarding when the requirements of Rule 2019 are applicable, *see e.g., In re Chateaugay Corp.*, 104 B.R. 626 (Bankr. S.D.N.Y. 1989); *In re Vestra Indus., Inc.,* 82 B.R. 21 (Bankr. D.S.C. 1987); *In re Charter Co.,* 876 F.2d 866 (11th Cir. 1989), there is little authority concerning what

---

[39]  Strict compliance with the literal terms of Rule 2019 is often impractical and can be varied.  9 Lawrence P. King, *et al.*, Collier on Bankruptcy § 2019.04 (15th ed. 2004). The practical problems of compliance have influenced courts where the strict application of the rule would not serve its purpose and would work to prejudice the creditors to whom the rule would apply.  *See, e.g., Wilson v. Valley Elec. Membership Corp.*, 141 B. R. 309 (Bankr. E.D. La. 1992) (attorney representing thousands of class members not required to file 2019 statement).

specific information must then be disclosed.[40]  *CF Holding*, 145 B.R. at 126.  Appellants rely heavily on the recent decision in *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147 (D.N.J. 2005), which arose in the Congoleum bankruptcy and affirmed a New Jersey bankruptcy court's exercise of discretion in construing the rule expansively.  *Id.* at 167.  There, the bankruptcy court had determined that fee sharing, co-counsel and referral relationships were "pertinent facts and circumstances in connection with the employment of the entity [*i.e.*, the firm filing a 2019 statement]."  *Id.* (quoting Fed. R. Bankr. P. 2019(a)).  The district court concluded that the bankruptcy court permissibly interpreted Rule 2019, in the context of the *Congoleum* case, to consider these relationships as falling within the language of the rule. *Id.*

Four observations are in order.  First, Judge Fitzgerald, like the *Congoleum* bankruptcy court, has exercised her discretion.  She has construed Rule 2019 more narrowly, but altogether consistently with the rule's purpose.  The preeminent bankruptcy treatise recognizes that strict compliance with the literal terms of Rule 2019 is often impractical and can be varied.   9 Lawrence P. King, *et al.*, COLLIER ON BANKRUPTCY § 2019.04 (15th ed. 2004).  Nowhere is that impracticality more acute than in the context of a mass tort-based reorganization.  Just as the New Jersey district court concluded that

---

[40]  There is certainly no authority, for example, to suggest that the rule intends disclosure of non-debtor fee arrangements, although Appellants' insistence that it should be entitled to inspect each retention agreement implies that such disclosure is required by Rule 2019.  Disclosure of such matters is not mandated by Rule 2019 *See* Part III.C.1. *infra*.  Disclosure of such matters is also irrelevant to a bankruptcy court's limited responsibility of determining whether a law firm claiming to represent more than one claimant in a bankruptcy case has the necessary authority to do so.

the *Congoleum* bankruptcy court had acted within its discretion, so too has the bankruptcy court in the Underlying Bankruptcy Case.

Second, the *Congoleum* decision does not change the fact that jurisprudence as to the ambit of Rule 2019 disclosure in mass tort cases is not settled in this circuit or elsewhere.  Judge Fitzgerald's reading of what Rule 2019 requires in the context of a mass tort reorganization is very different from the *Congoleum* bankruptcy court's. Appeals are currently pending from two of Judge Fitzgerald's 2019 orders (besides the *Flintkote* and *Kaiser Aluminum* orders implicated here).[41]    The Third Circuit may

---

[41]    *Certain Underwriters at Lloyd's London, et al. v. Pittsburgh Corning Corp., et al.*, No. 04-CV-1814, before the United States District Court for the Western District of Pennsylvania, Honorable Joy Flowers Conti, and, in this district, *Century Indemnity Co. v. Baron & Budd, P.C., and Silber Pearlman, LLP*, before Honorable John P. Fullam.  As noted, the bankruptcy court afforded the appellant in the *Owens-Corning* appeal access to the 2019 Statement exhibits on motion as provided in the 2019 order. *See* note 14 *supra*.  Consequently, Appellees (who are also appellees in that appeal) have moved to dismiss the appeal for the *Owens-Corning* 2019 order as moot.  That motion is pending.

ultimately be called upon to weigh in on the issue.[42]

