# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

**In re KAISER ALUMINUM CORP.,** *et al.*,

    Debtors.

---

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON and CERTAIN LONDON MARKET INSURANCE COMPANIES, | ) Civil Action No. 04-CV-1496 <br> ) Hon. Joseph J. Farnan <br> ) <br> ) Appeal from Bankr. Case No. 02-10429 |
|     Appellants, | ) (Hon. Judith K. Fitzgerald) <br> ) |
| v. | ) Consolidated with the appeal in <br> ) *In re The Flintkote Company*, *et al.*, |
| KAISER ALUMINUM CORP., *et al.*, | ) Bankr. Case Nos. 04-11300 & 04-12440 <br> ) (Hon. Judith K. Fitzgerald), |
|     Appellees. | ) D. Del. Case No. 04-CV-1496 <br> ) |

## REPLY BRIEF OF APPELLANTS, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND CERTAIN LONDON MARKET INSURANCE COMPANIES

WHITTINGTON & AULGUR
ROBERT T. AULGUR, JR. (NO. 165)
KRISTI J. DOUGHTY (NO. 3826)
313 N. DUPONT HWY., SUITE 110
P.O. BOX 617
ODESSA, DE 19730-1617
TELEPHONE: (302) 378-1661
FACSIMILE: (302) 285-0236

HANCOCK, ROTHERT & BUNSHOFT
PHILIP R. MATTHEWS (CA BAR NO. 79634)
FOUR EMBARCADERO CENTER
SAN FRANCISCO, CA 94111-4168
TELEPHONE: (415) 981-5550
FACSIMILE: (415) 955-2999

COUDERT BROTHERS LLP
RUSSELL W. ROTEN (CA BAR NO. 170571)
KATHERINE M. WINDLER (CA BAR NO. 158899)
PETER B. ACKERMAN (CA BAR NO. 115324)
333 SOUTH HOPE STREET, 23RD FLOOR
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: (213) 229-2900
FACSIMILE: (213) 229-2999

TUCKER ARENSBERG, P.C.
BEVERLY WEISS MANNE (PA ID NO. 34545)
MICHAEL A. SHINER (PA ID NO. 78088)
1500 ONE PPG PLACE
PITTSBURGH, PENNSYLVANIA 15222
TELEPHONE: (412) 566-1212
FACSIMILE: (412) 594-5619

LORD BISSELL & BROOK LLP
FRED L. ALVAREZ
MONA M. STONE
DAVID C. BUTMAN
115 S. LASALLE STREET
CHICAGO, ILLINOIS 60603
TELEPHONE: (312) 433-0700
FACSIMILE: (312) 443-0336

COUNSEL FOR APPELLANTS, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND CERTAIN LONDON MARKET INSURANCE COMPANIES

APRIL 18, 2005

# TABLE OF CONTENTS

I. Introduction ...................................................................................................................1

II. Appellants Have Standing to Appeal the Revised 2019 Order ......................................2

    A. Combustion Engineering Squarely Establishes Appellants' Standing. ...................2

    B. Appellants Are Asserting Their Own Rights, Not the Rights of Third Parties .......4

    C. Article III Does Not Bar Appellants from Bringing This Appeal. .........................5

III. This Issue Is Ripe for Appeal ........................................................................................6

IV. The Revised 2019 Order Contains Clear Errors That Must Be Reversed. ....................7

    A. Substituting Blank, Unsigned "Exemplars" for the Actual Documents Required by Rule 2019 Is an Error of Law ...............................................................7

    B. Limiting Access to the Rule 2019 Statements Was Error ....................................11

V. Conclusion ...................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm. (In re Congoleum Corp.)*,
    321 B.R. 147 (D.N.J. 2005) .................................................................................. 1, 2, 13

*Ferm v. U.S. Trustee (In re Crawford)*,
    194 F.3d 954 (9th Cir. 1999) ............................................................................................ 3

*General Instrument Corp. v. Nu-Tek Elecs. & Mfg., Inc.*,
    197 F.3d 83 (3d Cir. 1999) ............................................................................................... 5

*General Motors Acceptance Corp. v. Dykes (In re Dykes)*,
    10 F.3d 184 (3d Cir. 1993) ............................................................................................... 2

*In re 50-Off Stores, Inc.*,
    213 B.R. 646 (Bankr. W.D. Tex. 1997) ......................................................................... 12

*In re Combustion Engineering, Inc.*,
    391 F.3d 190 (3d Cir. 2004) ................................................................................... passim

*In re First Interregional Equity Corp.*,
    227 B.R. 358 (Bankr. D.N.J. 1998) ................................................................................. 9