Third, Rule 2019's non-applicability in chapter 7 cases debunks at least two misconceptions underlying Appellants' argument.  Number one, it demonstrates the rule is neither designed nor intended to give bankruptcy courts power to police non-debtor relationships.  Contrary to Appellants' assertion, this appeal is not "about policing the very integrity of the bankruptcy process."  Appellants' Brief at 1.  Appellants really seek to "police" the relationships between the Debtors' tort victims and their counsel.  Because Rule 2019 disclosure is simply meant to verify that authority has been given by one non-debtor to another non-debtor, it is consistent with congressional limitations on

---

[42]    Or perhaps not.  Judge Fitzgerald entered identical 2019 Orders in all but two of the 13 mass tort reorganization cases over which she presides (*see supra* note 8), the exceptions being *Combustion Engineering* and *Mid-Valley*.   As noted, appeals are pending with respect to the orders issued in 4 cases.   Appellants, their dubious standing credentials notwithstanding, are the appellants in 3 of those appeals. However, Judge Fitzgerald's 2019 orders are fully effective in 9 of the eleven cases in which they have been entered (*AC&S* and *Armstrong* being the exceptions, where she has stayed them pending further order).  This means that in all 9 of those cases, entities representing multiple creditors or equity holders have complied with the requirements of Rule 2019 as set forth in the 2019 Order, with only these Appellants (and one disgruntled insurer in Owens-Corning with standing problems of its own) raising any objection.

the bankruptcy courts' ability to intrude into non-debtor relationships.[43]

The second debunked misconception is spurious notion that Rule 2019 is intended to further any public interest broader than assuring that representatives of multiple creditors in reorganization cases are vested with authority to act by their clients. If it were, it would apply in all bankruptcy cases – liquidations as well as reorganizations. The New Jersey bankruptcy court seemed curiously untroubled by the *Congoleum* bankruptcy court's intrusion, purportedly justified by Rule 2019, into relationships between non-debtor personal injury victims and their counsel. Neither of those courts addressed the burning question of why, if such intrusion is justified and somehow sound as a policy matter, it is limited to reorganization cases?[44]

Finally, appellate standing is central to this appeal, in contrast to the appeal in

---

[43] The existence and details of non-debtor attorney relationships are matters of private contract, governed by state law. Congress has limited the jurisdiction of bankruptcy courts to those areas expressly stated in 28 U.S.C. § 1334, namely "civil proceedings arising under title 11 or arising in or related to cases under title 11." *See, e.g.*, *In re Gucci*, 193 B.R. 417, 419 (Bankr. S.D.N.Y. 1996) (no "related to" jurisdiction over a fee dispute between a creditor and his attorney). More precisely, 28 U.S.C. § 1334 vests district courts with such jurisdiction, and 28 U.S.C. § 157 permits that district court to refer matters within its bankruptcy jurisdiction to bankruptcy courts. Even "related to" jurisdiction – the most attenuated basis for bankruptcy jurisdiction – does not permit a bankruptcy court to convert a private non-debtor contract governed by relevant state law into a matter for a court of strictly limited federal jurisdiction. "Related to" jurisdiction is strictly construed and narrowly defined. Cases such as *In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir. 1984), and *In re Federal-Mogul Global, Inc.*, 282 B.R. 301, 309 (Bankr. D. Del. 2002) make it clear that a bankruptcy court does not have jurisdiction to inject itself into matters that do not directly and without further intervention affect the bankruptcy estate.

[44] Or, for that matter, why limit it only to relationships between creditors and equity holders and their respective counsel? Why not intrude upon every party in interest's attorney-client relationship? More pointedly, why not intrude upon Appellants'

---

*Congoleum* decided by the district court in New Jersey.[45]   Before the merits may be

properly considered, Appellants must establish that they are "persons aggrieved" by the

2019 Order.  As noted, this is something they cannot do.

What Appellants hope to accomplish through this appeal must always be borne in

mind.  They seek (i) access to confidential information in the 2019 Statement exhibits,

and (ii) an opportunity to inspect hundreds of retention agreements between Appellees

and their respective clients *in toto* that they would not otherwise be permitted – in effect,

to trespass on the sanctity of attorney-client relationships to which they are not parties.