*In re Grand Jury Investigation*,
    631 F.2d 17 (3d Cir. 1980) ............................................................................................ 12

*In re Michaelson*,
    511 F.2d 882 (9th Cir. 1975) ......................................................................................... 13

*In re Orion Pictures Corp.*,
    21 F.3d 24 (2d Cir. 1994) .............................................................................................. 13

*In re PWS Holding Corp.*,
    228 F.3d 224 (3d Cir. 2000) ............................................................................................ 3

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) .................................................. 5

*Maritime Asbestos Legal Clinic v. LTV Steel Co., Inc. (In re Chateugay Corp.)*,
    1991 U.S. Dist. LEXIS 4739 (S.D.N.Y. 1991) ................................................................ 8

*Montgomery County v. Microvote Corp.*,
    175 F.3d 296 (3d Cir. 1999) .................................................................................... 12, 13

*Nixon v. Warner Communications*,
    435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) .................................................... 14

*Peachlum v. City of York*,
    333 F.3d 429 (3d Cir. 2003) ............................................................................................ 6

*Phar-Mor, Inc. v. Defendants Named Under Seal (In re Phar-Mor, Inc.)*,
    191 B.R. 675 (Bankr. N.D. Ohio 1995) .............................................................................. 13

*Republic of Philippines v. Westinghouse Elec. Corp.*,
    949 F.2d 653 (3d Cir. 1991) ................................................................................................ 4

*Schering Corp. v. FDA*,
    51 F.3d 390 (3d Cir. 1995) .................................................................................................. 5

*United States v. Continental Airlines (In re Continental Airlines)*,
    150 B.R. 334 (D. Del. 1993) ....................................................................................... 11, 12

*Wilderness Soc. v. Griles*,
    824 F.2d 4 (D.C. Cir. 1987) ................................................................................................ 6

*Wilson v. Valley Elec. Membership Corp.*,
    141 B.R. 309 (E.D. La. 1992) ............................................................................................. 9

**Statutes**

11 U.S.C. § 107 .......................................................................................................... 4, 11, 13

28 U.S.C. § 157(a) ................................................................................................................ 5

**Rules**

Fed. R. Bankr. P. 2019(b) .............................................................................................. 10, 11

Fed. R. Bankr. R. 2019(a) .................................................................................................. 4, 7

iii

**I.   INTRODUCTION**[1]

Appellees[2] have little to say about the substance of this appeal, and instead seek to divert the Court's attention with *ad hominem* attacks on Appellants, London Market Insurers.[3] *See, e.g.,* Brief of Appellees Baron & Budd, P.C. and Silber Pearlman LLP Regarding Flintkote Appeal ("Appellees' Brief") at 11, 12 (falsely accusing Appellees of being "opportunistic," "voyeuristic[ ]," and having "ulterior" and "improper purposes").

To the contrary, Appellants seek to enforce Bankruptcy Rule 2019 because they have a personal stake in the overall fairness of any reorganization plan that will be funded with insurance or that attempts to impair their contractual rights. *See Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm. (In re Congoleum Corp.)*, 321 B.R. 147, 160 (D.N.J. 2005) ("That the Insurers' stake in plan confirmation includes a stake in the fundamental fairness of the Plan cannot be seriously challenged[.]").[4] If history is a guide, any plan proposed in these cases is likely to attempt to assign insurance rights in violation of contractual anti-assignment provisions; or attempt to strip insurers of their contractual rights to participate in the defense and settlement of asbestos claims, obtain the debtors' cooperation in defending and settling asbestos claims, and preventing payment of asbestos claims that are invalid, excessive, fraudulent, lack

---

[1] This Reply is in response to Appellees Baron & Budd, P.C.'s Brief regarding the *Flintkote* Appeal, DI 15 and Joinder of Appellees Baron & Budd, P.C. and Silber Pearlman, LLP in the *Kaiser Aluminum* Appeal to their Brief in the Consolidated Flintkote Appeal, DI 16.

[2]   "Appellees" are Baron & Budd, P.C. and Silber Pearlman LLP, two law firms who claim to represent thousands of asbestos plaintiffs but who refuse to document their claimed authority to represent those claimants, as required by Bankruptcy Rule 2019.

[3]   "Appellants" are Certain Underwriters at Lloyd's, London, and Certain London Market Insurance Companies (collectively, "London Market Insurers").

sufficient evidence of injury or exposure, or otherwise cannot be properly asserted against the debtors. Thus, the full disclosure required by Rule 2019 "does indeed bear on the overall fairness" of asbestos reorganization plans such as will be proposed in these cases. *Id.* (holding that "Insurers have standing to raise these Rule 2019 compliance issues").[5]

Once beyond Appellees' inflammatory rhetoric, it is clear that their legal arguments are unfounded. The Court, therefore, must reverse the Revised 2019 Order and remand with instructions to amend that order so as to require full compliance with Bankruptcy Rule 2019.