That is a serious and unsavory agenda directed as disrupting relationships between ailing,

vulnerable tort victims and the counsel of their choice.

    **1.**     **Rule 2019 seeks only to protect the real parties in interest from unauthorized representation in the reorganization process.**

The focus of Rule 2019 is on the plan process:

> The rule is part of the disclosure scheme of the Bankruptcy Code
> and is designed *to foster the goal of reorganization plans which*
> *deal fairly with creditors and which are arrived at openly*.

9 Lawrence P. King, *et al.*, COLLIER ON BANKRUPTCY § 2019.02 (15th ed. 2004)

(emphasis added).  Thus, where an entity comes into court seeking to influence – by

argument, by supporting or opposing, by voting for or against – a reorganization plan,

Rule 2019 provides the bankruptcy courts with a tool tailored to the task at hand:

determining

---

relationships with Whittington & Aulgur; Hancock Rothert & Bunshoft; Coudert
Brothers; Tucker Arensberg; and Lord Bissell & Brook?
[45]  See *supra* at 17.

whether the real party in interest has appeared through an authorized agent. Collier observes:

> Entities, including unofficial committees *that assume the representation of a group* must be subject to some court control because they are fiduciaries to those they purport to represent.

9 Lawrence P. King, *et al.*, COLLIER ON BANKRUPTCY § 2019.02 (15th ed. 2004) (emphasis supplied). Given bankruptcy courts' general lack of jurisdiction over non-debtor relationships not affecting the bankruptcy estate, the focus of Rule 2019 has to be on the entity's representation of a group *in the bankruptcy reorganization case*. Collier is very clear on this point:

> The court's examination will be directed toward assuring itself that the true party in interest is being fairly and properly represented and that the representation was properly obtained.

9 Lawrence P. King, *et al.*, COLLIER ON BANKRUPTCY § 2019.05[2] (15th ed. 2004) (citations omitted).

A textual analysis of the rule is instructive. Rule 2019(b) suggests the limited nature of the disclosure contemplated by Rule 2019(a). The rule is carefully written. There are no "sanctions" for noncompliance, only "effects." Each effect listed is in furtherance of the goal stated by Collier of assuring that the "true party" is being properly represented and that the representation was "properly obtained." 9 Lawrence P. King, *et al.*, COLLIER ON BANKRUPTCY § 2019.05[2] (15th ed. 2004)(citations omitted).

Thus, Rule 2019(b) states how a bankruptcy court may be assured that a "true party" is being fairly represented and if the "representation was properly obtained." *Id*. The bankruptcy court may *"examine any representation provision* of a deposit agreement, proxy, trust mortgage, trust indenture or deed of trust, or committee or other

authorization, *and* any claim or interest acquired by any entity or committee in contemplation or in the course of a case under the Code and grant appropriate relief[.]" (emphasis added).

While a bankruptcy court has the power to "determine whether there has been a failure to comply" and has the power to hold invalid any "authority, acceptance, rejection, or objection given, procured, or received by an entity or committee who has not complied with this rule or with § 1125(b) of the Code," it is clear from two discrete phrases in the rule's text that the bankruptcy court's inquiry is directed to the reorganization itself, and not to the extra-bankruptcy relationship of the non-debtor. First, the bankruptcy court is empowered to look only at "*any representation provision*" within the non-debtor instrument or agreement – not the instrument or agreement itself, but only a discrete *provision* thereof.  Then, if the "representation provision" does not establish the entity's authority, the court may "hold invalid *any authority, acceptance, rejection, or objection given, procured or received* by an entity or committee who has not complied with this rule…." (emphasis added).  The limited inquiry contemplated by the rule is consistent with the circumscribed power of the bankruptcy courts over non-debtor contractual relationships.

2.    **The option of disclosing exemplar retention agreements is  consistent with Rule 2019.**

As noted above, Appellees, in common with all personal injury firms of any magnitude, use standard retention agreements for their clients.  Within the retention agreements is a power of attorney or other authorization whereby the law firms are empowered to act on behalf of their clients – the so-called "representation provisions" expressly referred to in Rule 2019(b).  As shown above, Rule 2019(b)(2) requires only

the disclosure of the "representation provision" of the retention agreement. The submission of unredacted, separate copies of hundreds of nearly identical retention agreements would be excessively burdensome and very expensive. It also would entail disclosure of matters beyond the "representation provision" – the power of attorney – and would serve no valid purpose.