## II.   APPELLANTS HAVE STANDING TO APPEAL THE REVISED 2019 ORDER.

### A.   *Combustion Engineering* Squarely Establishes Appellants' Standing.

Appellants have standing to appeal the Revised 2019 Order because it directly impairs their rights and increases their burdens. As the Third Circuit recently held in *Combustion Engineering*, a party is a "person aggrieved" by a bankruptcy court order, and thus has standing to appeal, if the order "diminishes their property, increases their burdens, or impairs their rights." *In re Combustion Engineering, Inc.*, 391 F.3d 190, 217 (3d Cir. 2004) (quoting *General Motors Acceptance Corp. v. Dykes (In re Dykes)*, 10 F.3d 184, 187 (3d Cir. 1993)). Under this test for appellate standing, Appellants are "persons aggrieved" by the Revised 2019 Order because that

---

[4]   This is the same *Baron & Budd* decision cited in Appellants' opening brief. The B.R. citation was not yet available at that time, so Appellants cited the LEXIS version.

[5]   No reorganization plans have yet been filed in these cases, but any eventual plan devised without insurers' participation and consent will likely seek to impair insurers' rights. Indeed, the *Kaiser* debtors and asbestos claimants have entered into a term sheet for developing a plan that would assign insurance rights in violation of the policies' anti-assignment provisions. *See* KAC Plan Treatment of Personal Injury Claims and Demands (attached to Exh. A to Appellants' opening Brief). In any event, the fact that reorganization plans have not yet been filed does not preclude insurers from participating in the bankruptcy proceedings. *See Baron & Budd*, 321 B.R. at 158-59 (holding that insurers have standing to seek compliance with Rule 2019, not only because the current plan might impair their rights, but more importantly because "the Plan is subject to change in ways that impact the Insurers at any time").

order narrows their right of reasonable access to public bankruptcy court files, reduces their right to obtain information bearing on the overall fairness of any reorganization plan that may be proposed in these cases (which concern asbestos claims that insurers will be asked to pay), and increases their burdens and costs of gaining access to those rightfully public files.

In *Combustion Engineering*, the bankruptcy court's confirmation order contained so-called "super-peremptory language" designed to protect certain rights of insurers, but the district court subsequently narrowed that language. 391 F.3d at 216. On appeal, the Third Circuit held that insurers had standing to appeal the district court's narrowing of their rights, and ultimately reversed the district court on this point and ordered restoration of the original, broader language. *Id.* at 218. In finding that the insurers had appellate standing, the Third Circuit employed the prudential "persons aggrieved" test for appellate standing. *Id*. at 217. Under that test, only "persons aggrieved" by a bankruptcy court have standing to appeal. *Id*. To establish such status, an appellant "must show the order of the bankruptcy court 'diminishes their property, increases their burdens, or impairs their rights.'" *Id.* (quoting *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000)). The Third Circuit held that the district court's narrowing of the super-peremptory language adversely affected the insurers' rights and, therefore, gave the insurers standing to appeal. *Id.* at 217.

Appellees assert that "Appellants' position in this appeal is analogous to their position in *Combustion Eng'g*." Appellees' Brief at 21. We agree. In *Combustion Engineering*, insurers had standing because the district court's order limited their rights. Similarly here, the Revised 2019 Order limits Appellants' common law, First Amendment and statutory rights to access the

3

disclosures mandated by Rule 2019,[6] and increases their burdens and costs of accessing those documents.[7] Appellants, therefore, plainly satisfy the Third Circuit's test for standing to appeal the Revised 2019 Order.

**B.    Appellants Are Asserting Their Own Rights, Not the Rights of Third Parties.**

Appellants, as members of the public, have a statutory right to reasonably unfettered access to all documents filed with the bankruptcy court (*see* 11 U.S.C. § 107) – including the "instrument[s]" by which Appellees "are empowered to act on behalf of creditors" that Appellees are required to file with the bankruptcy court under Rule 2019. Fed. R. Bankr. R. 2019(a).