The 2019 Order permits the disclosure of exemplars if accompanied by an averment of which clients signed which forms of retention agreement. These exemplars have already been initially provided to Debtor, the bankruptcy court's clerk, and to the United States Trustee. Appellants cannot articulate any reason why this disclosure is not sufficient in light of Rule 2019's purpose because no such reason exists.

### 3. The manner in which the 2019 Order provides for access to the 2019 Statement exhibits is appropriate and consistent with 11 U.S.C. § 107(a).

As noted, Appellants proclaim the public's right of access to bankruptcy court proceedings and documents in their quest for immediate access to the 2019 Statement exhibits. The 2019 Order's provisions concerning access to the exhibits, however, are entirely consistent with Rule 2019 and the Bankruptcy Code.

Access by the public to bankruptcy court proceedings and documents is specifically provided for in the Bankruptcy Code. Section 107 of the Code provides:

> (a) Except as provided in subsection (b) of this section, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and *open to examination by an entity at reasonable times without charge.*

11 U.S.C. § 107(a) (emphasis added).  Because Congress enacted an express statutory scheme, issues concerning public disclosure of documents in bankruptcy cases are to be resolved under section 107.  *In re Continental Airlines*, 150 B.R. at 337 (D. Del. 1993).[46]

The 2019 Order requires Appellees and others to file their 2019 Statements on the bankruptcy court's electronic docket.  As has been noted, exhibits to the 2019 Statements are to be supplied to the clerk, Debtors, and the United States Trustee on compact disk.  All other parties may access the exhibits only upon motion to and order of the Court.  Thus, the 2019 Order facilitates the examination of the 2019 Statement exhibits by other entities, with legitimate reason to do so, subject to approval having been sought and obtained by the bankruptcy court, at reasonable times and without charge.

Appellants contend, in effect, that the 2019 Order violates section 107 because it does not require the exhibits to be filed on the electronic docket.  This contention is untenable.  Electronic dockets did not exist in 1978 at the time of Section 107's enactment; moreover, nowhere in the Bankruptcy Code or the Rules is there a pronouncement that access to court documents means immediate access through electronic means.  Neither Rule 2019 nor section 107 requires the bankruptcy court to post information disclosed pursuant to Rule 2019 on the court's electronic docket.  Section 107 merely requires that the information disclosed be made available at reasonable times.

Only since mid-2003 have documents filed in District of Delaware bankruptcy cases been available online.  Before that, a party seeking access to items filed with the bankruptcy clerk was required to go to the courthouse.  Access was subject to (i) terms

---

[46]  Consequently, Appellants' arguments predicated on common law are of doubtful

and restrictions imposed by the presiding bankruptcy court, and (ii) the clerk's administrative requirements. When section 107 of the Code was enacted in 1978, electronic dockets did not exist, nor did the internet as we know it today. The notion that personal computers and word processing software would become ubiquitous in law offices, supplanting typewriters, was altogether radical. Section 107(a) does not confer a right to immediate, on-demand, at-will access to every court document by the fastest means available. All that is required is for documents to be "open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). The Underlying Bankruptcy Case involves information that is both highly sensitive and confidential. The procedure devised by the bankruptcy court in the 2019 Order to facilitate access to the 2019 Statement exhibits for legitimate purposes is entirely reasonable and fully consistent with section 107(a).

The 2019 Order allows anyone to whom a compact disk is not initially provided to seek access to the 2019 Statement exhibits by simply filing a motion with the court. Nowhere in the 2019 Order has the bankruptcy court proscribed anyone from examining the exhibits. Thus, contrary to Appellant's contention, the bankruptcy court has not "sealed" the exhibits at all. As Judge Fitzgerald herself stated:

> This order, in my view, does everything and probably more than it needs to do. It provides for protection of the parties' rights to ask us this information by simply filing a motion with this Court telling me why you want it. And I don't think that's inappropriate. The problem that the Courts wrestle with with electronic case filing is just that. Everything gets spread on the public docket and that is not appropriate. That's not what the electronic case filing system was intended to do where privacy concerns are involved. It was intended to make access to relevant information more widely available to parties.