This is not a right of "third parties," nor are Appellants mere "bystander[s]" to this right, as Appellees erroneously assert. *See* Appellees' Brief at 28, 11 n.16. Rather, Appellants are asserting their own right, as members of the public, to access the documents that Rule 2019 requires Appellees to file. All members of the public – including Appellants – possess and are entitled to enforce this right. *See, e.g.*, 11 U.S.C. § 107(a); *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir. 1991) ("the principle that the public holds a common law right of access to judicial proceedings and judicial records is firmly accepted in

---

[6]    Appellees are simply wrong to assert that the common law authorities on public access "are of no import" and moot in light of the statutory right of access embodied in 11 U.S.C. § 107." *See* Appellees' Brief at 42 n.36. To the contrary, section 107 embodies and follows the common law. *Ferm v. U.S. Trustee (In re Crawford)*, 194 F.3d 954, 960 (9th Cir. 1999). Moreover, Appellees ignore the authorities, cited in Appellants' opening Brief, that the public – including Appellants – also has an independent, First Amendment right of access to court filings.

[7]    Contrary to Appellees' attempt to belittle as "incidental" the additional cost of moving to unseal the Rule 2019 disclosures (*see* Appellees' Brief at 24), the pecuniary cost to Appellants of bringing such a motion before the bankruptcy court will likely be substantial. Indeed, Appellees have already stated that they will "oppose any effort by Appellants to obtain access to the 2019 Statement exhibits." *Id.* at 27 n.32. Moreover, Appellees have not cited (nor have we found) a single case where a small pecuniary cost was held insufficient to establish person aggrieved status. In any event, even if no cost were involved, Appellants would still have appellate standing because the Revised 2019 Order narrows their right to access public court documents.

this circuit"). Any narrowing of this right – as the bankruptcy court did in its Revised 2019 Order – is sufficient to confer appellate standing. *See Combustion Eng'g,* 391 F.3d at 217.

### C. Article III Does Not Bar Appellants from Bringing This Appeal.

Appellees' assertion that Appellants lack "Article III standing" or "[c]onstitutional standing" to appeal is also without merit. *See* Appellees' Brief at 29-31. Article III standing is a jurisdictional requirement that applies to "[t]he party invoking federal jurisdiction" – most commonly, the plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In this case, the debtors – not Appellants – invoked federal jurisdiction by filing their Chapter 11 petitions. Once federal jurisdiction was invoked, and properly so,[8] it extended to all core proceedings in this case (*see* 28 U.S.C. § 157(a), (b)) – including enforcement of Bankruptcy Rule 2019. By seeking to enforce Rule 2019, Appellants are not invoking federal jurisdiction in the manner of a plaintiff. Rather, they are merely attempting to enforce their rights in a Chapter 11 case over which the federal courts already have unquestioned jurisdiction.

However, even if Article III standing requirements were applicable to Appellants in this appeal, Appellants meet that standard. To show standing under Article III, a party must allege that (1) it has suffered, or is threatened with, an "injury in fact" to a judicially cognizable interest; (2) the injury is fairly traceable to the challenged action; and (3) a favorable decision will redress that injury. *See, e.g., Lujan*, 504 U.S. at 560-61. The injury-in-fact requirement is not onerous. All a party needs to show is an "identifiable trifle" of injury. *See, e.g., General*

---

[8] There is no question but that federal jurisdiction exists over Debtors' Chapter 11 cases. Article III extends the federal judicial power to "all Cases … arising under this Constitution [and] the Laws of the United States[.]" Const., Art. III, § 2. Article I gives Congress the power to establish "uniform Laws on the subject of Bankruptcies[.]" *Id.*, Art. I, § 8. Congress exercised that power by enacting Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101-1174.

*Instrument Corp. v. Nu-Tek Elecs. & Mfg., Inc.*, 197 F.3d 83, 87 (3d Cir. 1999). The injury need not be current; a mere threat of injury will suffice. *See Schering Corp. v. FDA*, 51 F.3d 390, 395 (3d Cir. 1995) ("threatened injury" satisfies Article III). Furthermore, the injury can come about as the result of a chain of events. *Wilderness Soc. v. Griles*, 824 F.2d 4, 18 (D.C. Cir. 1987). If so, the party has standing.

Here, for all of the reasons that Appellants are "parties aggrieved," they also have Article III standing. Appellants have suffered or are threatened with injury (in that their right to access public court records has been restricted, and that their burden of accessing public court records is increased), that injury is directly traceable to the Revised 2019 Order, and a favorable decision in this appeal here will redress that injury.

Accordingly, Appellants have standing to bring this appeal.

### III.  THIS ISSUE IS RIPE FOR APPEAL.

Appellees assert, incorrectly, that this appeal is not yet ripe because Appellants have not filed a further motion in the bankruptcy court requesting access to the materials filed by Appellees in response to the Revised 2019 Order. *See* Appellees' Brief at 26.