import. *Id.*

Dkt. No. 12968, *In re Owens Corning, et al.*, Case Nos. 00-3837 – 3854 (JKF) at 55.[47]

Judge Fitzgerald's comments make clear that the 2019 Order does not irrevocably "seal" the record as to the 2019 Statement exhibits; Appellants have the right to request access to the exhibits. Consistent with the ripeness doctrine discussed above, Appellants have no legally cognizable complaint until they have actually been denied access to the exhibits upon bringing an appropriate motion before the bankruptcy court.

It also bears noting that the public's right of access to court records is not absolute. *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2nd Cir. 1994). Every court has supervisory power over its own records and files, and access may be denied where court files might be used in furtherance of improper purposes. *In re Phar-Mor, Inc.*, 191 B.R. 675, 679 (Bankr. N.D. Ohio 1995) (*quoting Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 597-98 n.8 (1978)). The decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case. *In re 50-Off Stores, Inc.*, 213 B.R. 646, 650 n.7 (Bankr. W.D. Tex. 1997). Thus, a court's decision affecting access to court documents constitutes an exercise of discretion and may only be reversed in instances where the court abuses its discretion. *In re Continental Airlines*, 150 B.R. at 336; *see also, In re Vertientes, Ltd.*, 845 F.2d 57, 58-59 (3d Cir. 1988).

In bankruptcy proceedings, Section 107(b) specifically provides for courts to control access to their dockets as follows:

---

[47]  The matter cited is a transcript of a hearing that occurred on October 6, 2004, which was docketed in the *Owens-Corning* case pending in this district. Judge Fitzgerald presides over that case by designation and, as noted, entered a substantively identical

(b)   On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion may—

(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or

(2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b) (emphasis added).[48]

Bankruptcy Rule 9018 provides further elucidation:

On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation.   If an order is entered under this rule without notice, any entity affected thereby may move to vacate or modify the order, and after a hearing on notice the court shall determine the motion.

FED. R. BANKR. P. 9018 (emphasis added).   Both section 107 and Rule 9018 conform with Rule 26(c) of the Federal Rules of Civil Procedure, which provides that a court may "make any order which justice so requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including … that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way."

---

"2019 Order" therein.   A copy of the transcript of this hearing was designated by Appellants for inclusion in the record as Item 5 on Appellants' record designation.

[48]   "Commercial information" has been defined broadly as "information which would cause an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *In re Orion Pictures*, 21 F.3d at 27.

If information for which protection is sought fits into any of the categories specified in section 107(b), "the court is required to protect a requesting interested party, and has no discretion to deny the application [for a protective order]". *In re Handy Andy Home Improvement*, 199 B.R. 376, 381 (Bankr. N.D. Ill. 1996) (*quoting in part In re Orion Pictures*, 21 F.3d at 27). "Good cause" does not figure into the analysis. *In re Orion Pictures*, 21 F.3d at 28 (observing that "when Congress addressed the secrecy problem in § 107(b) of the Bankruptcy Code it imposed no requirement to show 'good cause' as a condition to sealing confidential commercial information"). The sole requirement is that the information a party seeks to have sealed be "confidential and commercial in nature." *Id.* at 27.

In light of the relevant facts and circumstances of the Underlying Bankruptcy Case, the bankruptcy court cannot credibly be accused of abusing its discretion with respect to the provisions of the 2019 Order governing access to the 2019 Statement exhibits. Monitoring who examines the 2019 Statement exhibits is sensible and prudent because of the confidential and commercial nature of the information disclosed therein. As the bankruptcy court has stated:

> Well, I don't know that trade secrets may not be involved to the extent that for example some counsel's pricing mechanism is in fact something that it does and it's trade in business. [sic] So I don't think trade secret in the commercial sense of filing a document that is copyright protected certainly is not an issue. But I'm not sure that it's not a trade secret in the generic sense of the term.

Dkt. No. 12968, *In re Owens Corning, et al.*, Case Nos. 00-3837 – 3854 (JKF) at 32. The bankruptcy continued:

> Number two, I still think there's a privacy concern and I think
> that it's appropriate to do this the way I'm doing it with the right
> of any party to request access to those documents.