Such a motion is not a prerequisite to this appeal because it would not address the facial errors in the Revised 2019 Order which this appeal seeks to correct. For example, the order directly conflicts with Bankruptcy Rule 2019 by allowing Appellees to file blank, unsigned "exemplars" instead of an actual "copy of the instrument, if any, whereby [each Appellee] is empowered to act on behalf of creditors[.]" Fed. R. Bankr. P. 2019. A motion for access to Appellees' unsigned exemplars would not correct the bankruptcy court's order substituting the exemplars for the actual documents. Thus, there is no question that this and other errors apparent on the face of the Revised 2019 Order, are ripe for immediate review by this Court.

In any event, Appellants satisfy the ripeness standard of *Peachlum v. City of York*, 333 F.3d 429 (3d Cir. 2003), upon which Appellees rely. Under *Peachlum,* ripeness involves consideration of (i) whether the parties are sufficiently adverse, (ii) whether the facts of the case have been developed sufficiently to provide the Court with enough information to conclusively decide the matter, and (iii) whether a is party genuinely aggrieved. *Id.* at 433. Here, there is no question but that the parties are adverse, the facts regarding compliance with Rule 2019 have been sufficiently developed, and Appellants are aggrieved by the Revised 2019 Order.

**IV.   THE REVISED 2019 ORDER CONTAINS CLEAR ERRORS THAT MUST BE REVERSED.**

**A.   Substituting Blank, Unsigned "Exemplars" for the Actual Documents Required by Rule 2019 Is an Error of Law.**

The bankruptcy court plainly erred by relieving Appellants of their mandatory obligation to file "cop[ies] of the instrument[s]" by which Appellees "are empowered to act on behalf of creditors" (*see* Fed. R. Bankr. R. 2019(a)) and, instead, allowing Appellees to file blank, unsigned "exemplars" of those documents.

The filing of an unsigned exemplar or form document does not and cannot satisfy Rule 2019's specific requirement that an *actual* "copy of the instrument" must be filed. Nor is it enough for Appellees also to submit a list of their clients, as the bankruptcy court further ordered. *See* Revised 2019 Order at p. 2, ¶ 2. As even Appellees acknowledge, the purpose of Rule 2019 is to verify that lawyers who appear in reorganization cases are actually authorized to act on behalf their purported clients, thus ensuring the integrity of the Chapter 11 process.[9] Simply put, the law firms' actual authority cannot be verified without examining the actual

---

[9]   *See* Appellees' Brief at 3-4 ("Rule 2019 requires limited disclosure by 'entities', for the most part law firms, that represent more than one creditor in a reorganization case *for the purpose of assuring that such agents (i.e., lawyers) are authorized to do so by their respective principals (i.e., clients).).*" (Emphasis added.).

7

powers of attorney that have been signed by the clients. Thus, the Revised 2019 Order satisfies neither the letter nor the purpose of the rule.

### 1. Filing Copies of the Actual Documents Is Mandatory, Not Discretionary.

Appellees contend that, in issuing the Revised 2019 Order, the bankruptcy court properly "exercised her discretion." Appellees' Brief at 34. But Rule 2019's filing requirement is mandatory, not discretionary. The rule specifically and expressly requires that each Appellee "***shall*** file" a verified statement disclosing certain information, and that each statement "***shall*** include a copy of the instrument" empowering that Appellee to act on behalf of each of its clients. Fed. R. Bank. P. 2019(a) (emphasis added). This mandatory language leaves the bankruptcy court with no discretion to relieve Appellees from filing copies of the actual documents.

Accordingly, the bankruptcy court committed reversible error by allowing Appellees to file unsigned exemplars in lieu of the actual instruments, as required by Rule 2019.

### 2. There Is No Mass Tort Exception to Rule 2019.

None of the opinions cited by Appellees excused compliance with Rule 2019 in any case even remotely similar to this one. To the contrary, abundant authority – including the plain "shall" language of Rule 2019 – mandates compliance. *See, e.g., Maritime Asbestos Legal Clinic v. LTV Steel Co., Inc. (In re Chateugay Corp.)*, 1991 U.S. Dist. LEXIS 4739 at *9 (S.D.N.Y. 1991) (affirming dismissal of 139 asbestos claims for failure to include "total and complete disclosure pursuant to both the letter and spirit of Rule 2019"). Indeed, it is precisely in mass cases such as this – where the mass of clients do not personally participate – that the need for verification becomes particularly acute. As the Third Circuit recently recognized:

> Where the voting process is managed almost entirely by proxy, it is reasonable to require a valid power of attorney for each ballot to ensure claimants are properly informed about the plan and that their votes are valid.