*Id.* at 47.

Requiring parties seeking to examine the exhibits to file a motion with the court for access – in lieu of posting the exhibits on the electronic docket where the bankruptcy court would have no control or even awareness of who examined them – effectively protects legitimate commercial and privacy interests of the disclosing parties while still making them available for examination if the party requesting access can show a legitimate need or interest. Debtors were given to the exhibits straightaway, as was the bankruptcy court via the clerk. The United States Trustee was also afforded immediate access to the exhibits. "U.S. Trustees are officers of the Department of Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings*." In re United Artists Theatre Co.*, 315 F.3d 217, 225 (3d Cir. 2003) (*citing In re Columbia Gas Sys., Inc.,* 33 F.3d 294, 295-96 (3d Cir. 1994)). The 2019 Order thus strikes an appropriate balance between the disclosure objectives of Rule 2019 and the public's general right to access court records.

## IV. CONCLUSION

For the foregoing reasons, the bankruptcy court's 2019 Order should, in all respects, be affirmed.

April 6, 2005
Wilmington, Delaware

/s/Daniel_K._Hogan
Daniel K. Hogan #2814
**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: 302-656-7540
Facsimile: 302-656-7599

*and*

**STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, A Professional Corporation**
Sander L. Esserman
Texas Bar No. 06671500
David A. Klingler
Texas Bar No. 11574300
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
(214) 969-4900
(214) 969-4999 (facsimile)