*Combustion Engineering,* 391 F.3d at 245 n.66.

The only case that Appellees cite as having relieved a multi-creditor representative from Rule 2019 disclosure is *Wilson v. Valley Elec. Membership Corp.*, 141 B.R. 309 (E.D. La. 1992). That case is entirely inapposite. *Wilson*, unlike this case, was a *proposed* class action involving potentially thousands of *unknown* class members. In that context – where no class had been certified, where the identities of the class members were not known, and where the putative class representatives had not yet acquired authority to act on behalf of the class – the court found that compliance with Rule 2019 was impractical. *Id.* at 314-15. The court reasoned that "the named representatives could not provide documentation evincing their authority to act on behalf of the class because they had not yet acquired that authority and could not know the identity of each member of the class." *Id.* at 315.[10] Just the opposite is the case here. Here, Appellees presently represent multiple claimants and presumably know the identities of all their clients. In fact, they are *required to know those identities* in order to file proofs of claim and cast ballots on their behalf. Thus, *Wilson* provides them with no support for the proposition that they should not be required to fully comply with Rule 2019's disclosure requirements.

      **3.    Subsection (b) of Rule 2019 Does Not Limit the Scope of Disclosure Required by Subsection (a).**

Appellees assert that subsection (b) of Rule 2019 somehow relieves them of their obligation under subsection (a) to file copies of the actual documents. It does not. Subsection

---

[10]   Moreover, representation of a certified class is one of only two recognized exceptions to full compliance with Rule 2019 (the other being representation of an official committee). *See In re First Interregional Equity Corp.*, 227 B.R. 358, 371 (Bankr. D.N.J. 1998). Neither exception applies here.

(b) concerns the consequences for violating Rule 2019, but does not eliminate the mandatory filing requirements of subsection (a).

Subsection (b) contains three subdivisions, each of which sets forth an option that the bankruptcy court may employ to remedy a violation of subsection (a)'s mandatory filing requirements. Thus, if an entity has violated subsection (a), under subsection (b) the bankruptcy court may (1) refuse to allow that entity to participate further in the bankruptcy case, (2) grant appropriate relief respecting the non-complying entity's claim or interest in the case, and (3) hold invalid any authority of, or objection or vote by, the non-complying entity. *See* Rule 2019(b)(1)-(3).[11] None of these three remedies for failure to comply with subsection (a), however, in any way limits or eliminates Appellees' mandatory obligation to comply with subsection (a) in the first place.

Appellees focus specifically on the "representation provision" language in subsection (b)(2) to argue that the filing of blank exemplars, showing just the standard form of their representation agreement, satisfies Rule 2019. It does not. Subsection (b)(2) concerns a

---

[11] Subsection (b) states, in its entirety:

> On motion of any party in interest or on its own initiative, the court may (1) determine whether there has been a failure to comply with the provisions of subdivision (a) of this rule or with any other applicable law regulating the activities and personnel of any entity, committee, or indenture trustee or any other impropriety in connection with any solicitation and, if it so determines, the court may refuse to permit that entity, committee, or indenture trustee to be heard further or to intervene in the case; (2) examine any representation provision of a deposit agreement, proxy, trust mortgage, trust indenture, or deed of trust, or committee or other authorization, and any claim or interest acquired by any entity or committee in contemplation or in the course of a case under the Code and grant appropriate relief; and (3) hold invalid any authority, acceptance, rejection, or objection given, procured, or received by an entity or committee who has not complied with this rule or with § 1125(b) of the Code.

Fed. R. Bankr. P. 2019(b).

particular type of conflict of interest – where an attorney has a claim or interest in a Chapter 11 case, derived from a "deposit agreement, proxy, trust mortgage, trust indenture, or deed of trust, or committee or other authorization." Fed. R. Bankr. P. 2019(b)(2). In that situation, subsection (b)(2) authorizes the bankruptcy court to "examine any representation provision" in such documents and "grant appropriate relief." This remedy does not, as Appellants contend, limit in any way the mandatory requirements for fulfilling subsection (a).

      B.      **Limiting Access to the Rule 2019 Statements Was Error.**

The bankruptcy court committed further error by reversing the burdens and costs involved in the sealing of court documents. The Bankruptcy Code specifically mandates that all "paper[s] filed in a case under this title and the dockets of a bankruptcy court *are public records and open to examination* by an entity at reasonable times without charge." 11 U.S.C. § 107(a) (emphasis added). Rule 2019 specifies that the entities to which it applies, including Appellees, "shall *file*" the mandated disclosures. Fed. R. Bankr. P. 2019(a) (emphasis added). Thus, all Rule 2019 disclosures are presumptively public records open to examination.