**ATTORNEYS FOR BARON & BUDD
and SILBER PEARLMAN, LLP (in
*Flintkote* appeal *only* and not *Kaiser
Aluminum* appeal)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
_____x
                                         )
IN RE:                                   )     In Proceedings for a
                                         )     Reorganization under
The Flintkote Company,                   )     Chapter 11
                                         )
        Debtor.                          )     Case No. 04-11300-JKF
                                         )
```

## REVISED ORDER REQUIRING FILING OF STATEMENTS
## PURSUANT TO FED. R. BANKR. P. 2019

**AND NOW**, this __22__<sup>nd</sup>_____ day of __**October**_____, 2004, it is **ORDERED** that the Amendatory Order Requiring Filing of Statements Pursuant to Fed.R.Bankr.P. 2019 entered on August 27, 2004 is hereby amended and replaced in full as follows:

Within 60 days from the date of this order, except with respect to a committee appointed pursuant to §1102 or §1114 of the Bankruptcy Code, any entity or committee representing more than one creditor or equity security holder and any indenture trustee that has entered an appearance, filed a claim, cast a ballot or taken any other affirmative action to participate in the Debtor's bankruptcy case in any way shall file with the Clerk a statement (a "2019 Statement") containing the information described below;

It is further **ORDERED** that, except with respect to a committee appointed pursuant to §1102 or §1114 of the Bankruptcy Code, any entity or committee that represents more than one creditor or equity security holder and any indenture trustee that enters an appearance, files a claim, casts a ballot or takes any other affirmative action to participate in the Debtor's bankruptcy case in any way for the first time after the date of this Order shall, within 10 days of such action, electronically file with the Clerk a 2019 Statement containing the information described below;

It is further **ORDERED** that the docket entry of the statement that is filed shall state that Exhibits (as described below) have not been scanned into the docket but are available upon motion to and order of the Court. The docket entry shall be in substantially the following format:

> Verified Statement Pursuant to Fed.R.Bankr.P. 2019 filed by ([INSERT FILING ENTITY'S NAME]. Exhibits have not been scanned but may be accessed by parties who obtain Court order authorizing access.

It is further **ORDERED** that exhibits required to be filed and listed below shall **not** be electronically filed but shall be submitted to the Clerk on compact disk ("CD"). Two sets of CDs shall be submitted and shall be identified on their faces as "Set 1" and "Set 2" and shall note the name, address, and telephone number of the attorney submitting the disks.

It is further **ORDERED** that the 2019 Statement shall be a verified statement identifying the name and address of the entity filing such statement and that includes the following exhibits:

1. A blank, but unredacted, exemplar or an actual copy, of each form of agreement or instrument, if any, whereby such entity is empowered to act on behalf of creditors or equity security holders in this case;

2. An Excel spreadsheet in electronic format in substantially the form attached hereto as Exhibit A containing the following data:

a. name of each creditor or equity security holder represented by the entity filing the 2019 Statement;

b. the personal address of each such creditor or equity security holder;

c. reserved space for the social security number or other identifier as may be required by a further order of the Court;

d.  identification of the form of exemplar referenced in item #1 above executed by the creditor or equity security holder, and the date such agreement was executed;

e.  the amount of the claim of any creditor if liquidated, and for unliquidated claims, an indication that such claims are unliquidated;

f.  the date of acquisition of the creditor's claim unless such claim was acquired beyond one year prior to the filing of the Debtor's petition for relief;

g.  for personal injury claimants, the type of disease giving rise to the claim; and for all other claimants, the nature of the claim or interest; and

h.  a recital of the pertinent facts and circumstances in connection with the employment of the entity or indenture trustee, and, in the case of a committee, the name or names of the entity or entities at whose instance directly or indirectly the employment was arranged or the committee was organized or agreed to act;

3.  With reference to the time of the employment of the entity, the organization or formation of the committee, or the appearance in the case of any indenture trustee, a statement of

a.  the amounts of claims or interests owned by the entity, the committee members or the indenture trustee;

b.  the times when acquired;

c.  the amounts paid therefor, and

d.  any sales or other disposition thereof;

It is further **ORDERED** that upon filing a 2019 Statement with the Clerk, each entity filing a 2019 Statement shall electronically file the 2019 Statement without exhibits, and shall provide all exhibits on CD's only to the Clerk, who shall maintain the exhibits without putting them into the electronic database;

It is further **ORDERED** that each entity filing a 2019 Statement shall serve a copy of the 2019 Statement that includes all exhibits on CD's on the Debtor and the United States Trustee, who shall keep such exhibits confidential and shall not release the exhibits to any party without further Order of Court;

It is further **ORDERED** that each entity filing a 2019 Statement or a Supplement thereto shall serve a notice of filing a 2019 Statement or Supplement, as the case may be, on all parties on the Official Service List;

It is further **ORDERED** that filing and updating as necessary a 2019 Statement that complies with this Order, as it may be amended from time to time, shall be deemed to be complete compliance with Bankruptcy Rule 2019 for all purposes in this case;

It is further **ORDERED** that the Debtor shall maintain copies of the 2019 Statements and shall make them available for inspection and copying as directed by the Court from time to time;

It is further **ORDERED** that entities shall supplement their 2019 Statements, as necessary, every 90 days, covering any material changes of fact occurring up to 30 days prior to such supplemental filing of the 2019 Statement;

It is further **ORDERED** that any entity that fails to comply with the terms of this Order may be subject to appropriate sanctions as the Court may determine;

It is further **ORDERED** that when this case is closed, the Clerk shall archive the 2019 Statements and Supplements with the case file;

It is further **ORDERED** that the Debtor or counsel for the Debtor shall serve a copy of this Order on the Official Service List; on all entities who have entered, or in the future enter, an appearance or have requested, or in the future request, notices in the case; the United States Trustee; and on persons or entities or any supplemental service lists used to notify attorneys for claimants with asbestos, silica and/or mixed dust personal injuries or property damage claims, and file a certificate of service with the Clerk of the Bankruptcy Court within ten (10) days hereof.

_____
Judith K. Fitzgerald
U.S. Bankruptcy Judge

| First Name and middle initial of creditor/equity security holder | Last Name | Street Address | City | State | Zip Code | Reserved | Form of agreement/ instrument empowering entity to act on behalf of creditors or equity security holders | Amount of claim of creditor if liquidated (claim is presumed to be unliquidated if blank) | Date of acquisition of creditor's claim if acquired within 1 year prior to date of filing of bankruptcy 10/5/00 | For personal injury claimants, type of disease and for all other claimants, the nature of the claim or interest | Pertinent facts & circum- stances regarding employ- ment of counsel or inden- ture trustee, and, in the case of a committee, the name or names of the entity at whose in- stance directly or indirectly the employ- ment was arranged or the committee was organized or agreed to act (reference additional exhibits if necessary) |
|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |  |