Bankruptcy filings can be withheld from public view in only two narrowly circumscribed instances: where they contain (1) "trade secret or confidential research, development, or commercial information," or (2) "scandalous or defamatory material." 11 U.S.C. § 107(b)(1), (2).[12] Absent such a showing – which has never been made in this case – all bankruptcy filings are public and must be open to reasonable unfettered public access. *Id.* at § 107(a). Moreover, *the burden is on the party seeking to restrict public access* to demonstrate, with admissible

---

[12] Presumably, Appellees want to conceal alleged "trade secret or confidential research, development or commercial information" under section 107(b)(1), and not any "scandalous or defamatory matter" under section 107(b)(2). Accordingly, hereinafter we will refer only to the "trade secret" exception to public access.

11

evidence, that a filing contains trade secrets. *Id.* at § 107(b); *United States v. Continental Airlines (In re Continental Airlines)*, 150 B.R. 334, 340 (D. Del. 1993).

Here, Appellees did nothing to satisfy this heavy burden. They introduced no evidence whatsoever to establish that their Rule 2019 filings contain any confidential trade secrets.[13] Nor did the bankruptcy court find that the filings contain any confidential trade secrets. Yet nonetheless the bankruptcy court restricted public access to the Rule 2019 filings. In so doing, the bankruptcy court improperly reversed the proper burden on this issue: it lifted from the parties who would *restrict access* – Appellees – the burden of proving an adequate justification, and instead imposed on the parties *seeking access* – Appellants – the improper burden of proving a right of access. This improper shifting of burdens is an abuse of discretion by the bankruptcy court. *See Continental Airlines*, 150 B.R. at 343.

None of the cases cited by Appellees supports their contention that the bankruptcy court acted properly in restricting access to the required disclosures. *In re 50-Off Stores, Inc.*, 213 B.R. 646 (Bankr. W.D. Tex. 1997), is inapposite here. In that case, the bankruptcy court held an *ex parte* hearing on the retention of a special counsel because the debtor contended that an open hearing on the facts necessary to justify the retention would give an advantage to certain claimants. *Id*. at 648. A year later, the claimants moved to unseal the transcript of the hearing on the ground that the debtor had waived its attorney-client privilege respecting the special counsel. *Id*. at 648-49. The court held that the privileges had not been waived and, therefore, did not unseal the record. There are no such privilege concerns here. "The attorney-client

---

[13] Even if there were evidence or findings of trade secrets (and there are none in the record), a more appropriate remedy might be to order the public filing of *redacted* versions of the *signed* powers of attorney that mask *only* actual trade secrets. That solution might be seen as harmonizing Rule 2019's mandatory disclosure requirements with section 107(b)'s concern over disclosure of trade secrets.

privilege does not shield fee arrangements." *Montgomery County v. Microvote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999), (citing *In re Grand Jury Investigation*, 631 F.2d 17, 19 (3d Cir. 1980) (holding attorney-client privilege does not protect fee arrangements absent a strong probability that disclosure would implicate the client in criminal activity for which client sought legal advice). "Furthermore, the fee agreement letter does not come within the ambit of the work-product privilege …." *Montgomery County*, 175 F.3d at 304. Moreover, "there are strong policy and statutory reasons why the fee arrangements between attorneys practicing before the bankruptcy courts cannot be privileged[.]" *Baron & Budd,* 321 B.R. at 169 (citing *In re Michaelson*, 511 F.2d 882, 888-89 (9th Cir. 1975)). *50-Off Stores*, therefore, has no application to the Rule 2019 disclosures required in this case.

Appellees also cite *In re Orion Pictures Corp.*, 21 F.3d 24, 28 (2d Cir. 1994). Unlike this case, however, in *Orion* the bankruptcy court sealed certain documents *after* reviewing them *in camera*. *Id*. at 27. Here, in contrast, the bankruptcy court restricted public access to the Rule 2019 disclosures *before* ever seeing them, and *without* requiring any evidence or making any findings that the disclosures in fact contain confidential trade secret information. Under these circumstances, it was an abuse of discretion to restrict public access to the disclosures. 11 U.S.C. § 107; *see also Baron & Budd*, 321 B.R. at 169 ("Section 107(b)'s limited exception to § 107(a) for 'trade secret[s] or confidential research, development or commercial information' cannot apply in circumstances, such as these, in which Appellees have not met their burden, as the party requesting protection, of showing any reason, why their referral fee arrangements would qualify for special treatment.").

*Phar-Mor, Inc. v. Defendants Named Under Seal (In re Phar-Mor, Inc.)*, 191 B.R. 675 (Bankr. N.D. Ohio 1995), is also inapposite here. In that case, the bankruptcy trustee filed an

adversary complaint against the debtor's former officers. The parties settled before the complaint was answered, and the former officers then moved to seal the complaint because, if it remained on public record, certain scandalous and defamatory matter in the complaint would not be publicly refuted by any answer. *Id*. at 678. Although agreeing that the unanswered complaint was worthy of protection, instead of sealing it the bankruptcy court instead allowed the trustee to withdraw it. *Id*. at 680. Here, unlike in *Phar-Mor*, Appellees made no showing that their Rule 2019 disclosures contain information protected by section 107(b), and the bankruptcy court made no such finding.

Appellees also cite *Nixon v. Warner Communications*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), which is even further off the point here. In that case, redacted transcripts of President Nixon's tape recordings of Oval Office conversations had already been publicly released, but the media was seeking access to the actual tapes under the common law. The Supreme Court declined to release the tapes, holding that any common law right of access to the tapes had been superceded by the Presidential Recordings Act, 44 U.S.C. §§ 101, *et seq*. *Id*. at 603. That Act is obviously not applicable here.

Accordingly, Appellees' substantive arguments in support of the Revised 2019 Order are all without merit. The order contains a clear error of law, and its limitations on access are an abuse of discretion that must be reversed.

V.  **CONCLUSION**

This issues presented by this appeal are simple and straightforward. Bankruptcy Rule 2019(a) unambiguously and explicitly requires that Appellants "shall file a verified statement … [that] shall include a copy of the instrument" empowering them to appear for and represent their multitude of clients in this Chapter 11 case. Yet the bankruptcy court relieved Appellants of this mandatory obligation and allowed them to file blank, unsigned exemplars instead. That was a

reversible of law.

Section 107 of the Bankruptcy Code unambiguously requires that all papers filed by Appellants in this Chapter 11 case must be held open to the public unless Appellants establish, and the bankruptcy court finds, that they contain confidential trade secrets. Appellants submitted no evidence that their mandatory Rule 2019 filings constitute protected trade secrets. Nor did the bankruptcy court make any such finding or before restricting public access to the filings. That was a reversible abuse of discretion.

Therefore, for all the above reasons, and for the reasons stated in Appellants' opening Brief, Appellants respectfully urge the Court to reverse the Revised 2019 Order and remand with instructions to the bankruptcy court to amend the order so as to (a) require that all entities filing Rule 2019 statements must include an actual "copy of the instrument, if any, whereby the entity…is empowered to act on behalf of creditors" (as specifically required by Rule 2019(a)); and (b) require that all statements, documents and exhibits filed pursuant to Rule 2019 and any order enforcing that rule must be filed in the court's public records in a manner reasonably accessible to Appellants and the public (as required by section 107(a) of the Bankruptcy Code).

Dated: April 18, 2005

/s/ Kristi J. Doughty
WHITTINGTON & AULGUR
ROBERT T. AULGUR, JR. (NO. 165)
KRISTI J. DOUGHTY (NO. 3826)
313 N. DUPONT HWY., SUITE 110
P.O. BOX 617
ODESSA, DE 19730-1617
TELEPHONE: (302) 378-1661
FACSIMILE: (302) 285-0236

TUCKER ARENSBERG, P.C.
BEVERLY WEISS MANNE (PA ID NO. 34545)
MICHAEL A. SHINER (PA ID NO. 78088)
1500 ONE PPG PLACE
PITTSBURGH, PENNSYLVANIA 15222
TELEPHONE: (412) 566-1212
FACSIMILE: (412) 594-5619

HANCOCK, ROTHERT & BUNSHOFT
PHILIP R. MATTHEWS
PAUL J. KILLION
FOUR EMBARCADERO CENTER
SAN FRANCISCO, CA 94111-4168
TELEPHONE: (415) 981-5550
FACSIMILE: (415) 955-2999

COUDERT BROTHERS LLP
RUSSELL W. ROTEN
KATHERINE M. WINDLER
PETER B. ACKERMAN
333 SOUTH HOPE STREET, 23RD FLOOR
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: (213) 229-2900
FACSIMILE: (213) 229-2999

COUNSEL FOR APPELLANTS, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND CERTAIN LONDON MARKET INSURANCE COMPANIES

LORD BISSELL & BROOK LLP
FRED L. ALVAREZ
MONA M. STONE
DAVID C. BUTMAN
115 S. LASALLE STREET
CHICAGO, ILLINOIS 60603
TELEPHONE: (312) 433-0700
FACSIMILE: (312) 443-0336